# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AVCO CORPORATION,** | : | CIVIL ACTION NO. 4:12-CV-1313 |
|     Plaintiff, | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | |
| **PRECISION AIRMOTIVE, LLC,** | : | |
|     Defendant | : | |
| | : | |
| v. | : | |
| | : | |
| **AVSTAR FUEL SYSTEMS, INC.,** | : | |
|     Counterclaim-Defendant | : | |

## **MEMORANDUM**

Presently before the court in the above-captioned matter is the motion for preliminary injunctive relief (Doc. 18), filed by defendant Precision Airmotive, LLC ("Precision"), on September 10, 2012. On September 24, 2012, plaintiff Avco Corporation ("Avco") moved to strike Precision's motion for preliminary injunction, answer, and counterclaims against Avco and AVstar Fuel Systems, Inc. ("AVstar"), on the grounds of improper joinder. (Doc. 35). Precision filed a brief in opposition to Avco's motion to strike (Doc. 39) on September 28, 2012, and a reply in support of their motion for preliminary injunctive relief (Doc. 41) on October 1, 2012. Avco also filed a reply in support of its motion to strike (Doc. 42) on October 1, 2012, and a surreply (Doc. 47) in opposition to Precision's motion for preliminary injunctive relief on October 10, 2012. AVstar filed a suggestion of bankruptcy (Doc. 43) on October 4, 2012. The court held a preliminary injunction hearing on November 14, 2012, and took evidence in the form of documentary exhibits and witness testimony.

With briefing concluded and the record closed, the matter is now ripe for disposition. For the reasons to be discussed, the court will deny Precision's motion for a preliminary injunction.[1]

I. **Factual and Procedural Background**

Precision manufactures fuel injection servos for general aviation engines, a component which controls the delivery of a combustible fuel-air mixture to the engine. Precision identifies its fuel injection servos by an alpha-numeric designation, each prefaced by the abbreviation "RSA." The parties agree that these designations describe various attributes of the servos – for example, the type of fuel injection system, and nominal and actual bore sizes. (See Plaintiff's Ex. B). Precision purchased the right to make the product line at issue from the Bendix Corporation in 1988. Prior to AVstar's use of the RSA designation, Precision was the only manufacturer of fuel injection servos to use this particular designation.

Avco, through its unincorporated division Lycoming Engines, manufactures general aviation engines. Avco previously purchased its fuel injection servos

---

[1] Two significant issues remain pending before the court, both relating to AVstar's involvement in this litigation. The first is the argument raised by Avco in their motion to strike that Precision has improperly joined AVstar and therefore Precision's answer and counterclaims must be stricken. The second issue is whether AVstar's bankruptcy automatically stays any claims brought against it by Precision, which would then impact the court's ability to grant Precision its requested relief against AVstar, in the event that such relief may be warranted at a later stage in this litigation. Because the court will deny the motion for preliminary injunction, it is not necessary to decide these issues in the present memorandum.

exclusively from Precision, but it has recently begun purchasing at least a portion of its servos from AVstar.

Avco initiated this action by filing a complaint against Precision, in which it brought claims alleging defamation, product disparagement, and tortious interference with contractual relations, sought a declaratory judgment that Avco's use of particular model designations for aircraft fuel injection servos did not violate the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and requested cancellation of trademark registration numbers corresponding to a collection of fuel injection servos manufactured by Precision. Specifically, Avco requested cancellation of the trademark registrations for the servo designations RSA-10ED1, RSA-10AD1, RSA-5AD1, RSA-10DB1, RSA-10ED2, RSA-7DA1, RSA-7AA1, RSA-5AB1, and RSA-5AD2 (collectively, the "RSA designations" or "RSA marks"). (Doc. 1 ¶77).

Precision responded by joining defendant AVstar, filing counterclaims for, *inter alia*, trademark infringement against AVstar and Avco, and moving the court for a preliminary injunction restraining both defendants from using the RSA designations to reference fuel injection servos made by AVstar.

## II. Discussion

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Natural Resources Defense Council, 555 U.S. 7, 24 (2008). A court considering a request for preliminary injunctive relief must consider four factors: 1) whether the movant has shown that they have a reasonable probability of success on the merits of their argument; 2) whether the movant will suffer irreparable harm

in the absence of relief; 3) whether granting the preliminary injunction will result in greater harm to the nonmoving party; and 4) whether the public interest favors granting the injunction. American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff, 669 F.3d 359, 366 (3d Cir. 2012). "The moving party's failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'" Id. (quoting *In re* Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982)). All of the factors must be satisfied to accord relief to Precision, but two of them – whether Precision has demonstrated a likelihood that they will succeed on the merits, and whether the public interest favors issuing a preliminary injunction – are particularly relevant to the court's ruling against Precision. The court will address each in turn.

### A. **Precision's Likelihood of Success on the Merits**

Precision asserts that Avco and AVstar's use of the RSA designations to refer to fuel injection servos manufactured by AVstar constitutes trademark infringement of their registered marks, and accordingly requests a preliminary injunction against Avco and AVstar preventing them from identifying AVstar-made servos by the RSA designation.

