IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| AVCO CORPORATION, | : | Case No. 4:12-cv-01313 |
| --- | --- | --- |
| Plaintiff | : | (Judge Brann) |
| v. | : | |
| PRECISION AIRMOTIVE LLC, | : | |
| Defendant. | : | |

**MEMORANDUM**

May 10, 2013

For the reasons that follow, the Court grants in part and denies in part the plaintiff's September 24, 2012 motion to strike defendant's answer and counterclaims. (ECF No. 35).

**I.      Background**

AVCO Corp. (hereinafter, "AVCO") commenced this action by filing a complaint on July 6, 2012, alleging various claims against defendant Precision Airmotive LLC (hereinafter, "Precision") – defamation (count I), product disparagement (count II), tortious interference with contractual relations (count III) – and seeking declaratory relief and the cancellation of several trademarks. (Compl., ECF No. 1).

AVCO asserts that it (acting through its unincorporated Lycoming Engines

division (hereinafter, "Lycoming")) is a manufacturer and seller of aircraft engines. (Compl. ¶ 8). Its engine designs are "type certificated," meaning that they have been approved by the Federal Aviation Administration (hereinafter, "FAA"). A fuel injection system (also known as a "servo") is a component part of many of AVCO's designs, (Id. ¶ 10), and AVCO designates servos appropriate for installation in its engines by codes of the form RSA-10ED1, with each component of the code (i.e., "RSA," "10," "E," "D," "1") describing an aspect of the servo. (Id. ¶¶ 11-17). AVCO calls these codes "model designations." Each model designation corresponds to an AVCO part number associated with AVCO's engine design. (Id. ¶ 18). As the type certificate holder for its engines, AVCO is entitled by law to delegate the manufacture of parts (including servos) for its engines to outside suppliers, and has selected two such suppliers for this purpsoe – defendant Precision and AVStar Fuel Systems, Inc. (hereinafter, "AVStar"). (Id. ¶¶ 19-20).

AVCO alleges that Precision has engaged in a wrongful campaign "to obtain a monopoly" in the servo supply market by "attempting to prevent Lycoming from using any suppliers other than" Precision, and by registering and seeking to enforce the trademark of the model designations. (Id. ¶¶ 25-26). In particular, Precision has been misrepresenting to AVCO customers that AVStar servos are counterfeit; that Precision is the only manufacturer of the RSA-model designated servos; that

Precision's servos incorporate patented technology; that other manufacturers of the servos are infringing on Precision's trademarks; and that servos from other manufacturers carry a safety risk. (Id. ¶¶ 27-40).

Precision answered on September 10, 2012 (ECF No. 16) (hereinafter, "Answer"), denying liability and asserting counterclaims against AVCO and AVStar: trademark infringement (count I), unfair competition under the Lanham Act (count II), unfair competition under Pennsylvania law (count III), breach of contract (count IV against AVCO only), tortious interference with contractual relations (count V against AVStar only), and tortious interference with prospective contractual relations (count VI).

Precision asserts that it and its predecessors-in-interest have for several decades been the "sole and exclusive source of fuel injection servos" bearing the model numbers beginning with RS and RSA. (Answer ¶¶ 8-13). In 2010, Precision registered nine such model numbers (all beginning "RSA") as trademarks. Precision claims that "[t]here has never been a time, prior to the recent infringement by [AVCO] and AVStar, when anyone in the industry used the RSA Marks to refer to fuel injection servos manufactured by a source other than Precision" or its predecessors. (Id. ¶ 13).

Precision alleges that AVStar, after years in the overhaul and replacement

3

parts business, recently entered into direct competition with Precision by manufacturing new servos. (Answer ¶¶ 14-15). In order to attract customers away from Precision, AVStar has been placing Precision's RSA marks on AVStar servos. (Id. ¶ 16). The strategy has succeeded. AVCO informed Precision that it was cancelling numerous existing orders from Precision to purchase from AVStar instead. (Id. ¶ 18).

But AVCO is not just an innocent purchaser, according to Precision. Rather, it "instructed, knew about, or otherwise was involved in AVStar's decision to use the RSA marks," and has referred to AVStar servos by their RSA marks in the documentation associated with its engines. (Id. ¶¶ 19-20). It has done this because it, along with AVStar "consciously desired and intended to use the RSA Marks for the purpose of associating AVStar's new fuel injection servos with the decades of goodwill associated with the RSA Marks, which goodwill belongs to Precision." (Id. ¶ 21).

