IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AVCO CORPORATION, | : | Case No. 4:12-CV-01313 |
| | : | |
| Plaintiff & | : | |
| Counterdefendant, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| TURN AND BANK HOLDINGS, | : | |
| INC. and PRECISION AIRMOTIVE | : | |
| LLC, | : | |
| | : | |
| Defendants & | : | |
| Counterclaim Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| AVSTAR FUEL SYSTEMS, INC. | : | |
| | : | |
| Counterclaim Defendant. | : | |

**MEMORANDUM**
February 3, 2015

Pending before this Court is a Motion for a Preliminary Injunction (ECF No. 101) filed by Defendant Turn and Bank Holdings, Inc. (hereinafter "TNB") on November 4, 2014.[1]  TNB seeks injunctive relief to prevent Plaintiff and Counter-

---

[1] TNB also included Precision Airmotive LLC as a co-defendant in the action.  However, the parties have stipulated that Precision Airmotive LLC may be joined as a defendant and counterclaim-plaintiff in this action upon TNB's filing of an answer, affirmative defenses and counterclaims to Plaintiff AVCO's Second Amended Complaint (ECF No. 142).

1

defendant AVCO Corporation[2] (hereinafter "AVCO") from infringing TNB's trademarks in connection with general aviation fuel injection servos.  In response, Plaintiff filed a Motion to Strike TNB's answer, affirmative defenses, counterclaims, and Motion for a Preliminary Injunction (ECF No. 104) based on improper joinder and the inclusion of confidential information from a previous settlement agreement negotiated and entered in another federal court.  AVCO filed no other response or opposition to TNB's Motion for a Preliminary Injunction.[3]  When this Court granted TNB's Motion to File under Seal that settlement agreement (ECF No. 112), Plaintiff AVCO filed a Motion for Reconsideration of the Court's order (ECF No. 116).  The Court held a hearing on the pending motions on January 12, 2015 and took evidence in the form of documentary exhibits and witness testimony.

At some point during the pendency of this litigation, AVCO filed a Motion to Enforce the Settlement Agreement in the United States District Court for the Middle District of North Carolina with United States District Judge Thomas Schroeder.  On January 26, 2015, this Court entered an Order staying the

---

[2] This case has a very convoluted history in which parties have been joined and disputed and dropped throughout.  It appears to this Court, based on the stipulation of the parties on January 28, 2015 (ECF No. 142), that AVStar Fuel Systems, Inc. (hereinafter "AVStar") was not a party at the time that Defendants filed their Motion for a Preliminary Injunction (ECF No. 101), although for preliminary injunctive relief was similarly requested against AVStar.  However, even if AVStar were a party to the instant motion, the Court would come to the same conclusion because the motion would necessarily rest on the same factual scenario which is addressed in this memorandum.

[3] As a result of Plaintiff's failure to otherwise file any opposition brief, TNB filed a "Renewed Motion for Preliminary Injunction" (ECF No. 111) in which they argue to the Court that AVCO's Motion to Strike does not constitute an opposition to the pending motion.  Though this document has been documented as a renewed motion, it is more aptly characterized as a letter to the court.

unresolved motions pending the resolution of the motion before Judge Schroeder (ECF No. 140).  On January 26, 2015, AVCO withdrew the motion pending before Judge Schroeder, and then on January 28, 2015, the parties jointly filed a Motion to Withdraw AVCO's Motion to Strike (ECF No. 104) and AVCO's Motion for Reconsideration (ECF No. 116), which this Court granted.  Accordingly, TNB's Motion for a Preliminary Injunction is the only remaining matter now ripe for consideration.  For the reasons discussed, the Court will deny the motion

**I. BACKGROUND**

Precision Airmotive, LLC (hereinafter "Precision"), the predecessor of Defendant TNB, manufactured fuel injection servos for general aviation engines, a component which controls the delivery of a combustible fuel-air mixture to the engine.[4]  These servos are identified by alpha-numeric designations, each prefaced by the abbreviation "RSA".  Though the parties originally agreed that these designations describe various attributes of the servos including the type of fuel injection system, and nominal and actual bore sizes[5], TNB now apparently maintains that these marks "have been used continuously and exclusively for decades to identify a distinct brand of fuel injection servos emanating from a single

---

[4] This Court has before it only the benefit of TNB's exposition of the facts in this case since AVCO did not file an opposition brief.  As such, the Court has gleaned many of the facts asserted in this section from Chief Judge Conner's earlier memorandum of November 19, 2012.
[5] *See* Memorandum and Order at 2, Nov. 19, 2012, ECF No. 60.

original equipment manufacturer." Def.'s Brief in Support at 2, Nov. 4, 2014, ECF No. 101 (hereinafter "Def.'s Brief in Support").

