**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AVCO CORPORATION,<br><br>              Plaintiff<br><br>    v.<br><br>TURN AND BANK HOLDINGS, INC.,<br><br>              Defendant. | CIVIL ACTION NO. 4:12-CV-01313<br><br>(BRANN, J.)<br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

The above-captioned case was referred to the undersigned Magistrate Judge on September 9, 2015, for the purpose of pre-trial management and the resolution of discovery issues. (Doc. 165). Now before this Court is the latest motion in an ongoing discovery dispute dispute between Defendant and Counterclaim Plaintiff Turn and Bank Holdings, Inc. ("TNB"), ("TNB"), and Plaintiff and Counterclaim Defendant AVStar Fuel Systems, Inc ("AVStar"). In In the instant motion, AVStar seeks a protective order pursuant to Federal Rule of Civil Procedure 26(c)(1) to limit the scope of inquiry at the Rule 30(b)(6) deposition scheduled to take take place on September 29, 2016, in which Ron Weaver will serve as the corporate deponent deponent on behalf of AVStar. (Doc. 197). AVCO seeks to preclude or partially limit all but 13 13 of the 68 topics raised in TNB's revised supplemental notice of deposition dated September September 19, 2016. (Doc. 197; Doc. 197-5). Specifically, AVStar seeks to entirely preclude discussion of Topics 12-13, 16-17, 20-21, 24-25, 28-29, 32-34, 37-38, 44-49, 52-53, 55-56, and and 59-61, and also to partially limit discussion of Topics 10-11, 14-15, 18-19, 22-23, 26-27, 30-30-31, 35, 39, 50, 51, 54, and 62-68. (Doc. 197, at 1-2). The motion is fully briefed and ripe for

for decision.[1] (Doc. 203; Doc. 206; Doc. 208). For the following reasons, the Court will **GRANT** AVStar's motion for a protective order in part and **DENY** it in part.

## I. DISCOVERY STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Rule 26(c) authorizes a court to issue a protective order where justice so requires and upon good cause shown. The party seeking a protective order bears the burden of demonstrating the 'good cause' required to support such an order." *Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.*, 136 F.R.D. 385, 391 (E.D. Pa. 1991). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). The decision of whether or not to grant a protective order pursuant to Rule 26(c) rests in the sound discretion of the trial court. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). In determining whether "good cause" exists, courts may consider several factors, including but not limited to: (1) whether disclosure will violate any privacy interests; (2) whether the information is sought for a legitimate or an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; and (4) whether the sharing of information among litigants will promote fairness and efficiency. *Glenmede*, 56 F.3d at 483 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-91 (3d Cir. 1994)).

---

[1] In addition, oral argument was held on this motion via telephone conference on September 27, 2016.

## II. DISCUSSION

### A. TOPICS 47-48: CONFIDENTIAL SETTLEMENT AGREEMENT

AVStar first argues that any inquiry into Topics 47 and 48 should be prohibited because TNB seeks information that would require the breach of a confidential settlement agreement in federal court in North Carolina (the "North Carolina action"). (Doc. 203, at 6-7). TNB counters by asserting that it does not seek inquiry into the terms of the confidential settlement agreement, and that earlier in this same action Judge Brann previously ruled that the publically-available general facts surrounding the North Carolina action should not precluded in their entirety. (Doc. 206, at 5-7 (citing Doc. 141, at 47-48 (transcript of evidentiary hearing on TNB's second motion for a preliminary injunction before Judge Brann))). Furthermore, TNB describes how the underlying facts of the North Carolina action are relevant to this case because both instances involve AVStar's alleged transition away from infringing model designator marks, which goes to AVStar's intent and awareness of the marks. (Doc. 206, at 6). Given these contentions, and cognizant that information and requests may be raised during discovery that are not necessarily admissible at trial, the Court **DENIES** AVStar's motion to the extent that it seeks to preclude discussion of the underlying facts of the North Carolina action as they pertain to AVStar's intent and awareness concerning the marks. *See* Fed. R. Civ. P. 26(b)(1). Nonetheless, TNB may not inquire into the actual details of the settlement agreement or ask about AVCO's motivations in settling the case. In the event that a dispute arises at the Rule 30(b)(6) deposition as to whether a particular line of inquiry requires Mr. Weaver to breach the confidentiality of the settlement agreement, the parties may contact the Court for resolution.

