**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AVCO CORPORATION, | No. 4:12-CV-1313 |
| Plaintiff/Counterclaim Defendant, | (Judge Brann) |
| v. | |
| TURN AND BANK HOLDINGS, INC.<br>and PRECISION AIRMOTIVE, LLC, | |
| Defendants/Counterclaim Plaintiffs, | |
| v. | |
| AVSTAR FUEL SYSTEMS, INC., | |
| Counterclaim Defendant. | |

**MEMORANDUM OPINION**

**MAY 22, 2017**

In one of the many telephone conferences held to resolve near incessant

discovery disputes, the Honorable Karoline Mehalchick of this Court described the

then instant discord as "a culmination of what's been the most vitriolic and

adversarial discovery dispute I have ever been involved with, either in practice or

in the Court in this position."[1]  Having read the voluminous discovery record

(which rivals that of motions for summary judgment), I agree.  However, I note

that, if the above dispute addressed by Magistrate Judge Mehalchick represented

---

[1]  ECF No. 245, at 6: 10-13.

the culmination or climax of increasing vitriolity, today's Memorandum Opinion will represent the nadir. Justice for the parties, and not necessarily vindication of the attorneys, demands that this case move toward a fair adjudication on the merits. I will provide the finality needed to reach that conclusion.

Before the Court are a multitude of motions filed by the parties requesting the imposition of sanctions relating to alleged discovery abuses. I have reviewed the submissions of both parties, and held oral argument on these matters.[2] These motions will therefore be disposed in accordance with the following reasoning.

## I.    BACKGROUND

On July 6, 2012, this action was commenced by Plaintiff Avco Corporation ("Avco").[3] The operative Second Amended Complaint in this case alleges the following claims against Defendants Turn & Bank Holdings, Inc. ("TNB") and Precision Automotive, LLC ("Precision"): (1) a declaratory judgment claim pursuant to 28 U.S.C. § 2201 & 2202 that Avco has not infringed any alleged trademark rights pursuant to 15 U.S.C. §§ 1114(1), 1125(a), & 1125(c); and (2) a cancellation of federal trademark registration claim pursuant to 15 U.S.C. § 1064(3).[4] On January 30, 2015, Defendants TNB and Precision answered and asserted the following counterclaims against Avco and AVStar Fuel Systems, Inc.

---

[2]    ECF No. 277.

[3]    ECF No. 1.

[4]    ECF No. 138.

("AVStar"): (1) trademark infringement under Section 32 of the Lanham Act, or 15 U.S.C. § 1114; (2) unfair competition under Section 43(A) of the Lanham Act, or 15 U.S.C. § 1125(a); and (3) unfair competition under Pennsylvania common law.[5]

The basic factual underpinning of this case is as follows. Precision Airmotive, LLC of Washington State ("Precision WA"), a predecessor of Turn and Bank Holdings, Inc.,[6] manufactured fuel injection servos for general aviation engines, a component which controls the delivery of a combustible fuel-air mixture to the engine. Precision identified its fuel injection servos by an alpha-numeric designation, each prefaced by the abbreviation "RSA." Avco, through its unincorporated division Lycoming Engines, manufactures general aviation engines. Avco previously purchased its fuel injection servos exclusively from Precision WA. However, prior to this lawsuit, Avco had recently begun purchasing at least a portion of servos bearing the "RSA" mark from AVStar.

Avco seeks a declaratory judgment that its use of the RSA Mark for aircraft fuel injection servos does not violate the Lanham Act and requests a cancellation of trademark registration numbers corresponding to a collection of fuel injection

---

[5]   ECF No. 144.

[6]   In December, 2012, TNB purchased Precision WA's fuel injection servo business and all associated assets, including all trademark and other intellectual property rights and goodwill associated therewith. ECF No. 144, ¶ 14 at 16. Precision Airmotive, LLC of North Carolina ("Precision") is a North Carolina company and is the exclusive licensee of TNB's trademark rights and proprietary design and manufacturing data for general aviation fuel injector servos. *Id.* ¶ 2, at 13.

servos manufactured by Precision/TNB.  Precision/TNB alleges, *inter alia*, trademark infringement against both parties based on their use of the RSA marks.

On March 2, 2015, the Court issued its initial case management order and placed this case on the complex case management track.  The deadlines contained within this Order have since been extended numerous times.[7]  The Court was first notified of a discovery dispute on August 24, 2015, and the case was subsequently referred to Magistrate Judge Mehalchick on September 9, 2015 for pre-trial management and resolution of discovery disputes.[8]

Since the date of that referral, disputes over sometimes mundane issues such as the scheduling of depositions have been both needlessly continuous and highly acrimonious.  Magistrate Judge Mehalchick has spent numerous hours conducting hearings and issuing Orders in hopes of moving this case toward summary judgment.  However, it appears, during discovery, that personal animus between counsel began to consume and transform the litigation of this case and ultimately led to the discovery process becoming an ancillary proceeding obscuring the merits of an otherwise intellectually interesting case.

Following the conclusion of discovery, Magistrate Judge Mehalchick's referral ended and the case again rested solely within my purview.[9]  The parties

---

[7]   *See* ECF Nos. 158, 171, 173, 186, & 230.

[8]   ECF No. 165.

[9]   ECF No. 257.

immediately began filing a litany of motions.[10] Because the motions began to call for the preclusion of evidence based on perceived discovery deficiencies, I determined that the expediency of litigation and the interests of justice favored resolving all discovery issues definitively prior to the beginning of summary judgment briefing.[11] To that end, the Court held oral argument on April 11, 2017.[12] These matters are now ripe for disposition.

## II.   ANALYSIS

### A.   Defendants/Counterclaim Plaintiffs Turn and Bank Holdings, Inc. and Precision Airmotive, LLC's Motion to Strike the Expert Report of Michael J. Dreikorn, Ed.D

On January 20, 2017, Precision/TNB filed a Motion to Strike Avco's Expert Report of Michael Dreikorn, Ed.D, arguing that it is based on information repeatedly requested, but not produced during discovery. Precision/TNB specifically alleges that Dr. Dreikorn relies upon letters of assist issued by Avco to their immediate predecessor, Precision WA, to expedite its earlier Part Manufacturing Approval ("PMA") to sell its RSA$^{fi}$-branded fuel injection servos.[13]

---

[10]   ECF Nos. 260, 273, 274, 279, 287, 293, 295, & 296.

[11]   Furthermore, Magistrate Judge Mehalchick denied Defendants TNB and Precision's repeated requests for sanctions throughout the course of discovery and indicated that both parties would be granted leave to file a motion for sanctions at the conclusion of the discovery period.

[12]   ECF No. 313.

[13]   ECF No. 261, at 3–4.

Precision/TNB argues that the following Requests for Production mandated that these letters be turned over:

> Precision/TNB RFP No. 5: All communications, whether internal or exchanged with any third party regarding the RSA OEM, the Marks, the claims and defenses asserted in the litigation, or TNB's asserted trademark rights.

> Precision/TNB RFP No. 15: All guidelines, manuals, protocols, written procedures, service bulletins, type certificates or other documents in Your possession, custody or control regarding fuel injection servos bearing the Marks.

> Precision/TNB RFP No. 16: All communications between You and any government agency, including without limitation the Federal Aviation Administration ("FAA"), or any employee or representative of any such agency regarding the Marks, the RSA OEM, Your or AVStar's use of the Marks, or fuel injection servos manufactured by AVStar and bearing the Marks.

> Precision/TNB RFP No. 20: Copies of all documents considered by any expert or person You expect to call as an expert witness in this matter.[14]

Therefore, because Avco failed to produce in accordance with Court Orders to supplement discovery responses,[15] Precision/TNB asks that Dr. Dreikorn's report be stricken. Furthermore, Precision/TNB argues, albeit for the first time in their Reply Brief,[16] that Dr. Dreikorn has a conflict of interest that mandates his preclusion as an expert for Avco.

---

[14]  ECF No. 272, at 7–9.

[15]  ECF Nos. 186, 195, & 230.

[16]  Although fairness normally dictates that arguments raised for the first time in a reply brief are waived, the April 11, 2017 oral argument afforded Avco/AVStar the

Avco in turn responds that (1) Precision/TNB were already in possession of the letters of assist as "licensing agreements between Lycoming Engines and Precision Automotive LLC" subject to an Asset Purchase Agreement between Precision Automotive LLC of Washington and TNB, and (2) the letters of assist were not responsive to the Requests for Production cited by TNB/Precision.[17] Specifically, Avco argues that the letters of assist were not responsive to Precision/TNB's Request for Production Number 5 as they were neither internal nor exchanged with a third party, but rather were provided to Precision WA—a predecessor to the current litigation. Furthermore, they did not relate to "claims and defenses asserted in the litigation, or TNB's asserted trademark rights."[18] Second, Avco argues that the letters of assist were not responsive to Precision/TNB's Request for Production Number 15 as they "are identified as licensing agreements in Precision WA's PMAs" and thus are not "guidelines, manuals, protocols, written procedures, service bulletins, type certificates or other documents . . . regarding fuel injection servos bearing the Marks" as stated.[19] Third, Avco argues that the letters of assist were not responsive to Request for

---

opportunity to respond at length to this argument. I will therefore address this contention by Precision/TNB. *See Dommel Properties, LLC v. Jonestown Bank and Trust Co.*, Civil Action No. 11-cv-2316, 2013 WL 4855427, at *3 (M.D.Pa. Sept. 11, 2013)("Arguments raised for the first time in a reply brief are **generally** waived. Fairness requires that nonmovants have the opportunity to respond to any arguments presented by the movant.").

[17]  ECF No. 270, at 2–7.

[18]  ECF No. 270, at 5.

[19]  *Id.* at 5–6.