To succeed on a claim for trademark infringement, a plaintiff generally must prove three elements. First, the plaintiff must show that the marks are "valid and legally protectable;" second, the plaintiff must show that they own the mark in question; and third, the plaintiff must show that the defendant's "use of the marks to identify goods or services is likely to create confusion concerning the origin of the

4

goods or services." Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990). A valid mark must be "capable of distinguishing . . . [the owner's] goods from those of others;" i.e., it must be "distinctive." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). An identifying mark must be either "inherently distinctive *or* . . . [have] acquired distinctiveness through secondary meaning." Id. at 769.

As a threshold matter, it is undisputed that Precision's marks are not inherently distinctive. (See Transcript of Prel. Inj. Hearing at 87-88 (*hereinafter*, "Transcript")). The RSA marks are recorded on the supplemental register, and supplemental registration does not confer a presumption of validity on the mark. Hence, Precision bears the burden of establishing that the RSA designations have acquired secondary meaning. See 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 19.36 (4th ed., database updated 2012); 15 U.S.C. § 1094. To this end, Precision has submitted to the court a litany of declarations and other exhibits which, it contends, establish that the RSA marks have attained secondary meaning indicating that Precision is the exclusive source of fuel injection servos that bear the RSA mark. Avco disputes this, arguing that the RSA designations connote a generic type of fuel injection servo, rather than any particular manufacturer thereof.

For a descriptive mark to acquire secondary meaning, "the primary significance of a product feature or term [must be] to identify the source of the product rather than the product itself." Duraco Products, Inc. v. Joy Plastic

5

Enterprises, Ltd., 40 F.3d 1431, 1440 (3d Cir. 1994) (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11 (1982)); see also Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc., 696 F.3d 206, 226 (2d Cir. 2012) ("The crucial question in a case involving secondary meaning always is whether the public is moved in any degree to buy an article because of its source." (internal citations and quotations omitted)); Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000) ("Secondary meaning exists when the mark 'is interpreted by the consuming public to be not only an identification of the product or services, but also a representation of the origin of those products or services.'" (quoting Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3d Cir. 1978))). Courts may consider a variety of factors in determining whether a mark has acquired secondary meaning, which may include

> (1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6) customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion.

Id. The existence of secondary meaning is a question of fact. Dranoff-Perlstein Accocs. v. Sklar, 967 F.2d 852, 862 (3d Cir. 1992).

Precision submitted to the court thirteen declarations and a number of documentary exhibits intended to establish secondary meaning of the RSA marks. Nine of these declarations come from individuals who work generally in the fields of

6

aircraft engine maintenance, repair, and overhauling.[2] Each of these nine declarations is largely identical, indicating that the declarant had worked with RSA branded servos, that they understood RSA branded servos to come from the Bendix Corporation, or later from Precision, and that they were not aware of any other manufacturer of RSA branded servos. Precision also presented the declaration of Roger Hall, general manager of Precision since 2007 and employee of the firm since 1990. Hall stated that, prior to the current controversy with AVstar, no other manufacturer produced fuel injection servos bearing the RSA mark. (Decl. of Roger Hall, Doc. 25 at 3). Hall also stated that, while Precision does not engage in extensive traditional advertising because they sell a product to a highly specialized market, they nonetheless promote the RSA product line on their website and in brochures. (Id. at 5, Ex. C).

At the hearing on Precision's motion, Avco presented documentary evidence and witness testimony to show that the RSA designations refer not to a particular manufacturer of fuel injection servos, but to a generic *type* of fuel injection servo, which could be manufactured by *any* company. Avco presented the declaration of Donald J. Rivera, who worked for Precision's predecessor Bendix in the 1970s through the early 1980s. Rivera stated that the use of RSA model number designations was never considered to be proprietary or an identifier of source, but

---

[2] (See Decl. of Bob Bejna, Doc. 21; Decl. of Terri Lee Bell, Doc. 22; Decl. of Warren Cook, Doc. 24; Decl. of Greg Hoopes, Doc. 26; Decl. of Mike James, Doc. 27; Decl. of Bob Johnson, Doc. 28; Decl. of Gene Martin, Doc. 29; Decl. of John Pava, Doc. 31; Decl. of Dennis Wyman, Doc. 33).

rather are terms in the "language of the industry that describe[] the particular assemblage and sizes of parts that make up the servos." (Decl. of Donald J. Rivera, Plaintiff's Ex. A). Rivera contrasted these model designations with other Bendix trademarks, such as the "flying B" logo, which Rivera stated was regarded and registered as a trademark. (Id.) He further explained that "RS" means that the "fuel 'regulation' is accomplished by 'servo,'" and that "A" connotes "direct acting" or "actuation." (Id.; see also Plaintiff's Ex. B (describing in detail the meaning of each character in an RSA model designation)). Avco also notes that Precision, on their website, states that RSA refers to an "inline stem-type regulator injection system," but not necessarily one produced exclusively by Precision. (See Plaintiff's Ex. B). Avco also presented documentary evidence of the identification plates that appear on the actual fuel injection servos. These metal plates bolted onto the servo communicate a number of facts about the product, including the model number, serial number, basic number, parts list number, *and* the identity of the manufacturer. (Plaintiff's Ex. C).