On September 24, 2012, AVCO briefed a motion to strike Precision's answer and counterclaims for failure to comply with the Federal Rules of Civil Procedure.[1] (ECF No. 36) (hereinafter, "AVCO Supp. Br."). Precision filed

---

[1] AVCO also moved against Precision's motion for a preliminary injunction. (Mot. Prelim. Inj., Sept. 10, 2012, ECF No. 18). This issue was separately briefed

opposing papers on September 28, 2012 (ECF No. 39) (hereinafter, "Precision Opp. Br.") and AVCO replied on October 1, 2012 (ECF No. 42) (hereinafter, "AVCO Reply Br.").

## II. The Motion is Granted in Part and Denied in Part

AVCO's opening and reply briefs take the Court on a turbulent flight over the Federal Rules of Civil Procedure (hereinafter, the "Rules"), with layovers at Rules 7, 8, 11, 12, 13, 14, 19, 20, 21 and 65.

### A. AVCO's Opening Brief

At liftoff, AVCO asked the Court to strike Precision's answer and counterclaims for improper joinder of additional party AVStar. Counterclaims and crossclaims are governed by Rule 13, and Rule 13(h) in particular provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim."

---

(see ECF Nos. 19, 41, 47) and the preliminary injunction was denied on November 19, 2012. (Mem. & Order, ECF No. 60).

AVCO's motion to strike also suggested that Precision was at fault for joining AVStar in violation of the Bankruptcy Code's automatic stay provision. (AVCO Supp. Br. at 1). AVStar moved to dismiss Precision's counterclaims on this ground and others at a later date (AVStar Mot. To Dismiss, Jan. 2, 2013, ECF No. 63), and the issue was separately briefed (see ECF Nos. 64, 65, 66). The Court will decide the bankruptcy issues in a separate Memorandum & Order.

5

AVCO asserted that joinder of AVStar was improper because Precision, "[i]n complete disregard of the Federal Rules of Civil Procedure . . . simply added a non-party, [AVStar], to the case caption [and] then proceeded to assert various commingled claims and allegations against both [AVCO] and nonparty AVStar, singularly and collectively." (AVCO Supp. Br. at 5). It was AVCO's contention that "a party seeking to join a nonparty must first file a motion." (Id. at 9).

But for all of AVCO's vehemence with respect to Precision's "complete disregard" of the Rules in failing to file a joinder motion, the Court has identified no Rule that requires such a motion, and trustworthy authorities confirm there is none. See 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1434 (3d ed.) ("Although not required by Rule 13(h), the general practice is to obtain a court order to join an additional party.") (hereinafter "Wright & Miller").[2]

Counterclaims are asserted in pleadings, see Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim . . .") & Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim . . ."), and AVCO has identified no prejudice to it that

---

[2]This Court's Local Rules require a motion to join a third-party defendant under Rule 14, see L.R. 14.1 & L.R. 14.2, but say nothing about a motion to join an additional party to a counterclaim under Rule 13.

6

arose from learning of Precision's desire to join AVStar by reading Precision's pleading as opposed to reading a prior motion. Accordingly, the Court sees no reason why such a motion should be required.

The only prejudice AVCO asserted related to the alleged failure of Precision's counterclaims to comply with Rule 8. According to AVCO, "Precision, by commingling claims against a nonparty and a party to an action violates the [R]ule's purpose of providing fair notice of the claim and the grounds upon which it rests." (AVCO Supp. Br. at 10). But the Court comes to nothing when it endeavors to identify how Precision's counterclaim does not provide AVCO adequate notice, and, to be frank, finds it difficult to take the claim of inadequate notice seriously in light of AVCO's failure to give any cogent example of how confusion or surprise will befall it.

Thus, even were it proper to strike Precision's answer and counterclaim on the grounds set forth in AVCO's opening brief – and, in any case, it would not be proper, see Fed. R. Civ. P. 12 & Fed. R. Civ. P. 21 – the Court finds AVCO's arguments to be without merit.