Specifically, the RSA Marks at issue in the current motion are the following: RSA-10ED1, RSA-10AD1, RSA-5AD1, RSA-10DB1, RSA-10DB2, RSA-10-ED2, RSA-7DA1, RSA-7AA1, RSA-5AB1, and RSA-5AD2.  Precision purchased the right to make the product line at issue from the Bendix Corporation in 1988.  AVStar is another company which has recently begun manufacturing fuel injection servos with the same alpha-numeric identifications.  However, prior to AVStar's use of the RSA designation, Precision was the only manufacturer of fuel injection servos to use this particular designation.

AVCO, through its unincorporated division, Lycoming Engines, manufactures general aviation engines.  It previously purchased its fuel injection servos exclusively through Precision, but it had recently begun purchasing at least a portion of its servos from AVStar prior to the institution of the instant litigation.

AVCO initiated this lawsuit by filing a complaint against Precision in which it brought claims alleging defamation, product disparagement, and tortious interference with contractual relations, sought a declaratory judgment that AVCO's use of particular model designations for aircraft fuel injection servos did not violate the Lanham Act, and requested cancellation of trademark registration numbers corresponding to a collection of fuel injection servos.  Precision

responded by joining AVStar, filing counterclaims for, *inter alia*, trademark infringement against AVStar and AVCO, and moving the court for a preliminary injunction restraining AVCO from using the RSA designations to reference fuel injection servos made by AVStar.  On November 19, 2012, the Honorable Christopher C. Conner, then presiding over this case, denied that request for preliminary injunctive relief.

On January 14, 2014, TNB obtained registration on the Principal Register for the RSA designation.  On September 8, 2014, the parties stipulated to substitute TNB as a party in place of Precision. Two months later, on November 4, 2014, TNB once more moved for preliminary injunction requesting the same relief as in Precision's previous motion.  This matter is currently before the Court.

## II. AVCO'S OPPOSITION

In their Renewed Motion for a Preliminary Injunction (ECF No. 111), Defendants argue that Plaintiff has failed to file an oppositional brief to its Motion for a Preliminary Injunction; consequently, its motion should be considered unopposed.  Plaintiff does not respond to this argument.

The local rules are very clear on this issue.  Local Rule 7.6 mandates that "[a]ny party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief . . .  Any party who fails to comply with this rule shall be deemed

not to oppose such motion." L.R. 7.6. Because TNB filed their brief in support of their motion for a preliminary injunction on November 4, 2014, AVCO was required to file a brief in opposition, if it chose to do so, by November 18, 2014.

AVCO did file a Motion to Strike on November 7, 2014; however, it filed no additional oppositional documents to the preliminary injunction request. Federal Rule of Civil Procedure 12(f) authorizes courts to strike only pleadings. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); *see also Walthour v. Tennis*, No. 3:CV-06-0086, 2008 WL 318386, at *8 (M.D.Pa. Feb. 4, 2008) ("Federal Rule of Civil Procedure 12(f) applies to pleadings, and motions, briefs, or memoranda, objections, or affidavits may not be attacked by a motion to strike.") (Vanaskie, J.) (citations omitted). A motion for a preliminary injunction cannot appropriately be termed a pleading for the purposes of Rule 12(f). As such, AVCO's motion was procedurally improper. Moreover, since the motion offered no defense to TNB's motion but rather only introduced collateral issues regarding the inclusion of confidential information and improper joinder of a party, it cannot constitute a substantive opposition within the meaning of Local Rule 7.6. Consequently, TNB's Motion for a Preliminary Injunction will be deemed unopposed.

Nevertheless, even though TNB's Motion for a Preliminary Injunction is deemed unopposed, this does not mean that the Court will simply accept TNB's arguments without qualification and grant its motion without review. Rather, this Court will still evaluate TNB's demonstrated facts and arguments within the context of the controlling law to determine whether an injunction is warranted and desirable.