B. TOPICS 12-13, 16-17, 20-21, 24-25, 28-29, 32-34, 37, 39, 50-51, AND 54: OVERHAULED AND EXPERIMENTAL SERVOS

AVStar also objects to any Topics that could involve inquiry into overhauled rather than newly manufactured servos because TNB does not claim that AVStar/AVCO cannot overhaul TNB/Precision servos. (Doc. 203, at 7-8). However, as TNB points out, overhauled servos were discussed at length in TNB's counterclaim against AVStar and AVCO that was filed on January 30, 2015. (Doc. 206, at 7 (citing Doc. 144, at 14-15, 19, 21-22)). Moreover, the Court already devoted significant time to the consideration of this topic at the August 18, 2016 in-person discovery hearing and concluded that TNB's inquiry into overhauled servos was relevant and permissible for discovery purposes. (Doc. 206-4, at 130-133). Accordingly, the Court **DENIES** AVStar's motion to the extent that it seeks to prohibit inquiry into servo overhauls since June of 2012.[2]

C. TOPICS 10-11, 14-15, 18-19, 22-23, 26-27, AND 30-31: PARTICULARITY AND UNDULY BURDENSOME

AVStar next contends that numerous Topics involving costs, profits, and other financial information pertaining to AVStar servos are unduly broad and overly burdensome. (Doc. 203, at 9-10). Specifically, AVStar argues that Mr. Weaver should not be obligated to testify to financial information on a month-by-month basis because AVStar only maintained financial records on an annual basis in the ordinary course of business. During the September

---

[2] The Court also **DENIES** AVStar's attempt to preclude inquiry into "experimental" AVStar servos, which are defined in TNB's notice of deposition as "newly manufactured . . . servos sold or distributed by AVStar not bearing on incorporating any of the Marks. (Doc. 197-5, at 8; Doc. 203, at 8-9). TNB argues that this Topic is relevant because it AVStar's decision not to use the marks for some newly manufactured servos may be evidence to refute AVCO/AVStar's claim that the marks are generic. (Doc. 206, at 9). AVStar fails to sufficiently refute TNB's argument and support its own claim that experimental servos are irrelevant.

27, 2016 telephone conference with the Court, TNB conceded that annual financial information will suffice. AVStar also argues that many of these Topics are overly broad in that they seek financial data from before June of 2012, the month that AVStar allegedly first started selling new servos. In its brief in opposition, TNB appears to backtrack on it its request for financial information from before June of 2012. (Doc. 206, at 10 ("[T]he Topics are . . . tied to the relevant time period; namely, the date of AVStar's first sale of New AVStar Servos (purportedly June 2012) to present.")). Accordingly, the Court **GRANTS** AVStar's motion to the extent that it seeks to limit inquiry to AVStar's financial information on an annual basis and from June of 2012 until present, with the exception of financial information, such as costs, recorded prior to June of 2012 that specifically pertains to new servos. However, the Court **DENIES** AVStar's motion to the extent it seeks to narrow the scope of inquiry as to the specific categories of financial information noticed in the Topics (*i.e.*: sales volume, revenue, direct and indirect costs for manufacturing, promoting, selling and distributing, gross and net profits). If AVStar is unable to produce a corporate witness that can speak to a particular category of financial information at the Rule 30(b)(6) deposition, it will be precluded from introducing this same financial information on its own behalf at trial.

### D. TOPIC 35: AFFILIATES

AVStar also calls for the Court to limit TNB's inquiry into its relationship with and common ownership of its affiliates. (Doc. 203, at 10-11). AVStar argues that these affiliates are are irrelevant to the instant case and merely designed to oppress, embarrass, annoy, and harass harass AVStar. (Doc. 203, at 10). TNB counters by asserting that AVStar fails to point out how how AVStar's relationship with its affiliates is irrelevant or oppressive, embarrassing, annoying, or harassing. (Doc. 206, at 11). Further, TNB contends that inquiry into AVStar's relationship

with these affiliates could lead to evidence regarding sources of damages, witness bias, inducement of infringement, and details surrounding AVStar's formation. (Doc. 206, at 11). The Court agrees that AVStar fails to satisfy its burden here with respect to limiting inquiry into its relationship with affiliates. *See Cipollone,* 785 F.2d at 1121 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Accordingly, the Court **DENIES** AVStar's motion to the extent that it seeks to limit inquiry into its affiliates.