Production Number 16 because they were provided to predecessor Precision WA, and not a government agency.[20] Fourth and finally, in response to Request for Production Number 20, Avco argues that, at the time the request was first propounded, an expert had not yet been identified. Once Dr. Dreikorn was identified, the letters were thereafter promptly turned over at his deposition.[21]

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, **unless the failure was substantially justified or is harmless**."[22] Avco, as the party who failed to produce the letters of assist, must prove "substantial justification for its conduct or that the failure to produce was harmless."[23] Although the United States Court of Appeals for the Third Circuit has not directly addressed the "substantial justification" standard, district courts within this Circuit have defined it as "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to

---

[20]   *Id.* at 6.

[21]   Oral Argument Transcript (ECF No. 314), at 9:10-19; 11:10-18.

[22]   Fed. R. Civ. P. 37(c)(1)(emphasis added).

[23]   *Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002).

comply with this disclosure request."[24]  Substantial justification is therefore present "if there exists a genuine dispute concerning compliance."[25]

Having reviewed the arguments of both parties set forth in briefing and at oral argument, I find that Avco's failure to produce the letters of assist was "substantially justified" given both (1) their belief that the asset purchase agreement between Precision Automotive LLC and TNB already granted Precision/TNB possession of the letters, and (2) their belief that the letters were nonresponsive to the above delineated requests for production.  First, I note that Avco argues that the letters of assist were already in the possession of Precision/TNB by virtue of Schedules 3.05 (b) and (c) of the Asset Purchase Agreement of May 13, 2013.[26]  These Schedules provide that "all Intellectual Property and IP License Agreements are being transferred to Purchaser."[27]  While Precision/TNB argues that this argument is erroneous,[28] I find that Avco was substantially justified in non-production of these letters given its perceived applicability of the asset purchase agreement, and counsel for Precision/TNB's prior representation of Precision WA President.

---

[24]  *Id.* (internal citations omitted).

[25]  *Id.* (internal citations omitted).

[26]  ECF No. 270, at 3.

[27]  "Asset Purchase Agreement" (ECF No. 270-3), at 35–36.

[28]  ECF No. 272, at 6.

Furthermore, even if Avco was not justified in its belief that the letters were constructively possessed by Precision/TNB pursuant to the Asset Purchase Agreement, I am nevertheless satisfied that it was "substantially justified" in believing that the letters of assist were non-responsive to Requests for Production Numbers 5, 15, and 16. Specifically, the Court finds that the arguments advanced by Avco and noted above adequately demonstrate that a reasonable person could find that the parties could differ as to whether the letters were responsive to the above discovery requests.[29]

Furthermore, while Precision/TNB's Request for Production Number 20 which sought "[c]opies of all documents considered by any expert or person You expect to call as an expert witness in this matter" appears to unequivocally mandate the production of these documents, Avco argues that they failed to respond earlier to Request for Production Number 20 because they had not yet retained an expert, and, in any event, the relied upon letters of assist were provided to Precision/TNB at the time of Dr. Dreikorn's deposition.[30] Federal Rule of Civil Procedure 26(e) imposes upon parties "an on-going responsibility to supplement their discovery disclosures."[31] Specifically, Rule 26(e) provides:

---

[29] *Tolerico*, 205 F.R.D. at 175.

[30] Oral Argument Transcript (ECF No. 314), at 9:10-19; 11:10-18.

[31] *Reish v. Pennsylvania State Uni.*, Civil No. 4:09-CV-1273, 2011 WL 2633090, at *2 (M.D. Pa. July 5, 2011)(quoting Fed. R. Civ. P. 26(e)).

(1) A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not been otherwise made known to the other parties during the discovery process or in writing; or

(B) as ordered by the Court.[32]

Covered by this supplementation requirement is Federal Rule of Civil Procedure 26(a)(2)(B). This Rule requires that an expert's report must contain "the facts or data considered by the expert in forming" his opinion.[33] The Advisory Committee Notes to the 1993 Amendment further explains that:

The report is to disclose the data and other information considered by the expert and any other exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.[34]

In accordance with the above duty to supplement, Avco argues that the letters of assist relied upon were turned over at Dr. Dreikorn's deposition.[35] As such, I cannot find that Avco ran afoul of this duty to supplement, and thus was not

---

[32] Fed. R. Civ. P. 26(e)(1).

[33] Fed. R. Civ. P. 26(a)(2)(B)(ii).

[34] Fed. R. Civ. P. 26, Advisory Committee Notes, 1993 Amend., Subdivision(a), Paragraph (2).

[35] Oral Argument Transcript (ECF No. 314), at 9:10-19; 11:10-18.

"substantially justified" in believing that it was in compliance with

Precision/TNB's Request for Production Number 20.

Based on the above reasoning, I find that Avco was "substantially justified" in failing to produce the letters of assist in response to Precision/TNB's requests for production. However, even if Avco were not "substantially justified," I cannot find that this lack of compliance would warrant the harsh sanction requested—the striking of an expert report. In considering whether to strike evidence for failure to disclose in compliance with Rule 26(a) or (e), the Third Circuit has outlined the following four factors for consideration: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation."[36] The Court has discretion to determine whether exclusion of the evidence is warranted following the examination of these factors.[37]

Application of these factors to the case at hand weighs against striking the expert report of Dr. Dreikorn. Regarding the first factor—the prejudice or surprise of the party against whom the excluded evidence would have been admitted,

---

[36] *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006).

[37] *Sabol v. Allstate Property and Cas. Ins. Co.*, 309 F.R.D. 282, 286 (M.D.Pa. Sept. 16, 2015).

Precision/TNB argues that allowing AVCO to produce the documents at this late stage would cause prejudice by forcing them to rebut an expert report premised on documents that had not been previously produced and were not available during prior examination of other fact witnesses.[38]  Avco, in turn, argues that no prejudice was incurred because the letters of assist were used strictly to establish historical background in Dr. Dreikorn's report.[39]  Despite a broad conclusory statement of prejudice, Precision/TNB cannot rebut, with specificity, Avco's argument that the relevance of the documents is limited to historical background.  In fact, when questioned at the oral argument, counsel for Precision/TNB admitted being unsure of the letters' overall relevance:

> THE COURT: Why are they relevant now? Why are they relevant with regard to this underlying litigation before me?
>
> MR. MATTHEWS: That's a great question, Your Honor. We're trying to figure that out. To date, we have unsuccessfully vetted that issue.
>
> . . .
>
> THE COURT: . . . So Mr. Matthews, I mean, I have to find legally that Turn and Bank and Precision have incurable prejudice to strike an expert report. How is that possible if these letters, by your own admission, have only limited relevance, maybe no relevance at all?
>
> MR. MATTHEWS: Because they were relied upon. And we have the right to examine the witness for whom is proffered as an expert and whom relies upon these letters.

---

[38]  ECF No. 261, at 8.

[39]  Oral Argument Transcript (ECF No. 314), at 17:16 –18:16.

THE COURT: But even if they're limited to just historical data only?

MR. MATTHEWS: We don't agree that they are limited to historical data alone. We disagree with that. Look, whether we agree that the FAA argument generally is irrelevant or not -- and I will contend it's irrelevant, and I can make arguments at a later point in time, whether through motions in limine or otherwise -- this FAA was dropped in the prior case, the Marvel Schebler case because it was irrelevant. At this point in time they didn't have the benefit of our FAA expert on these points. But in this case the reason why they are relevant, we believe -- at least the argument has been made previously -- is that without the right of the letter of assist coming from Lycoming, or at least with the ability for Lycoming to cancel or terminate those letters of assist, they could put us out of business. We would not be able to sell goods in interstate commerce and therefore, not be able to use the marks in interstate commerce, which would cancel the trademarks. So I would contend they are highly relevant. The fact that we asked for them after the report was issued repeatedly, took the deposition of Dr. Dreikorn before having received the letters, received them on the date of his deposition but not all of them, I would contend if they were relied upon, there is some reason why they were relied upon, and to this date, having not been produced all of them, in particular the 2005 letter, that's bad faith, Your Honor. There is no other way to describe that. If they are allowed to use this as a sword here, these letters of assist in their expert report, they can't later say, as a shield, they are not relevant, we didn't really mean to rely upon them. I think that's bad faith, Your Honor.[40]

As demonstrated above, Precision/TNB vacillates between inability to articulate the relevance of the letters of assist and questioning the overall relevance of what they term Avco's "FAA argument" which had previously been made in a Marvel Schebler case. Neither argument, however, tends to show prejudice or surprise necessary to justify a draconian sanction. To the extent Precision/TNB avers that the letters are part and parcel of an argument previously raised by Avco

---

[40]   *Id.* at 17:4-8; 20:9–21:22.

that "without of assist coming from Lycoming, or at least with the ability for Lycoming to cancel or terminate those letters of assist, they could put us out of business," knowledge of this argument effectively removes any element of surprise. In fact, in a Motion to Compel Discovery from Defendant Avco Corporation filed in the Marvel-Schebler case and attached to Precision/TNB's brief in support of the instant motion, counsel for Precision/TNB specifically requested "letters of support" and therefore established his specific knowledge of same.[41]

Second, even if Precision/TNB were in some way prejudiced by this noncompliance, I note that their motion to strike the expert report in its entirety was filed prior to Dr. Dreikorn's scheduled February 3, 2017 deposition. Therefore, to the extent Precision/TNB had suffered any prejudice resulting from non-production, they subsequently received the letters of assist at the deposition and were able to question Dr. Dreikorn accordingly.

The third factor—the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court—also weighs against striking the expert report of Dr. Dreikorn. First, as previously noted, the letters of assist are of questionable relevance and serve, as Avco avers, merely as historical background in Dr. Dreikorn's report. Second, Avco/AVStar argue, and

---

[41] *See* ECF No. 261-3.

Precision/TNB largely admit,[42] that the letters were turned over at Dr. Dreikorn's deposition and Precision/TNB thereafter had the opportunity to examine him on the subject. They will have yet another opportunity to question him at trial.