Marian Folk, principal engineering consultant and designated engineering representative to the FAA for Lycoming Engines, testified on behalf of Avco. She stated that in the course of developing a new engine model, Lycoming would obtain and test an appropriate fuel injection servo for the specific needs of the engine. (Transcript at 37). Under any given model number – for example, RSA-5AD1 – Folk testified that there could be "five, eight . . . twelve part numbers that are unique," and that the RSA designation refers to a family of injectors whose specific units

8

could be produced by different manufacturers. (Id. at 39). For example, a RSA-5AD1 model injector produced by Precision may be assigned Lycoming part number ABC, while a RSA-5AD1 produced by AVstar might be assigned the Lycoming part number XYZ. (Id. at 41).

At this early stage of litigation, Precision need not prove by a preponderance of the evidence that the RSA designations have acquired a secondary meaning identifying Precision as the exclusive source, and Precision has put forth some evidence suggesting secondary meaning. However, this evidence has been strongly and effectively rebutted by Avco, particularly with regard to the Rivera declaration, which states in no uncertain terms that the RSA designation was never intended by Bendix to be a source identifier. At a later stage in this litigation, after the close of discovery, Precision may be able to establish that the RSA designations, in the mind of the relevant market, refer specifically to their own products. But, on the record as it exists today, the court finds that Precision has not carried its burden to establish a likelihood of success of establishing that the RSA designations have acquired secondary meaning, and are therefore valid marks.

### B. The Public Interest

The final factor courts consider in determining whether to grant a preliminary injunction is whether such an injunction would be in the public's interest. In this case, the court finds that granting the injunction would not be in the best interests of the public. Avco presented evidence that an injunction could present quality and safety issues with regard to the maintenance, repair, and

9

overhaul of general aviation engines. When asked what effect an injunction might have on flight safety, Ms. Folk responded that use of the RSA designation is important for operators to know whether their equipment is subject to a service bulletin. She stated:

> As kind of similar to that service bulletin that I looked at before, if you can't scope specific groups of injectors for quality issues or safety issues, it's going to be difficult to pinpoint or identify the potential owners and operators that, you know, need to take corrective action. If you can't identify for them specifically, you know, fairly quickly whether they're . . . subject or whether they're not, I don't know what level of compliance you will get.

(Transcript at 52). The RSA designation serves as a kind of shorthand. If Avco were prohibited from referring to non-Precision made servos by the RSA designation, then service bulletins addressing those servos would have to precisely identify every specific part number affected by a service bulletin, rather than group them by RSA designation. She elaborated:

> You would have to provide a list of part numbers. You would also have to go back and generate a historic list of part numbers. . . . [T]hese injectors remain in the field for decades. They're supposed to be overhauled, but they are not necessarily overhauled to the latest configuration. So you would have – not only would you have to provide all of the part numbers for today for what are current part numbers, but you would have to do the data dive to go back and make sure that all of the older superseded or obsolete part numbers are also reflected in your service publications.

(Id. at 50-55)

If Precision's request for an injunction were granted, it may be more difficult for owners, operators, repairmen, mechanics, and other individuals tasked with maintaining the airworthiness of general aviation craft to identify whether a

10

component in their engine is subject to a mandatory service bulletin issued by an engine manufacturer, or an airworthiness directive issued by the FAA. Particularly in light of the court's finding that Precision has not demonstrated a likelihood of success on the merits, the court finds that the potential for substantial confusion in such an important field as flight mechanics counsels against granting a preliminary injunction.

## III. Conclusion

For the reasons discussed *supra*, the court declines to grant Precision's motion for preliminary injunctive relief. An appropriate order follows.

      S/ Christopher C. Conner
      CHRISTOPHER C. CONNER
      United States District Judge


Dated:       November 19, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AVCO CORPORATION,** | : | CIVIL ACTION NO. 4:12-CV-1313 |
|    Plaintiff, | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| | : | |
| **PRECISION AIRMOTIVE, LLC,** | : | |
|    Defendant | : | |
| | : | |
| v. | : | |
| | : | |
| **AVSTAR FUEL SYSTEMS, INC.,** | : | |
|    Counterclaim-Defendant | : | |

## **ORDER**

AND NOW, this 19th day of November, 2012, upon consideration of the motion for a preliminary injunction (Doc. 18) filed by defendant/counter-plaintiff Precision Airmotive, LLC, and for the reasons discussed in the accompanying memorandum, it is hereby ORDERED that the motion is DENIED.

                                                                            S/ Christopher C. Conner  
                                                                          CHRISTOPHER C. CONNER  
                                                                          United States District Judge