**B.    AVCO's Reply Brief**

After Precision filed its opposing brief, AVCO detoured somewhat. Although its reply brief maintained the unmeritorious "fair notice" argument,

(see AVCO Reply Br. at 1), AVCO de-emphasized its argument respecting the necessity of a motion to join AVStar, (see AVCO Reply Br. at 3), and asked the Court's "indulgence" to "convert [its] Motion to Strike to a Motion to Sever pursuant to Federal Rule of Civil Procedure 21." The principal basis for the motion to sever was that joinder of AVStar did not meet the requirements of Rule 20.

Rule 20 governs permissive joinder of defendants to counterclaims, see Fed. R. Civ. P. 13(h), and the Rule provides at (a)(2) that "[p]ersons . . . may be joined in one action as defendants if . . . (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences [and] (B) any question of law or fact common to all defendants will arise in the action."

AVCO argues that Precision's counterclaims against AVStar are improper because they do not arise out of the same transaction or occurrence as those against AVCO. (See AVCO Reply Br. at 7-11). The argument fails because, in making it, AVCO distorts Precision's allegations and proceeds to apply inapposite caselaw to its caricature. AVCO asserts that it and AVStar are "unrelated businesses," the "only common thread in each of Precision's allegations [being] that AVCO and AVStar each independently have infringed upon Precision's trademarks." (Id. at 9). This ignores the true nature of Precision's allegations, which is that AVCO and

8

AVStar are acting in concert to confuse engine purchasers with respect to the provenance of the servo installed in AVCO's engines. (Answer ¶¶ 19-23). Both benefit from market confusion because (presumably) AVCO saves on manufacturing costs by installing a lower cost AVStar servo; AVStar gets AVCO's business; and purchasers of AVCO's engines are none the wiser, still believing that they are paying for an engine with a Precision servo because of AVStar's and AVCO's use of Precision's trademarks. (See id. ¶ 21 ("Lycoming and Avstar consciously desired and intended to use the RSA Marks for the purpose of associating AVStar's new fuel injection servos with the decades of goodwill associated with the RSA Marks, which good will belongs to Precision Airmotive.")).

Contrary to AVCO's contentions, the counterclaims against AVCO and AVStar do arise from the same "series of transactions or occurrences," and having considered AVCO's prejudice- and efficiency-based arguments for severing the counterclaims against AVCO and AVStar (see AVCO Reply Br. at 11-15), the Court finds them unpersuasive as well.

Finally, AVCO hints at the impropriety of Precision's assertion of a counterclaim solely against AVStar. (See AVCO Reply Br. at 4). The United States Court of Appeals for the Third Circuit has explained that "a counterclaim or

cross-claim may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party." FDIC v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994) (quoting Wright & Miller § 1435). Although lower courts nationwide have interpreted this requirement differently where, as here, the counterclaimant has mixed counterclaims against both the existing and additional party with counterclaims solely against the additional party, see Stonecrest Partners, LLC v. Bank of Hampton Rds., 2011 WL 3664412 (E.D.N.C. Aug. 18, 2011), courts of this Circuit appear to have taken a strict approach, dismissing any counterclaim alleged solely against an additional party. See S. Ocean Seafood Co. v. Holt Cargo Sys. Inc., 1997 WL 539763, at *2 (E.D. Pa. Aug. 11, 1997). Accordingly, this Court will dismiss count V of Precision's Answer and Counterclaims for being solely against AVStar.

**III. Conclusion**

For the foregoing reasons, AVCO's motion to strike Precision's answer and counterclaims is granted in part and denied in part.

An Order follows.

s/ Matthew W. Brann<br>
Matthew W. Brann<br>
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AVCO CORPORATION, | : | Case No. 4:12-cv-01313 |
| Plaintiff | : | (Judge Brann) |
| v. | : | |
| PRECISION AIRMOTIVE LLC, | : | |
| Defendant. | : | |

**ORDER**

AND NOW, this 10th day of May, 2013, it is hereby ORDERED in accordance with the accompanying memorandum that AVCO's motion to strike Precision's answer and counterclaims (Sept. 24, 2012, ECF No. 35) is granted in part and denied in part. The motion to sever count V of Precision's Answer and Counterclaims is GRANTED, and this count of the Answer and Counterclaims is DISMISSED from this action as improperly joined. The motion to strike the remainder of Precision's Answer and Counterclaims is DENIED.

s/ Matthew W. Brann<br>
Matthew W. Brann<br>
United States District Judge