## III. DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must establish four factors: (1) a reasonable probability of success on the merits of their argument; (2) irreparable harm to the movant in the absence of relief; (3) granting the preliminary injunction will not result in greater harm to the nonmoving party; and (4) the public interest favors granting the injunction. *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).

TNB, through its predecessor in interest Precision Airmotive (hereinafter "Precision"), had previously filed on September 10, 2012 a very similar motion for preliminary injunctive relief to prevent AVCO from utilizing the same RSA designations to reference fuel injection servos made by third-party AVStar. As noted above, in an opinion dated November 19, 2012, Chief Judge Conner denied

Precision's motion on the grounds that: (1) Precision had not demonstrated a likelihood of success on the merits by a preponderance of the evidence because the marks were neither inherently distinctive nor had Precision established that they had acquired secondary meaning; and (2) to grant the injunction would be contrary to the public interest in that an injunction could present quality and safety issues with regard to the maintenance, repair, and overhaul of general aviation engines; therefore, it may be more difficult for owners, operators, repairmen, mechanics, and other individuals who maintain the airworthiness of general aviation craft to identify whether a component in their engine is subject to a mandatory service bulletin issued by a manufacturer.

In determining the first issue, Chief Judge Conner accepted AVCO's argument that the RSA designations refer not to a particular manufacturer of fuel injection servos, but rather to a generic type of fuel injection servo, which could be manufactured by any company. AVCO also presented documentary evidence of the identification plates that appear on the actual fuel injection servos. These metal plates bolted onto the servo communicate a number of facts about the product, including the model number, serial number, basic number, parts list number, and the identity of the manufacturer.

Now that TNB has renewed Precision's motion for preliminary injunctive relief, it must demonstrate to this Court that there has been some sort of change in

information or circumstances which alters the balance of factors in its favor. *See Hayman Cash Register Company v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) ("Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances."); *see also Boehringer Ingelhein Vetmedica, Inc. v. Schering-Plough Corporation*, 68 F.Supp.2d 508, (D.N.J. 1999) (finding that the movant on a renewed motion for a preliminary injunction could not satisfy its burden of proving the elements which were also lacking in the original motion). It therefore must seek to prove that it can now demonstrate a likelihood of success on the merits because of facts not in existence in September 2012 and, further, that something has occurred since Chief Judge Conner's order which changes his determination that the public interest would actually be harmed by the proposed injunctive relief.[6]

**A. TNB's Likelihood of Success on the Merits**

In support of its first contention, TNB argues that it has obtained from the United States Patent and Trademark Office (hereinafter the "USPTO") the exclusive right to the "RSA Mark" in connection with general aviation fuel injectors, cloaking the "RSA Mark" in presumptive validity which did not exist when Chief Judge Conner rendered his previous decision. Consequently, it argues that this presumptive validity satisfies its burden of showing a likelihood of

---

[6] Though TNB makes additional arguments relating to elements two and three of the analysis, it is not necessary to consider these arguments given the Court's determination that TNB has not adequately demonstrated a change in circumstances sufficient to overcome Chief Judge Conner's holding on elements one and four.

success on the merits.  As stated, AVCO made no response to this argument, although in the hearing it alluded to the possibility that TNB obtained this trademark by presenting false information to the USPTO.[7]

To succeed on a claim for trademark infringement, a plaintiff generally must prove that: (1) the marks are valid and legally protectable; (2) they own the mark in question; and (3) the defendant's use of the marks to identify goods or services is likely to create confusion regarding the origin of the goods or services.  *See Optician's Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990).  A valid mark must be "capable of distinguishing . . . [the owner's] goods from those of others."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).  An identifying mark must be either "inherently distinctive or . . . [have] acquired distinctiveness through secondary meaning."  *Id.* at 769.  For a descriptive mark to acquire secondary meaning, "the primary significance of a product feature or term [must be] to identify the source of the product rather than the product itself."  *Duraco Products, Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1440 (3d Cir. 1994).