### E. TOPIC 38: THIRD PARTIES

AVStar next seeks to preclude Topic 38 on the grounds of overbreadth. (Doc. 203, at 11). Topic 38 requests the identification of an third party that AVStar knows to have used the marks. (Doc. 197-5, at 14). As TNB points out, AVCO specifically asserts in its amended complaint that the marks were used by "others in the aviation industry for decades . . . ." (Doc. 206, at 11 (quoting Doc. 94, ¶ 1)). Moreover, TNB merely seeks inquiry into the identity of any of these third parties that AVStar may know of, not an investigation into how the marks were used by third parties. The Court therefore finds that Topic 38 is not overly broad, and thus **DENIES** AVStar's motion to the extent that it seeks to preclude this Topic.

F.  Topics 40, 41, 43 and 43: Parts

AVStar requests that Topics 40, 41, 43, and 44 "should be limited to new AVStar servos servos and not discrete parts."[3] (Doc. 203, at 11). However, as noted by TNB, AVStar fails to to provide any rationale as to why these particular Topics may not satisfy the Rule 26(c) test. Because AVStar has not carried its burden of establishing "good cause," the Court **DENIES** its its motion with respect to Topics 40, 41, 43, and 44. *See Trans Pacific Ins. Co. v. Trans-Pacific Ins. Ins. Co.*, 136 F.R.D. 385, 391 (E.D. Pa. 1991).

G.  Topic 45: Manuals

AVStar argues that TNB's inquiry into AVStar's reference to or use of manuals originating from Precision and its predecessors is overly broad, unduly burdensome, oppressive, and harassing because the inquiry potentially spans several decades. (Doc. 203, at 11). TNB asserts, on the other hand, that the Topic is not overly broad because it is limited to AVStar's own use of the manuals throughout its "relatively short history." (Doc. 203, at 12-13). In any event, AVStar fails to carry its burden of demonstrating with articulated examples or specific reasoning "good cause" as to why AVStar should not be required to have a Rule 30(b)(6) deponent prepared to testify as to AVStar's own use of Precision manuals. Accordingly, the Court **DENIES** AVStar's motion as it pertains to Topic 45.

---

[3] Although AVStar objects to all four of these Topics in its supporting brief, it makes no reference to Topics 40, 41, and 43 in the actual motion for protective order or in the proposed order. (Doc. 197; Doc. 197-2).

H.  TOPIC 49: BANKRUPTCY PROCEEDINGS

In its supporting brief, AVStar requests the Court to prohibit TNB's inquiry into "all issues regarding" AVStar's bankruptcy filing in the United States District Court for the Southern District of Florida. (Doc. 203, at 11-12 (quoting Doc. 197-5, at 15)). TNB counters that the bankruptcy is highly relevant to this case, as noted by the fact that multiple orders from that proceeding have been entered onto the docket in the case at bar. (Doc. 206, at 13 (citing Doc. 43; Doc. 83)). The Court concludes that inquiry into the Florida bankruptcy proceeding should be subject to the same rules as the North Carolina action. Namely, TNB may not seek disclosure of legal opinions and privileged information regarding the bankruptcy proceeding but the Court **DENIES** AVStar's motion to the extent it seeks to preclude any nonprivileged facts regarding the proceedings.

I.  TOPIC 52: MAXIMUM AMOUNT OWED

AVStar next contends that the Court should prohibit inquiry into the factual basis regarding the maximum amount owed if AVStar is found liable at trial. (Doc. 203, at 12). AVStar argues that this Topic seeks to invade the attorney-client privilege and work product, as it does not believe that it has any liability in this action. (Doc. 203, at 12). TNB reiterates that it only seeks the *factual basis* for any particular liability, and specifically the potential amount of lost profits. (Doc. 206, at 13). The Court agrees that the factual basis in terms of dollar value for any damages as a result of AVStar's alleged infringement does not invade attorney-client privilege, and therefore **DENIES** AVStar's motion to the extent it seeks to preclude any nonprivileged facts regarding TNB's potential lost profits and other damages sustained from AVStar's alleged infringement.