Fourth and finally, I cannot find bad faith or willfulness in failing to comply with a court order or discovery obligation as required to strike the expert report. At this stage, the Third Circuit has noted that the district court may also consider the party's "justification for failing" to provide the requested discovery.[43] As detailed above, Avco's failure to produce the letters of assist prior to Dr. Dreikorn's deposition was substantially justified given both the language of the operative asset purchase agreement and the inapplicability of the cited requests for production of documents. This final factor therefore weighs against the total exclusion of Dr. Dreikorn's report.

In sum, and in accordance with the above application of the *Pennypack* factors, the Court finds that Avco's failure to produce the letters of assist prior to Dr. Dreikorn's deposition was substantially justified, and, in any event, does not warrant preclusion of his report. Precision/TNB, however, also moves to disqualify Dr. Dreikorn based on an alleged conflict of interest.

---

[42]   Although counsel for Avco argues that all letters of assist were turned over at the Dreikorn deposition, Precision/TNB avers that they are still not in receipt of a January 2005 letter. Oral Argument Transcript (ECF No. 314), at 15:1-4. Counsel for Avco is therefore directed to again turn over this document.

[43]   *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012).

Disqualification of an expert witness based on a prior relationship with an adversary in the present suit is appropriate when (1) the expert had a confidential relationship with the party seeking exclusion, and (2) the party seeking exclusion disclosed confidential or privileged information to the expert that is relevant in the current litigation.[44] The test for disqualifying an expert on this basis is conjunctive, and therefore "should not occur where a confidential relationship existed but no privileged information was communicated or alternatively, where no confidential relationship existed but privileged information was nonetheless disclosed."[45] Precision/TNB, as the party seeking disqualification, has the burden of showing the existence of confidentiality and its non-waiver.[46] The party cannot meet this burden with "mere conclusory or *ipse dixit* assertions."[47]

In the matter at hand, Precision/TNB has not met the burden of establishing that disqualification of Dr. Dreikorn is necessary based on a prior relationship with an adversary. First, I note that counsel for Avco confirmed, prior to his retention, that Dr. Dreikorn disclosed that he had previously represented Precision WA in a product liability matter and confirmed that there would be no conflicts of interest

---

[44] *Greene, Tweed of Delaware, Inc. v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 428 (E.D. Pa. 2001)).

[45] *Id.* (quoting *May v. Dell*, 139 F.R.D. 1, 3 (D.D.C. 1991)).

[46] *Id.* (citations omitted).

[47] *Id.*

with regard to representing Avco in this Lanham Act case.[48]  Second,

Precision/TNB fails to state with specificity, beyond mere _ipse dixit_ assertions,

what confidential information Dr. Dreikorn has which is relevant to the current

litigation.  The closest Precision/TNB gets to meeting this burden is pointing again

to the letters of assist.[49]

        As noted during Dr. Dreikorn's deposition, however, the letters are

publically available through FOIA and thus not confidential.[50]  Furthermore,

examination of Dr. Dreikorn's report reveals that it is solely dedicated to the FAA

approval process, and there is no indication of or reference to confidential

information gained from Precision WA.[51]  Because the test for disqualification of

an expert based on conflict of interest is conjunctive, Precision/TNB's failure to

state with specificity what confidential information Dr. Dreikorn held is

dispositive.  This Motion is therefore denied in its entirety.

> **B.      Defendants/Counterclaim Plaintiffs Turn and Bank
> Holdings, Inc. and Precision Automotive LLC's Motion to
> Strike from Report of Krista Holt and Exclude from Trial
> Testimony Based on Information Withheld During
> Discovery and For Contempt**

---

[48]    Oral Argument Transcript (ECF No. 314), at 6:19–7:6; 8:20–25.

[49]    Oral Argument Transcript (ECF No. 314), at 28:11 –29:4; 29:24 – 30:7.

[50]    ECF No. 272-1, at 80:9-19.

[51]    _See generally_ ECF No. 261-4.

On February 24, 2017, Precision/TNB filed a Motion to Strike From Report of Krista F. Holt and Exclude from Trial Testimony Based On Profit and Cost Information Withheld During Discovery and For A Finding of Contempt For Violation of A Court Order.[52]  Within said Motion, Precision/TNB argues that the expert report of Avco/AVStar expert Krista F. Holt and her corresponding testimony should be stricken to the extent it relies on profit and cost documents and information repeatedly sought, but not produced during discovery. Precision/TNB specifically states that the following Requests for Production propounded on AVStar elicit the profit and cost information upon which Ms. Holt relied:

> 14. Documents sufficient to identify the number of fuel injection servos manufactured or sold by You bearing or using any of the Marks, the purchasers of Your fuel injection servos, and the annual profits from the sales of Your fuel injection servos bearing or using any of the Marks.

> 15. Documents sufficient to identify, and from which TNB can calculate, Your gross sales, in dollars, for all products manufactured or sold by You bearing or using the Marks.[53]

Preclusion of this information would be also be required, Precision/TNB argues, because the law of the case[54] requires that Magistrate Judge Mehalchick's

---

[52]  ECF No. 274.

[53]  ECF No. 275-2.

[54]  The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "Under this doctrine, a court should not

admonition that failure to produce a witness capable of speaking to profit and cost information of servos would result in Avco/AVStar being precluded from introducing this information on its own behalf be followed.[55]

Avco/AVStar in turn argues that it at all times produced documents in its possession which were responsive to the above discovery requests, and that it produced a corporate designee, Ron Weaver, who was prepared to testify about information known or reasonably available to the organization. AVStar specifically avers that none of Precision/TNB's discovery requests asked for these specific documents—general ledgers and income sheets. Instead, the requests asked for documents relating to sales and profits, number of servos sold, purchasers of servos, purchasers of servos and gross sales. AVStar therefore produced a sales analysis report for new and overhauled servos from 2010 to present because they had no specific documents breaking down gross and net profits.[56] AVStar also produced for deposition Ron Weaver who testified as to (1) the financial documents generated by AVStar, (2) why AVStar was unable to break

---

reopen issues decided in earlier stages of the same litigation." *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (O'Connor, J.). However, departure from a prior holding is nevertheless appropriate if adherence to the prior ruling would be "clearly erroneous and would work a manifest injustice." *See Arizona*, 460 U.S. at 619 n.8.

[55] ECF No. 275, at 13.

[56] AVStar notes in its Brief in Opposition that the sales report had to be re-run twice not because of a failure or deficiency in production, but rather because of Precision/TNB's expanding demands that redactions be removed and the sales report encompass sales going back to 2010.

out costs for just servos, and (3) why AVStar could not provide profits and costs without the assistance of an accountant.  Despite learning of these documents during Mr. Weaver's deposition, Precision/TNB never specifically requested these income statements and general ledgers.[57]

First, while the law of the case would preclude Avco/AVStar from producing evidence concerning profit and cost information in the absence of producing a witness capable of speaking to profit and cost information of servos, the deposition testimony of Ron Weaver, President of AVStar, does not indicate that he was incapable of speaking to profit and cost information of servos.  Federal Rule of Civil Procedure 30(b)(6) provides that

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.[58]

A Rule 30(b)(6) corporate designee must "take a conscientious good faith endeavor to designate the persons having knowledge of the matters sought . . . and to prepare those persons in order that they can answer fully, completely, unevasively, the

---

[57]  ECF No. 281 & 284.

[58]  Fed. R. Civ. P. 30(b)(6).

questions posed . . . as to the relevant subject matters."[59]  This duty "goes beyond matters personally known to the designee or to matters in which the designee was personally involved, and if necessary the deponent must use documents, past employees or other resources to obtain responsive information."[60]

Federal Rule of Civil Procedure 37(d)(1)(A) provides that sanctions may be imposed where "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition . . . "[61]  While this rule only specifically mentions failure to appear, the Third Circuit has held that inadequate preparation of a Rule 30(b)(6) designee may also be sanctioned based on a lack of good faith, prejudice to the opposing party, and disruption to judicial proceedings.[62]  The Third Circuit has explained:

> In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it. Indeed, we believe that the purpose behind Rule 30(b) (6) undoubtedly is frustrated in the situation in which a corporate party produces a witness who is unable and/or unwilling to provide the necessary factual information on the entity's behalf.... Thus, we hold that when a witness is designated by a corporate party to speak on

---

[59]  *Costa v. County of Burlington,* 254 F.R.D. 187, 189(D.N.J.  2008) (quoting *Harris  v.  New Jersey,* 259 F.R.D. 89, 92 (D.N.J. 2007)).

[60]  *Harris*, 259 F.R.D. at 92–93.

[61]  Fed. R. Civ. P. 37(d)(1)(A)(i).

[62]  *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 304 (3d Cir. 2000).

its behalf pursuant to Rule 30(b)(6), "producing an unprepared witness is tantamount to a failure to appear" that is sanctionable under Rule 37(d).[63]

Examination of Mr. Weaver's deposition as a whole does not confirm Precision/TNB's broad allegations that he was not prepared on the topics of profit and cost information. Rather, Mr. Weaver's deposition reveals the following testimony concerning AVStar's knowledge of same:

By Mr. Matthews:
Q. Okay. Mr. Weaver, apparently we can go ahead and get into this. Do you know AVStar's direct cost of goods sold for servos at any given period?

A. For individual product, we don't track cost.

Q. Okay.

A. We-- everything is a roll-up. We only do simple accounting with general ledger, so we have general ledger accounts and costs go to those general ledger accounts. So we don't break out a cost for a specific product nor do we do product costing or job costing.

Q. Okay.

A. It's just too small a company.

Q. So you couldn't determine your cost of goods sold; is that correct?

A. Cost of goods sold as a roll-up, we have on the P&L.[64]

. . .

Q. So there's no way for you to separate out your profit for a particular line of business?

[63] *Id.*

[64] ECF No. 276-3, at 275:24–276:15.

A. There is not. I do not do that. That is –

Q. Okay.

A. The reason why is we are a very small company, and you can only absorb so much overhead. And just the overhead that we have in quality and managing a regulated business by the FAA, our overhead versus our direct costs -- our overhead costs or indirect costs versus direct costs is already a major imbalance to a normal manufacturing company. And to add anymore overhead costs to capture costs associated to a certain product line, I don't feel the cost provides the benefit. The cost, in other words, outweighs the benefit, so I don't do it.