Chief Judge Conner determined that Precision had not satisfied its burden of demonstrating validity of the mark so as to create a likelihood of success on the merits because it was clear that the marks were not inherently distinctive and

---

[7] Unfortunately, the Court has no briefing or documentary evidence to back up this bald assertion by AVCO.  Even if such an argument is in fact true, this Court cannot simply accept AVCO on its word that TNB lied to obtain the trademark.

Precision had not adequately established that the marks had acquired secondary meaning.  TNB now argues that its registration with the USPTO creates a presumption of validity, the element that Chief Judge Conner had determined was lacking.

>   TNB is correct in this regard.  As per 15 U.S.C.A. § 1507(b),
>
>   A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate.

15 U.S.C.A. § 1507(b).

Nevertheless, TNB must still prove that the use of the RSA marks by AVCO is likely to create confusion.  "Generally, if the overall impression created by marks is essentially the same, 'it is very probable that the marks are confusingly similar.'" *Opticians Ass'n of America*, 920 F.2d at 195 (citing 2 *McCarthy*, § 23:7).  When the owner of the trademark and the alleged infringer "deal in competing goods or services, the court need rarely look beyond the mark itself.  In those cases the court will generally examine the registered mark . . . and compare it against the challenged mark." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983).  The movant need only show a likelihood of confusion; it need not demonstrate that actual confusion has resulted. *Fotomat Corp. v. Photo Drive-Thru, Inc.*, 425 F.Supp. 693, 703 (D.N.J. 1977); *see also Fisons Horitculture, Inc. v. Vigoro*

11

*Industries, Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) (finding that a likelihood of confusion exists "when the consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.").

In this case, the actual fuel injection servos, while bearing same RSA marks, are clearly labeled as to which company manufactured them.  TNB entered into evidence one servo created by Precision and one servo created by AVStar, each with the company's name printed in demonstratively large letters down the side of the servo.  TNB has not demonstrated beyond a mere hypothetical allegation any actual confusion resulting from AVCO's use of the "RSA Marks."  Moreover, despite the similar designations for the servos, this Court has a hard time imagining that any consumer or operator would be confused as to the origin of the product due to such prominent labeling and therefore fails to find a likelihood of confusion.

**B. The Public Interest**

In support of its contention that Chief Judge Conner was incorrect in finding that the public interest would be harmed by granting injunctive relief, TNB claims,

> [i]n deciding Precision WA's motion for preliminary injunctive relief, this Court observed the undeniably sound proposition that "the potential for substantial confusion in such an important field as flight safety" is a significant consideration in determining whether an injunction should issue, but accepted AVCO's arguments that an injunction would *create* safety issues with regard to the maintenance, repair, and overhaul of aircraft engines.  Following this Court's PI Order, it has become clear that AVCO's

argument is wholly erroneous, and that an injunction is necessary to *avoid* the precise safety issues identified by the Court.

Def.'s Brief in Support at 20. TNB does not, however, explain in its briefings how it has become clear that AVCO's argument is wholly erroneous, nor did it do so at the hearing held by this Court. TNB appears only to reiterate arguments made before Chief Judge Conner in 2012, although it does make an indistinct argument that:

> [s]ince this Court's ruling on Precision WA's motion, the critical importance of clear differentiation between AVStar's servos and those manufactured by Precision has become clear. Evidence since the PI Order reveals that irreparable and catastrophic harm is likely to occur. The Australian and New Zealand AD Notes (Exhibit H) reveal, from government authorities, the impropriety of procedure applicable for one servo that is not equally applicable to a different servo bearing the same trademark. Moreover, the actual confusion in the industry points directly to harm incurred by the public, particularly including non-English speaking people that rely on the "RSA Marks" to convey information about the source of those products – the very definition of a trademark.

Def.'s Brief in Support at 21-22. Unfortunately, this argument is too vague to sway the Court, which in any event declines to reconsider the arguments already rejected by Chief Judge Conner. In sum, and despite the able advocacy of defense counsel, TNB cannot prove any specific change in circumstances since the denial of its last request for injunctive relief as it relates to the public interest; consequently, this Court can find no basis for upending the status quo.

## IV. CONCLUSION

For the foregoing reasons, the Court declines to grant TNB's motion for preliminary injunctive relief. An appropriate Order follows.

BY THE COURT:

/s Matthew W. Brann
Matthew W. Brann
United States District Judge