J. TOPIC 53: REGULARLY MAINTAINED FINANCIAL STATEMENTS

AVStar also seeks to preclude inquiry into its regularly-maintained financial statements, arguing that such questioning is unrelated to AVStar's sale of new servos, irrelevant, and designed to oppress, annoy, and embarrass. (Doc. 203, at 12-13). However, TNB argues that this Topic is relevant for the purposes of determining potential damages and AVStar's financial health, and moreover that AVStar generally fails to show that "good cause" exists to prohibit this inquiry. (Doc. 206, at 14). Given that AVStar's financial disclosures were a central component of TNB's discovery requests and that AVStar has failed to establish "good cause" for the preclusion of this Topic, the Court **DENIES** AVStar's motion as it pertains to Topic 53.

K. TOPIC 55: COMMUNICATIONS

In its oppositional brief, AVStar seeks the preclusion of TNB's inquiry into internal or or third-party communications relating to any of the other Topics, and specifically any communication relating to any defense of AVStar by AVCO in the instant action, arguing that that this inquiry is overly broad, impermissibly designed as a "catch-all" provision, and could could invade attorney-client privilege and work product. (Doc. 203, at 13). TNB responds by by asserting that it does not seek any privileged information, but that Topic 55 is otherwise proper. (Doc. 206, at 14). This Court agrees with AVStar that "[t]his is an unreasonable catch-unreasonable catch-all topic" for a Rule 30(b)(6) witness to be prepared to adequately testify about, and thus need be included in the deposition notice. See *Doe v. Swift Transp. Co.*, No. 2:10-2:10-CV-00899 JWS, 2015 WL 11110892, at *4 (D. Ariz. Nov. 13, 2015). Furthermore, given given the scope of the other Topics noticed in this deposition and that this Court has approved, approved, the Court does not see how Topic 55 seeks any relevant information that has not

already been noticed by other Topics elsewhere in this deposition. Accordingly the Court **GRANTS** AVStar's motion to preclude Topic 55 because it is a catch-all provision duplicative duplicative of the other Topics.

### L. TOPIC 59: AVSTAR'S DISCOVERY RESPONSES

AVStar also argues that inquiries into its own discovery responses should be prohibited as overly broad and impermissibly trespassing into attorney-client privilege and work product. (Doc. 203, at 13). TNB responds that it only seeks the factual basis for these discovery responses. (Doc. 206, at 14). Given that the sufficiency of AVStar's discovery responses has been a recurring dispute throughout discovery proceedings and one of the impetuses behind the scheduling of the instant Rule 30(b)(6) depositions, the Court deems the discussion of AVStar's discovery responses to be entirely appropriate. Thus, the Court **DENIES** AVStar's motion with respect to Topic 59 to the extent that TNB seeks to discuss nonprivileged facts relating to AVStar's discovery responses.

### M. TOPIC 61: WARRANTY REPAIRS

AVStar also seeks to preclude discussion of communications regarding warranty repairs of new AVStar servos on the ground that this Topic is irrelevant. (Doc. 203, at 14). TNB counters that repairs of new AVStar servos are relevant to their claim of confusion because this Topic could lead to evidence about the quality of AVStar's goods and harm to Precision's reputation. (Doc. 206, at 15). The Court finds TNB's explanation for the relevance of this topic convincing, and therefore **DENIES** AVStar's motion as it pertains to Topic 61.

N. Topics 62-68: AVStar's Relationship and Communications with Specific Individuals

In its final argument, AVStar asks the Court to limit inquiry into certain aspects of AVStar's business relationship and communications with specific individuals. (Doc. 203, at 14). TNB characterizes this objection as "nonsensical," because it has attempted to narrow down its inquiry to specific facets of AVStar's business relationship with each of these individuals. Although Topics 62-68 are perhaps confusingly worded, the Court agrees with TNB that a general inquiry into AVStar's business relationship with these individuals, which AVStar concedes is permissible, does not somehow become overly broad because TNB narrows these Topics even further. (Doc. 203, at 14; Doc. 206, at 15). Accordingly, the Court **DENIES** AVStar's motion as it pertains to Topics 62-68.

### III. Conclusion

For the foregoing reasons, AVStar's motion for a protective order (Doc. 197) will be **GRANTED in part** and **DENIED in part**.

An appropriate Order follows.

BY THE COURT:

Dated: September 28, 2016

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**