Q. If the Court in this case were to find you liable for infringement and state that all profits would be forfeited, how would you determine what those profits were?

A. All profits of the corporation?

Q. All profits for the sale of new and overhauled servos during the period, and we'll say here from 2012 to 2016?

A. Rick, you might do it by the percentage of revenue derived from the sales to the costs and to do it as a percentage basis. But even if you took the company's profit, the company's profit range in the $200,000 annually, and the servo business today may be-- even if you said 50 percent of its total revenue, then that would be a hundred thousand dollars of contribution from revenue of servos.

Q. Okay.

A. That's one way. You would have to get an accountant in there, look at the numbers and discern what is the most appropriate way to drive that out of financials that we have.[65]

---

[65] *Id.* at 279:6 – 280:16.

This testimony confirms not that Mr. Weaver was unprepared, but rather that AVStar does not break out profit and cost information at the level of specificity sought by Precision/TNB. This explanation, while perhaps disappointing to Precision/TNB, does not render Mr. Weaver somehow deficient in testifying about "information known or reasonably available to the organization." In fact, when asked about ways to compute such information, Mr. Weaver was forthright in detailing a possible method of calculation which he avers can be done by a professional accountant. The above testimony further mentions the tools which can be used, and were used by Ms. Holt, to break out this information— the profit and loss sheets and general ledgers. Despite this testimony, Precision/TNB never specifically requested these documents following this September 30, 2016 deposition and before or after its November 16, 2016 continuation.

Having found that Mr. Weaver was not an unprepared 30(b)(6) corporate designee and that the law of the case does not by itself preclude Precision/TNB from offering profit and cost information, I must next examine whether the propounded Requests for Production sought the profit and loss statements and general ledger. Precision/TNB argues that the information fits squarely within Requests for Production Numbers 14 and 15, which state:

> 14. Documents sufficient to identify the number of fuel injection servos manufactured or sold by You bearing or using any of the Marks, the purchasers of Your fuel injection servos, and the annual profits from the sales of Your fuel injection servos bearing or using any of the Marks.

15. Documents sufficient to identify, and from which TNB can calculate, Your gross sales, in dollars, for all products manufactured or sold by You bearing or using the Marks.[66]

AVStar in turn responds that (1) these documents are non-responsive to the above requests for production, and that, (2) despite learning of the documents at Mr. Weaver's first deposition on September 30, 2016, they never thereafter requested them. AVStar avers that this course of conduct was part and parcel of Precision/TNB's strategy to build a "false narrative" requiring the exclusion of an expert report.[67] While I do not necessarily lend credence to this theory, I nevertheless find that striking portions of Ms. Holt's report which rely upon the profit and cost information is an extreme, and un-necessary, sanction.

As noted and utilized above, the Third Court instructs district courts to consider the following factors when exercising its discretion to exclude expert testimony: "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or

---

[66]  ECF No. 275-2, at 9.

[67]  While Precision/TNB argues that Mr. Weaver downplayed the usefulness of the "monthly income sheets and balance sheets" during his deposition, the Court nevertheless finds their failure to specifically demand these documents following the first part of Mr. Weaver's deposition curious given their demonstrated willingness to take each and every dispute to the steps of the courthouse.

willfulness in failing to comply with a court order or discovery obligation."[68] Application of these factors weighs against striking Ms. Holt's testimony based on profit and cost information. First, I am of the opinion both that the profit documents at dispute fit within Precision/TNB Request for Production 14 as "documents sufficient to identify . . . the annual profits," and AVStar's failure to produce thereafter was neither substantially justified nor harmless given Ms. Holt's use of the documents for that purpose. However, in fashioning a sanction for this non-compliance, I am not convinced that this failure to properly supplement by itself warrants exclusion.[69]

In *Pease v. Lycoming Engines*, the Honorable Christopher C. Conner of this Court found that such a failure to produce and/or timely supplement documents on which an expert relies did not by itself warrant exclusion of a report and testimony.[70] In reaching this conclusion, now Chief Judge Conner first reasoned that Lycoming, the party moving for exclusion, knew that the Peases had relied upon documents in their possession and "could have requested production of these documents from the Peases at anytime."[71] Second, Chief Judge Conner also

---

[68] *Hill*, 435 F.3d at 423.

[69] *See Tolerico*, 205 F.R.D. at 177 (noting both that Rule 37(c) conveys a "measure of discretion in determining whether to bar evidence based upon a party's failure to comply with Rule 26(a)" and courts should exercise caution in excluding evidence).

[70] *Pease v. Lycoming Engines*, Civil Action No. 10-CV-843, 2012 WL 162551, at * 9 (M.D.Pa. Jan. 19, 2012)(Conner, J.).

[71] *Id.*

noted that any prejudice was ameliorated because a firm trial date had yet to be set.[72] Third and finally, the *Pease* Court found no evidence that the Peases acted in bad faith or willfully, and that curative steps could be taken at that juncture of litigation to ameliorate any resulting prejudice.[73]

As in *Pease*, I find that Precision/TNB had knowledge, following Mr. Weaver's testimony on September 30, 2016, of the specific profit and loss statements and general ledgers, but failed to request these documents. Second, a firm trial date in this case has similarly yet to be set and there is therefore ample opportunity to cure this prejudice. Third and finally, in a sanction designed to remove that prejudice, I will direct AVStar to produce the profit and cost documents upon which Ms. Holt relies within seven (7) days. Precision/TNB will thereafter be granted leave to have its expert update her report based on these materials at cost to AVStar.[74] Ms. Holt's deposition, stayed during the pendency of this Motion, is to be completed within forty-five (45) days of this Memorandum

---

[72] *Id.* (citing *Ciocca v. BJ.'s Wholesale Club, Inc.,* Civil Action No. 04–CV–5605, 2011 WL 3563560, at *3 (E.D.Pa. Aug.12, 2011) (noting that when "courts exclude expert testimony on grounds of untimeliness, it is almost always in the face of a fast approaching trial date.")).

[73] *Id.*

[74] Precision/TNB is, however, directed to submit to this Court for approval the costs incurred from this limited update by August 11, 2017.

Opinion. This remedy is fashioned to allow for a fair adjudication based on a "complete evidentiary record."[75][76]

### C. Defendants/Counterclaim Plaintiffs Turn and Bank Holdings, Inc. and Precision Automotive LLC's Motion for Sanctions

In their Motion for Sanctions, Precision/TNB move for the imposition of sanctions based on both Federal Rule of Civil Procedure 37 and 28 U.S.C. § 1927. They specifically argue that sanctions are warranted because Avco/AVStar (1) failed to comply with Court Orders and forced the Court to rehash multiple issues, (2) presented two unprepared Rule 30(b)(6) witnesses, and (3) failed to produce documents requested throughout discovery.[77] My analysis of the issues presented will be divided under the two provisions through which Precision/TNB seeks sanctions.

### 1. Sanctions Pursuant to Federal Rule of Civil Procedure 37(b)

---

[75] *Id.* (citing *Nippo Corp./Intern. Bridge Corp. v. AMEC Earth & Envtl., Inc.,* Civil Action No. 09–CV–0956, 2011 WL 1196922, at *6 (E.D.Pa., Mar. 30, 2011)).

[76] Precision/TNB also moves for an adjudication of civil contempt against AVStar for violation of Magistrate Judge Mehalchick's discovery Orders. To prove civil contempt, the court must find that: (1) a valid court order existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *See Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1995) (citing *Roe v. Operation Rescue*, 919 F.2d at 871). These elements must be established by clear and convincing evidence. *Id.* at 1321. I cannot find by clear and convincing evidence that counsel for AVStar intentionally and in bad faith disobeyed a court order given both the ambiguity of multiple Court orders and her expressed, overly narrow interpretation of Precision/TNB Request for Production 14.

[77] *See generally* ECF No. 288.

Federal Rule of Civil Procedure 37(b) provides, in pertinent part, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."[78]  Said sanctions may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

> (iii) striking pleadings in whole or in part;

> (iv) staying further proceedings until the order is obeyed;

> (v) dismissing the action or proceeding in whole or in part;

> (vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.[79]

Rulings regarding the imposition of discovery sanctions under Rule 37 are "committed to the sound discretion of the district court," and will only be disturbed upon a showing of abuse of discretion.[80]  Decisions which effectively allow discovery disputes to control the substantive outcome of lawsuits such as dismissing a civil action, or preclude claims or defenses are, however, reviewed in

---

[78]  Fed. R. Civ. P. 37(b).

[79]  Fed. R. Civ. P. 37(b)(2)(A).

[80]  *Perez v. Great Wolf Lodge of the Poconos*, Civil Action No. 3:12-CV-1322, 2015 WL 4066633, at *3 (M.D.Pa. June 15, 2015)(citing *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974); *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983)).

accordance with certain factors, commonly referred to as *Poulis* factors. These

factors include:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the
> adversary caused by the failure to meet scheduling orders and respond to
> discovery; (3) a history of dilatoriness; (4) whether the conduct of the party
> or the attorney was willful or in bad faith; (5) the effectiveness of sanctions
> other than dismissal, which entails an analysis of alternative sanctions; and
> (6) the meritoriousness of the claim or defense.[81]

In their motion for sanctions, Precision/TNB requests that the Court enter one of

the following alternative sanctions (1) judgment on the merits, (2) preclusion of

certain evidence, (3) adverse inferences, and (4) recovery of costs and attorneys'

fees based on the following alleged sanctionable conduct by Avco/AVStar.

<blockquote>

(i)    <u>Avco/AVStar's Failure to Comply with
Court Orders and the Rehashing of Issues
Previously Decided</u>

</blockquote>

First, Precision/TNB alleges that Avco/AVStar repeatedly disregarded court

orders to produce documents and information related to overhauled fuel injection

servos.[82]  Avco/AVStar, in response, argues that the various Court orders and time

spent on the issue was the result of Precision/TNB continually expanding their

requests into areas of irrelevant material.  Specifically, while information and

documentation concerning both new and overhauled AVStar servos were relevant

within the case, Avco/AVStar argues that, at a hearing before Magistrate Judge

---

[81] *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) (quoting *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984)).

[82] ECF No. 288, at 16–19.

Mehalchick on August 18, 2016, counsel for Precision/TNB for the first time

brought into the case Precision manufactured servos overhauled by AVStar.

Counsel for Avco/AVStar spoke to this distinction and the continually expanding

scope of discovery at the oral argument held on this matter:

> MS. SALTZ: The issue, as Your Honor, knows is the fact that AVStar is manufacturing new servos, which Lycoming is buying from AVStar now as its supplier and putting it into its engines. So we have new servos. The other part that is at issue in this case is that the servos that AVStar manufactures, some of which come up for service or overhaul -- so it's AVStar's servo that it manufactures, that it overhauls, and then sells that's at issue. What counsel knows and misrepresented to Magistrate Judge Mehalchick on is claiming that the Precision units that were manufactured by Precision that AVStar has FAA approval to overhaul are now also an issue.
>
> . . .
>
> So now all of the sudden the case is completely expanded into areas that are absolutely not relevant to any issue in this case. And what I was trying to do is to explain to Magistrate Judge Mehalchick that wait a minute, we have to stop here for a moment. I mean, yes, these issues are. These issues are not. We ended up turning everything over anyway. It got to the point where there was so many complaints constantly from Turn and Bank and Precision that they didn't get this, they didn't get that; they wanted this, we didn't give them that. We got to the point finally, as you can tell from the docket, I filed three declarations on the docket personally, which I have never done in my career.[83]

Furthermore, while Precision/TNB avers that this issue was definitively

resolved at the August 18, 2016 hearing, counsel for Avco/AVStar argued at a

subsequent conference that she objected to this request,[84] and that, if a definitive

ruling had mandated discovery of information covering AVStar overhaul of

---

[83]    Oral Argument Transcript (ECF No. 314), at 57:2 – 59:4.

[84]    ECF No. 249, at 30.

Precision servos, she would have properly filed a motion for reconsideration of this substantive ruling.[85]  Counsel for Avco/AVStar nevertheless avers that it turned over these documents following the Court's unambiguous and definitive September 28, 2016 ruling on the issue,[86] and has filed a Declaration stating that she turned over all documents collected which are responsive to Precision/TNB's discovery requests.[87]  Therefore, given the questionable relevance of information regarding AVStar overhauls of Precision servos and AVStar's averments that it turned over the documents following a definitive ruling, I cannot find that Avco/AVStar flouted a discovery order or forced the Court to repeatedly rehash this issue.

Second, Precision/TNB argues that Avco/AVStar forced the Court to address on multiple instances their obligation to produce emails between Avco and AVStar.[88]  However, during a September 27, 2016 hearing, counsel for Avco/AVStar represented that Avco had already produced these emails in accordance with Precision/TNB's request, and that forcing AVStar to produce duplicative emails would constitute an undue burden.  Ms. Saltz-Turner specifically stated the following:

---

[85]  *Id.* at 29.

[86]  Oral Argument Transcript (ECF No. 314), at 58:20 – 59:11; *see also* ECF No. 212.

[87]  *Id.*

[88]  ECF No. 288, at 19.

MS. SALTZ: It wasn't ignored, Your Honor. It was based on not having represented both of them; otherwise, I would have had to file a protective order for AVStar and would still have to, if required to do that, because they can't afford it. They cannot afford to get an IT company in here. They don't have the resources that Lycoming Avco have. They are a small company. They only have a few people. They don't have anybody that can do this.

Ten million files were pulled. If they are telling me -- how is it that if Avco has all of the e-mails between AVStar and Avco, I represent both. I went through them. I'm the one that found all of those e-mails in looking at 26,000 documents, which my declaration is coming out on the 30th, as required by Your Honor, why would you burden my client to have to do a duplicative search?

If there's other e-mails, yes. I understand that. Why would the Court ever burden a small company with that if they are getting the same information?[89]

Thereafter, following a statement by Magistrate Judge Mehalchick that the emails would nevertheless have to be produced, Ms. Saltz requested leave to file a formal motion for a protective order on this issue.[90] Magistrate Judge Mehalchick granted that request, and a formal motion was filed on October 12, 2016.[91] On October 25, 2016, Magistrate Judge Mehalchick denied that motion and ordered that AVStar produce said emails by November 1, 2016.[92] A declaration filed by Ms. Saltz-Turner states that, despite this short window for compliance, AVStar fully complied with this court Order.[93]

---

[89]   ECF No. 248, at 65–66.

[90]   ECF No. 248, at 79–80.

[91]   *See* ECF No. 215.

[92]   ECF No. 230.

[93]   *See* ECF No. 303-3, at 12–14.

Third, Precision/TNB argues that, following Magistrate Judge Mehalchick's Order of September 28, 2016 discussing AVStar's Motion for a Protective Order concerning topics to be addressed at upcoming Rule 30(b)(6) depositions,[94] Avco, a separate legal entity, forced the Court to return to the issue by seeking to deem its specific motion uncontested.[95] However, Magistrate Judge Mehalchick's Order of September 28, 2016 solely addressed AVStar's, and not Avco's, Motion for a Protective Order.[96] When questioned by Magistrate Judge Mehalchick concerning whether Avco's Motion[97] contained any issues her previous Memorandum and Order did not address, counsel for Avco responded as follows:

> MS. SALTZ TURNER: Absolutely, Your Honor. First off, as it relates to the fact that AVStar and AVCO are two separate unrelated entities, they are in two different types of business, the notices for 30(b)(6) -- while some of the topics may be the same, there are others that are not the same or not the same in relation to that party. As far as, you know – that's the reason why two separate motions for protective order were filed, and they were filed formally so that each one could be addressed as it related to each party and what is specific to that party in light of this case and that party's role in this case.
>
> . . .
>
> At that point we proceeded with filing the AVCO motion. The issue that was discussed in addition to other discovery issues on that -- on September 27th dealt with AVStar's protective order. And while the Court did reference the fact there was some categories that were similar, at that point there was nothing more done with regard to that. And when the Court ordered the issue

---

94   ECF No. 230.

95   *See* ECF No. 232.

96   *See* ECF No. 230.

97   ECF No. 197.

-- issued her order, the only document -- I have been through the memorandum and order very carefully -- never even made reference to AVCO's motion or the docket number for AVCO's motion and strictly denied in part and granted in part AVStar's motion. I then waited because of the sufficient time knowing these depositions would not be taking place until the first week of November, I waited to prevent T. and B. to have their time to file a response and also see if there was a response, you know, even if it was an untimely response when it finally realized that no -- after checking the docket no response had been filed, I wanted to make sure with all this traveling nothing was missed only to discover there was no brief in opposition filed. And even though I did not have to file a motion to deem the -- deem the – AVCO's motion for protective order as granted as not being opposed since the Court itself can do it -- and certainly Judge Brann had done that in this case. I then felt that I needed to close the record on this so there be something there with relation to AVCO's motion so that -- these are documents that may have to come up on appeal.[98]

While I am in agreement with Magistrate Judge Mehalchick that, at a superficial level, it would appear at that her previous Memorandum and Order disposed of both Avco and AVStar's Motions, Ms. Saltz-Turner made, at that conference, repeated and compelling arguments as to why Avco's distinct legal identity requires separate consideration for many of the requests propounded by Precision/TNB.[99]  I therefore cannot find that Avco's efforts concerning an unopposed and unaddressed motion constitute sanctionable conduct.  Despite being

---

[98]   ECF No. 248, at 6:13 – 8:10.

[99]   *See, e.g.,* ECF No. 248, at 11:6-15 (explaining that, given Avco Lycoming's long existence, an open ended request for financial documents is overly broad); 14:14-20 (explaining that, because Avco was the customer for servos sold by AVStar, financial information is only relevant from the date on which Avco sold the first engine containing an AVStar servo); 19:18-24 (explaining that requests which concern overhauls are not properly propounded to Avco because it does not overhaul servos).

represented by the same attorney, Avco and AVStar are separate legal entities whose Rule 30(b)(6) deponents would not be able to speak to same topics.

(ii)    <u>Deposition Issues</u>

Precision/TNB next requests the imposition of sanctions based on both "the Rivera deposition incident," and Avco/AVStar's alleged presentation of unprepared Rule 30(b)(6) deponents.

First, Precision/TNB argues that Avco/AVStar should be forced to pay Precision/TNBF's costs and expenses associated with unnecessary travel to the rescheduled deposition of Don Rivera.[100] Avco/AVStar correctly notes that the Court already addressed this issue in an "emergency" telephone conference on September 19, 2016.[101] During that telephone conference, the Court found that, due to a lack of communication between counsel, there was uncertainty concerning whether the rescheduled deposition had been confirmed.[102] My subsequent review of the emails between counsel for Precision/TNB and Avco/AVStar confirms that, because of the toxic relationship and complete breakdown of communication between counsel, the finality of the September 19, 2016 deposition was nebulous, at best.[103] No sanctions will therefore be imposed based on this incident.

---

[100] ECF No. 288, at 21–22.

[101] *See* ECF No. 201.

[102] ECF No. 201.

[103] *See* ECF No. 288-4.

Second, Precision/TNB claims that Avco/AVStar continually presented unprepared 30(b)(6) deponents concerning document collection and retention. As noted above (and unfortunately throughout), the Third Circuit has held that inadequate preparation of a Rule 30(b)(6) designee may also be sanctioned based on a lack of good faith, prejudice to the opposing party, and disruption to judicial proceedings.[104] The Third Circuit has specifically reasoned that "when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), 'producing an unprepared witness is tantamount to a failure to appear' that is sanctionable under Rule 37(d)."[105] Here, Precision/TNB specifically challenges the preparation of both Avco's Rule 30(b)(6) witness concerning document collection, Michael Everhart, and AVStar's Rule 30(b)(6) witness concerning same, Sue Ellen D'Arcangelo. Having reviewed *in toto* the deposition transcripts of both Mr. Everhart and Ms. D'Arcangelo, I find Precision/TNB's allegations to be disingenuous, at best. Both witnesses spoke at length and with adequate personal knowledge concerning the document retention policies of Avco and Avstar.

Counsel for Precision/TNB instead seems to argue that the policies of Avco and AVStar were wholly inadequate and thus sanctionable. At the outset, I note

---

[104] *Black Horse Lane Assoc., L.P.*, 228 F.3d at 304.

[105] *Id.*

that a party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence.[106] The duty arises whenever "the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded."[107] Here, Precision/TNB specifically argues that the Avco Rule 30(b)(6) deposition revealed deficiencies in that (1) Avco did not issue a litigation hold letter until two years after the filing of the suit, (2) the search terms employed were too restrictive, and (3) Mr. Everhart was unaware of the categories of documents sought within Precision/TNB's document requests.[108]

Upon reviewing the deposition transcript of Mr. Everhart, I am satisfied that, while a formal litigation letter was not issued immediately upon the filing of this case, he spoke at length detailing an adequate document retention policy which Avco regularly employs and which was in place since the inception of this case. Mr. Everhart relayed that, although a formal Suspension Order was not issued until November 2014,[109] the governing document retention policy in place at the time would nevertheless have prevented the destruction of documents prior to that

---

[106] *Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994).

[107] *Kounelis v. Sherrer*, 529 F.Supp.2d 503, 518 (D.N.J. 2008)

[108] ECF No. 288, at 12–13.

[109] Dep. of Michael Everhart (ECF No. 288-8), at 32:14-17.

issuance. Mr. Everhart specifically spoke to that policy during the following

exchange:

> Q. So just so I understand, the electronic files on the shared drives, for example, are preserved indefinitely and, therefore, there would be no need to segregate responsive documents to prevent them from being deleted?

> A. I can't offer an opinion on whether or not it would make sense to segregate them.

> Q. Are documents and files sorted electronically on the shared drive ever deleted?

> A. Yes.

> Q. Are they deleted as part of a routine document destruction policy?

> A. No.

> Q. In what context would they be deleted?

> A. I believe they would be deleted at the discretion of the custodial - - - the document custodian. For example, in my case, I have a personal folder labeled Mike Everhart on the drive. It's not shared. No one else has access to it. I maintain my documents there. When I do my search, if there is something I believe may be a responsive document, I will set it aside in a folder labeled legal particular case whatever so I know that I have it. If there are documents on a shared drive that multiple people have access to, I know which of those shared folders I would have access to and which ones that I use, and I would go look at those and see if there was anything responsive there. **In my history at Lycoming, I have never found a responsive document in a shared folder, because the kinds of things that I have on shared folders are things that normally don't relate to litigation or - - - of this nature**.[110]

---

[110] *Id.* at 43:4–44:24 (emphasis added); *see also* 88:1-89:10 (detailing that, although the email deletion policy was formally suspended for the 38 document custodians as of the date of the suspension order, all 38 had previously been removed from the auto delete function as a result of prior litigation); 96:10 – 97:16 (detailing that people who are responsible for the quality system within the business would have searched the customer complaint database).

Following what Mr. Everhart termed a liberal approach[111] to segregation whereby documents of even questionable relevance were segregated for future review, the document custodians were directed to search the segregated files.[112] After applying search terms to the ten million segregated electronic files, a cache of 21,626 separate discreet files remained.[113] Counsel for Avco personally reviewed those remaining files for responsiveness to Precision/TNB's requests.[114]

Concerning AVStar's document retention policies, Precision/TNB again argues that the absence of a formal litigation letter rendered their document retention policy wholly deficient. However, closer inspection of Rule 30(b)(6) deponent Sue Ellen D'Arcangelo's testimony reveals that both formal and informal precautions had been taken since the inception of litigation to preserve relevant documents. First, Ms. D'Arcangelo stated that, at the inception of the suit, she was advised by counsel to maintain anything that may be relevant to the instant litigation—a directive she repeated to all email holders.[115] Furthermore, even in the absence of such advice, Ms. D'Arcangelo also detailed the following informal document retention policy:

---

[111]  *Id.* at 47:1-12.

[112]  *Id.* at 50:13–51:18.

[113]  *Id.* at 135:22–136:19.

[114]  Decl. Regarding Document Collection (ECF No. 214) ¶¶ 5–6, at 2.

[115]  Dep. of Sue Ellen D'Arcangelo (ECF No. 300-1), at 37:9-19.

Q. And other than that one-page document as part of the quality manual, do you have other document retention policies?

A. Well, we don't have a formal AVStar document retention policy, but it is our policy and practice to not destroy any documentation. Electronic documentation remains in the system for at least 10 years pursuant to the FAA's requirement, and we have hard copies of certain other types of documents that I believe we maintain for up to seven years.

. . .

Q. If there are differences that you can easily identify between this document and the other one, let me know, but I just want to walk through this. Under 5.2 at the top of Exhibit 2, there's a note there that the 6 retention is six years-- or six years minimum for quality records, correct, and then 10 years for critical components?

A. Which we consider everything that we've got critical components.

. . .

Q. Are there categories of documents or information that AVStar has or creates that are not critical components?

A. There would be other types of documents that would be unrelated to this, such as human resources records, accounting records. Those are just examples.[116]

This informal practice is mirrored in the retention of emails:

Q. Let's talk about e-mail, for instance. Are e-mails backed up and stored daily?

A. Some of us operate off of Gmail, and some of us operate off Microsoft Outlook. I have not deleted anything but junk mail since I've been there in 2008, and that is the policy. It's not a formal written policy.[117]

---

[116] *Id.* at 20:23–21:7; 23:2-10; 23:23–24:3.

[117] *Id.* at 31:13-18.

Based on the above, I find that Precision/TNB has failed to satisfy its burden of proving both that Mr. Everhart and Ms. D'Arcangelo were unprepared Rule 30(b)(6) witnesses and that both Avco and Avstar's document retention and collection procedures were inadequate.

(iii)    <u>Document Production Deficiencies</u>

Finally, Precision/TNB includes a "catch all allegation" seeking sanctions based on document production deficiencies. In support of this allegation, Precsion/TNB specifically cites one document production deficiency— AVStar's alleged failure to produce sales revenue, cost, and profit information. This allegation, however, is already the subject of Precision/TNB's Motion to Strike Portions of the Expert Report of Krista Holt and is addressed in that portion of this memorandum opinion.[118]

### 2. Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power

Title 28 of the United States Code, Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[119]

---

[118] The Court notes with interest, however, that, despite the numerous complaints concerning Avco/AVStar's production deficiencies, Precision/TNB's final complaint in this regard is duplicative of other pending sanctions requests.

[119] 28 U.S.C. § 1927.

This section therefore requires the Court to find that an attorney "has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."[120] When addressing this issue, the Third Circuit has therefore held that "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal."[121]

In support of its claim for sanctions pursuant to 28 U.S.C. § 1927, Precision/TNB seemingly relies on the myriad of arguments presented by both this motion and other motions currently pending before the Court. In each of those motions, however, I have found either "substantial justification" for non-compliance by Avco/AVStar, or, following a comprehensive review of the record, an incomplete and misleading citation of Court Orders and transcripts. Therefore, because "[a] finding of willful bad faith on the part of the offending lawyer is a prerequisite . . . for imposing sanctions under 28 U.S.C. § 1927,"[122] I cannot find that sanctions against counsel for Avco/AVStar are appropriate either under this statute or the Court's inherent power.

---

[120] *In re Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002).

[121] *LaSalle Nat'l Bank v. First Connecticut Holding Group, LLC XXIII*, 287 F.3d 279, 289 (3d Cir. 2002).

[122] *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002)(quoting *Hackman v. Valley Fair*, 932 F.2d 239, 242 (3d Cir. 1991)).

Precision/TNB's Motion for Sanctions is therefore denied in its entirety.

### D. Defendants/Counterclaim Plaintiffs Turn and Bank Holdings, Inc. and Precision Automotive LLC's Motion to Strike Portions of the Rebuttal Expert Report of Joseph N. Welch

I will next address Precision/TNB's Motion to Strike Portions of the Rebuttal Expert Report of Joseph N. Welch II, filed on March 13, 2013. Precision/TNB argues that portions of the rebuttal expert report by Joseph N. Welch should be stricken because they go beyond merely rebutting Precision/TNB's expert Robert Cissel.[123] Precision/TNB argues that, despite Cissel's report opining that Avco's affirmative trademark claims of genericness, fraud on the USPTO, and doctrine of nominative fair use lack any evidentiary basis, the Welch expert report should be stricken to the extent it affirmatively asserts evidence contradicting this claim.[124] AVCO/AVStar, in turn, argues that this is a proper rebuttal report as it rebuts Cissel's expert opinion that there is no evidence on these topics. They argue that it is irrelevant that these opinions overlap with Avco's case in chief.[125]

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony, as a party must disclose to the other parties the identity of any witness it

---

[123] In 1983, Robert Cissel was appointed a Member of the Trademark Trial and Appeal Board, a position subsequently renamed administrative trademark judge. He retired from that position in 2004. ECF No. 294-4, at 2–3.

[124] *See generally* ECF No. 294.

[125] *See generally* ECF No. 306.

may use at trial to present evidence.[126]  If the court's scheduling order provides for rebuttal reports, as it does here, a party may only submit an expert rebuttal "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party" according to the deadlines created by the court.[127]  Such rebuttal and reply reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert."[128]  Rebuttal, however, cannot be used to correct a party's oversights in its case-in-chief.[129]  Therefore, expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports.[130]

In the instant matter, I find that Mr. Welch's expert report properly rebuts the opinion testimony contained within now retired administrative law Judge Cissel's expert report.  First, in administrative law Judge Cissel's expert report, he opines that there is "no evidence of record to support" a finding of genericness.[131] This conclusion follows reasoning which begins on page 15 at paragraph 53 and

---

[126]  Fed. R. Civ. P. 26(a)(2)(A).

[127]  Fed. R. Civ. P. 26(a)(2)(C).

[128]  *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank & Trust Co.,* 290 F.R.D. 11, 16 (D.Mass. 2013).

[129]  *Crowley v. Chait*, 322 F.Supp.2d 530, 551 (D.N.J. 2004)

[130]  *Glass Dimensions,* 290 F.R.D. at 16.

[131]  *See* "Expert Report of the Hon. Robert F. Cissel" (ECF No. 294-4) ¶ 56, at 16.

continues onto page 16 through paragraph 56.[132]  Mr. Welch's response from

paragraphs 20 through 29 with evidence demonstrating genericness is therefore

proper rebuttal testimony.[133]

Second, administrative law Judge Cissel also opines in his expert report that

he sees "insufficient evidence of record to support" Avco/AVStar's fraud on the

USPTO claim.[134]  This conclusion follows three lengthy paragraphs which opine

that there is no evidence that the alleged "misrepresentations" to the USPTO were

made with the requisite intent under the Lanham Act.[135]  In his rebuttal report, Mr.

Welch responds with evidence that he perceives as supporting a finding of material

misrepresentations to the USPTO.[136]  This argument, which cites evidence in

support thereof, is proper rebuttal of administrative law Judge Cissel's expert

report.

Third and finally, administrative law Judge Cissel concludes that:

> It is my opinion that there is no preemption of the Lanham Act by any
> Federal Aviation Regulations or other laws, as doing so would risk
> consumer confusion in direct contravention of the policy set forth in 15
> U.S.C. §§ 1114; 1125.[137]

---

[132]  *Id.* ¶¶ 53–56, at 15–16.

[133]  *See* "Rebuttal Report of Joseph N. Welch II" (ECF No. 294-2) ¶¶ 20–29, at 8–14.

[134]  *See* "Expert Report of the Hon. Robert F. Cissel" (ECF No. 294-4) ¶ 60, at 17.

[135]  *Id.* ¶¶ 57–59, at 16–17.

[136]  *See* "Rebuttal Report of Joseph N. Welch II" (ECF No. 294-2) ¶¶ 51–55, at 30–33.

[137]  *See* "Expert Report of the Hon. Robert F. Cissel" (ECF No. 294-4) ¶ 104, at 27.

Mr. Welch rebuts this conclusion by citing the doctrine of nominative fair use and explaining how it would permit use of any properly trademarked RSA Marks by Avco and Avstar.[138]  Based on this reasoning, I am satisfied that the contested portions of Mr. Welch's expert report are proper rebuttal testimony intended to contradict conclusions first reached by Precision/TNB's expert, administrative law Judge Cissel. Furthermore, while Precision/TNB repeatedly argues that Mr. Welch's report is an untimely affirmative expert report offered under the guise of rebuttal, the opinions offered by Mr. Welch concerning genericness, fraud on the USPTO, and the doctrine of nominative fair use are no surprise given Avco/AVStar's ongoing theory of the case.  Any argument by Precision/TNB's to the contrary is belied by the fact that their expert opined on these subjects.[139] Because I find this report to be proper rebuttal, analysis of the *Pennypack* factors concerning exclusion is therefore unnecessary.  Precision/TNB's Motion to strike will be denied.

### E.    AVCO Corporation/AVStar Fuel Systems, Inc.'s Motion for Sanctions

While Precision/TNB's comprehensive Motion for Sanctions hinges on what it alleges was continually deficient discovery, Avco/AVStar's Motion, filed on

---

[138]  *See* "Rebuttal Report of Joseph N. Welch II" (ECF No. 294-2) ¶¶ 74–76, at 41–43.

[139]  *See Hurd v. Yaeger*, Civil Action No. 06-CV- 1927, 2009 WL 2516934, at *4 (M.D.Pa. Aug. 13, 2009)(Munley, J.)(rejecting similar claims of "laying in wait" litigation tactics where a rebuttal expert report properly refutes an affirmative expert report with new testing).

March 15, 2017, is reliant on claims that Precision/TNB effectively hid discoverable information within large and untimely productions of irrelevant information, and thereafter failed to heed a court directive to identify requested information by Bates stamp numbers. Avco/AVStar specifically argues that Precision/TNB failed to produce or otherwise identify both evidence of alleged customer confusion and November 1, 2015 applications to the USPTO to register three of the Model Designations on the Principal Register, and failed to disclose, in its initial Rule 26(a) disclosures, witnesses who later produced Declarations. Finally, Avco/AVStar seeks the imposition of sanctions against counsel for Precision/TNB personally pursuant to both 28 U.S.C. § 1927 and the Court's inherent authority.[140]

### 1. Sanctions Pursuant to Federal Rule of Civil Procedure 37(b)

As noted above (and again, unfortunately throughout), Federal Rule of Civil Procedure 37(b) provides, in pertinent part, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders."[141] Said sanctions may include:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

_____

[140] *See generally* ECF No. 296.

[141] Fed. R. Civ. P. 37(b).

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.[142]

Rulings regarding the imposition of discovery sanctions under Rule 37 are "committed to the sound discretion of the district court," and will only be disturbed upon a showing of abuse of discretion.[143]  Decisions which effectively allow discovery disputes to control the substantive outcome of lawsuits such as dismissing a civil action, or preclude claims or defenses are, however, reviewed in accordance with certain factors, commonly referred to as *Poulis* factors.  These factors include:

(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions

---

[142]  Fed. R. Civ. P. 37(b)(2)(A).

[143]  *Perez v. Great Wolf Lodge of the Poconos*, Civil Action No. 3:12-CV-1322, 2015 WL 4066633, at *3 (M.D.Pa. June 15, 2015)(citing *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974); *Marroquin–Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983)).

other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.[144]

        (i)  Precision/TNB's Alleged Failure to Identify Alleged Customer Confusion Emails/Documents

   In the instant matter, Avco/AVStar first argues that Precision/TNB's failure to produce customer confusion documents/emails and/or their failure to identify them by Bates stamp number in accordance with a Court directive compels this Court to preclude evidence Precision/TNB from relying on same.[145]  In response, Precision/TNB avers that these documents were produced on September 1, 2016, with hard copies later provided during a deposition on October 17, 2016.[146]

   Notably absent from both their brief and its supporting Declaration,[147] however, is any response to Avco/AVStar's argument that counsel for Precision/TNB failed to heed Magistrate Judge Mehalchick's directive during an August 18, 2016 hearing.  During that proceeding, Magistrate Judge Mehalchick had specifically stated that counsel for Avco/AVStar should contact Precision/TNB's counsel to request that specific documents be identified by Bates stamp number.[148]  Counsel for Avco/AVStar thereafter requested such

---

[144] *Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) (quoting *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir. 1984)).

[145] ECF No. 296, at 19.

[146] ECF No. 308, at 5.

[147] *See* ECF No. 308-3.

[148] ECF No. 296, at 7.

identification (1) by email on September 12, 2016,[149] (2) by email on October 2, 2016,[150] (3) during the deposition of Alan Jesmer on October 10, 2016,[151] and (4) during the deposition of Peter Nielsen on October 11, 2016.[152]  Despite these repeated requests, counsel for Precision/TNB only revealed segregated hard copies of the confusion emails continually referenced during the deposition of Mike Allen on October 17, 2016.[153]  Their argument during the April 11, 2017 hearing that they in fact provided such identifications is troubling given the lack of corroboration within the record,[154] and their brusque, but ultimately non-responsive, email to Avco/AVStar on September 12, 2016.[155]  It was only on October 24, 2016, following the depositions of the Precision Seattle witnesses, that Bates stamp numbers and documents were finally provided to counsel for Avco/AVStar.[156]

---

[149]  ECF No. 296-15.

[150]  ECF No. 296-19.

[151]  ECF No. 296-20, at 45:21–46:25.

[152]  ECF No. 296-21, at 7:18–8:13; 82:1-25.

[153]  ECF No. 308, at 5 (citing Decl. of Richard Matthews (ECF No. 308-3) ¶ 4).

[154]  ECF No. 314, at 83:13-18.

[155]  *See* ECF No. 296-15.  At the oral argument on April 11, 2017, counsel for Avco/AVStar noted that she had directed her email requesting the Bates numbers of customer confusion documents to "Andy" thinking that this was the correct nickname for recently added counsel Andrew Shores.  Rather than provide the requested information or otherwise correct Ms. Saltz Turner, however, Mr. Richard Matthews, in a unfortunately unsurprising response given the lack of professional courtesy and respect, responded simply "Who's Andy?".

[156]  ECF No. 296-26.

Avco/AVStar avers that it was suffered incurable prejudice as a result of this failure to identify the documents/emails by Bates stamp in accordance with Magistrate Judge Mehalchick's instruction. Specifically, it avers that, because the customer confusion documents were not produced or identified prior to the Seattle depositions of Precision employees, it has suffered prejudice in not being to examine these employees on the documents.[157] Avco/AVStar therefore requests that the evidence of customer confusion be precluded *in toto*. In consideration that the "exclusion of critical evidence is an extreme sanction"[158] and sanctions should always be narrowly tailored to meet the misconduct,[159] I will decline this request. However, I will grant Avco/AVStar leave to re-depose Mike Allen, Alan Jesmer and Peter Nielsen concerning the customer confusion emails/documents via videoconferencing equipment within forty five (45) days, with expenses to be borne by Precision/TNB.[160]

(ii)   Precision/TNB's Alleged Failure to Timely Disclose Witnesses

Avco/AVStar next alleges that Precision/TNB failed to timely identify Dave Allen, Justin Hicks, and Dominque Youakim as potential deponents in their Rule 26(a) Disclosures, but thereafter produced Declarations in the fleeting days of

---

[157] ECF No. 314, at 88:9-11.

[158] *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977).

[159] *See Klein v. Stahl, GMBH & Co., Maschinefabrik*, 185 F.3d 98 (3d Cir. 1999).

[160] Avco/AVStar is, however, directed to submit to this Court for approval the costs incurred from these limited depositions by August 11, 2017.

factual discovery.[161]  Precision/TNB, in turn, argues that it its supplemental

disclosure of September 1, 2016 identified the companies for which declarants are

associated and representative.[162]  Having reviewed the Second Supplemental Rule

26(a) Disclosures provided by counsel, I am satisfied that, while the document

does not list the specific names of the declarants, it does list the companies they

represent as having  discoverable information relating to secondary meaning of the

RSA marks and confusion related to use of the RSA marks.[163]  Therefore, to the

extent Avco/AVStar so desired, it could have, and in fact did, schedule depositions

for several of these corporate respresentatives.  Furthermore, these Declarations

were all produced to Avco/AVStar within several days of their execution and prior

to the expiration of the discovery period.  There was still time thereafter for

Avco/AVStar to depose these declarants.

        (iii)    Precision/TNB's Alleged Failure to
                   Supplement Its Discovery Responses
                   Concerning USPTO Trademark
                   Registrations

Avco/AVStar finally argues that Precision/TNB never supplemented their

discovery responses as required by Magistrate Judge Mehalchick's Order of

---

[161]  ECF No. 296, at 8, 20.

[162]  ECF No. 308, at 7.

[163]  ECF No. 308-4.

October 7, 2015[164] to reflect November 1, 2015 applications to the USPTO for

trademark registration on the Principal Register.[165] Precision/TNB responds that it

properly informed Avco/AVStar and the Court that all of its USPTO filings were

publicly available on the USPTO.[166] My review of the factual record demonstrates

that counsel for Precision/TNB affirmatively represented, on August 18, 2016, that

all of its current USPTO filings were publicly available on the website.[167]

Unquestionably after its November 1, 2015 application to the USPTO, I find that

this revelation and directive is in accordance with Magistrate Judge Mehalchick's

Order of October 7, 2015.

### 2. Sanctions Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power

Title 28 of the United States Code, Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[168]

---

[164] Magistrate Judge Mehalchick's Order of October 7, 2015 held, inter alia, that parties need not produce requested documents that are publicly available, but must indicate where the publicly available requested documents may be found. ECF No. 168.

[165] See ECF No. 296, at 6, 20–21

[166] ECF No. 308, at 5.

[167] ECF No. 301-4, at 310: 8-18.

[168] 28 U.S.C. § 1927.

This section therefore requires the Court to find that an attorney "has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."[169] As noted above, when addressing this issue, the Third Circuit has therefore held that "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal."[170]

Avco/AVStar moves for sanctions against counsel for Precision/TNB, Mr. Matthews, alleging that during the course of discovery he failed to timely identify witnesses, withheld crucial evidence, frustrated depositions, and injured counsel at the deposition of Mike Allen. As detailed above, I have granted Avco/AVStar's Motion for Sanctions only as it relates to customer confusion emails. Therefore, to the extent that counsel for Avco/AVStar alleges that it is entitled to attorney's fees and costs for multiplying proceedings, it is limited to that specific issue. However, Section 1927 sanctions are only appropriate where an attorney's actions are so outrageous and obvious to the court that it "need not use hindsight nor *post hoc* analysis" to conclude that counsel's actions were intentional and improper.[171]

---

[169] *In re Prudential Ins. Co. America Sales Practice Litig.*, 278 F.3d 175, 188 (3d Cir. 2002).

[170] *LaSalle Nat'l Bank v. First Connecticut Holding Group, LLC XXIII*, 287 F.3d 279, 289 (3d Cir. 2002).

[171] *Macheska v. Thomson Learning*, 347 F. Supp.2d 169, 181 (M.D.Pa. 2004).

Here, while Mr. Matthews' delay in identifying the instant documents gives this Court pause, a determination of bad faith or vexatious behavior would necessarily be *post hoc* analysis of a highly truncated and deeply contentious discovery period. I will, therefore, decline to award attorneys' fees on this basis under Section 1927.

I would now like to discuss the allegations concerning the October 17, 2016 deposition and the general animus and vitriol which has enlivened discovery in this case. At the outset, I note that, despite near incessant complaints concerning the production of documents, the parties have demonstrated few actual deficiencies and no incurable prejudice. Having read the extensive record of this case, it is my belief that, at core, the parties had, and continue to have, a fundamental disagreement concerning both the proper scope and the proportional needs of discovery. This disagreement was not insurmountable, but rather could have been resolved, possibly without court intervention, through good faith and civility by both parties.

The parties are reminded that civility in litigation is "more than surface politeness; it is an approach that seeks to diminish rancor, to reconcile, to be open to nonlitigious resolution."[172] Counsel for both parties were further reminded of this duty in Magistrate Judge Mehalchick's Order of October 18, 2016, which stated, in pertinent part:

---

[172] *Revson v. Cinque & Cinque*, 70 F.Supp.2d 415, 434 (S.D.N.Y. 1999)(quoting Jerome J. Shestack, *Defining Our Calling,* 83 A.B.A. J. 8 (Sept. 1997)).

[T]he Court is compelled to remind all counsel that practice before this Court is governed both by the Pennsylvania Rules of Professional Conduct and the Middle District of Pennsylvania Code of Professional Conduct. L.R. 83.23.2 (adopting Pa. R. Prof'l Conduct and Middle District of Pennsylvania Code of Professional Conduct). Specifically, the Court directs counsel's attention to the following provisions and reminds them to incorporate them into their professional practice, at least in connection with any litigation before this Court:

    1. "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Pa. R. Prof'l Conduct 3.2.

    2. "I will treat with civility and respect the lawyers, clients, opposing parties, the court and all the officials with whom I work. Professional courtesy is compatible with vigorous advocacy and zealous representation. Even though antagonism may be expected by my client, it is not part of my duty to my client." L.R. app. C ¶ 2 (Middle District of Pennsylvania Code of Professional Conduct).[173]

Unfortunately, that reminder came too late to save counsel from the rancor of this discovery period. I include it again here as an admonishment for counsel and as warning that, should this case reach trial, such demonstrated incivility will wear poorly with a jury **and will not be tolerated by this Court**.

Furthermore, to the extent that either party conducted or fashioned the discovery record to "build a narrative"[174] for the imposition of sanctions, I reference the words of my colleague, the Honorable James M. Munley of this Court, who wrote that "discovery is about developing a record in the case that

---

[173] ECF No. 220.

[174] The **substantial** briefing on this matter is replete with allegations to this end by counsel for both Precision/TNB and Avco/AVStar.

produces all of the relevant information necessary to insure an outcome fair to all parties."[175]  It is not, as is becoming increasingly common and is clearly present in this case, an invitation for "disputes over discovery . . . [to] supplant that merits consideration in the eyes of the litigants.[176]  At this point, given the time, money, and effort expended by the parties concerning the pending motions for sanctions, discovery litigation, driven almost entirely by personal animus between counsel, has reached that level.  Therefore, to provide justice for Precision/TNB and Avco/AVStar, I will end this ancillary proceeding between counsel and decline to award sanctions, and in any way vindicate, the ridiculous and circus-like actions of counsel during the October 17, 2016 deposition.[177]  No sanctions pursuant to this Court's inherent power will therefore issue.

### F.   AVCO Corporation/AVStar Fuel Systems, Inc.'s Motion to Exceed Page Limitation

In a Motion filed on February 24, 2017, Avco/AVStar argues that the page limitation for a brief in support of a motion for summary judgment should be

---

[175] *Consugar v. Nationwide*, Civil Action No. 3:10-CV-2084, 2011 WL 2360208, at *4 (M.D.Pa. June 9, 2011).

[176] *Perez v. Great Wolf Lodge of the Poconos,* Civil Action No. 12-CV-1322, 2015 WL 4066633, at *1 (M.D.Pa. June 15, 2015).

[177] When informed of this incident during one of the many "emergency" telephone conferences, Magistrate Judge Mehalchick appropriately stated both that she was "at a loss for words right now, counsel" and that "I can't believe I'm talking to two grown-up attorneys like I talk to my 7-year-old and 9-year-old at home. This is appalling, it's an embarrassment to the Court and it's an embarrassment to the profession, quite frankly." ECF No. 245, at 6: 9-10; 7: 3-6. I agree.

extended to 75 pages in order to properly address the complexity of this case.[178] Precision/TNB respond that such an extension is un-needed and will necessarily bring in the consideration of irrelevant and ancillary issues. However, to the extent leave will be given for both parties' supporting and opposition briefs, they feel a thirty (30) page brief is sufficient.[179]

Middle District of Pennsylvania Local Rule 7.8(b)(1) states that "[u]nless the requirements of Local Rule 7.8 (b)(2) and (3) are met, no brief shall exceed fifteen (15) pages in length."[180] If a party seeks authorization from the Court, they must both "specify the length of the brief requested" and file the request "at least two (2) working days before the brief is due."[181] Here, Avco/AVStar has met both of these requirements. However, in recognition that length does not necessarily equal compelling legal argument, the Court will grant both parties leave to file briefs in both support and opposition totaling forty-five (45) pages in length.

### III.    CONCLUSION

I am loathe to re-open discovery in the case, even with the limited purposes and timeline as described above. However, my perception of discovery here led to concern that personal animus between counsel had negatively and needlessly

---

[178]  ECF No. 273.

[179]  ECF No. 285.

[180]  M.D. Pa. Local Rule 7.8(b)(1).

[181]  M.D.Pa. Local Rule 7.8(b)(3).

prejudiced the parties which they represent.  Upon review of the parties'

submissions and despite their repeated and vehement assertions, I learned,

however, that real prejudice is in fact limited and can be easily cured at this

juncture.  The sanctions contained herein, levied against both parties, are fashioned

with that remedial purpose.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge