## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVCO CORPORATION, | : CIVIL ACTION |
|      Plaintiff and | : |
|      Counterclaim Defendant, | : NO.: 4:12-cv-1313-MWB |
|      v. | : |
| TURN AND BANK HOLDINGS, INC. | : (Judge Matthew W. Brann) |
| AND PRECISION AIRMOTIVE, LLC, | : |
|      Defendants and | : **FILED UNDER SEAL** |
|      Counterclaim Plaintiffs, | : |
|      v. | : |
| AVSTAR FUEL SYSTEMS, INC., | : |
|      Counterclaim Defendant. | : |

*FILED*
*WILLIAMSPORT*
*SEP 15 2017*
*PER ___ DEPUTY CLERK*

### AVCO CORPORATION AND AVSTAR FUEL SYSTEMS, INC.'S RESPONSE TO TURN AND BANK HOLDINGS, INC. AND PRECISION AIRMOTIVE, LLC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR  MOTION FOR SUMMARY JUDGMENT

Plaintiff and Counterclaim Defendant AVCO Corporation ("AVCO" or "Lycoming"[1]) and Counterclaim Defendant AVStar Fuel Systems, Inc. ("AVStar"), by their counsel, respond to Turn and Bank Holdings, Inc. ("TNB") and Precision Airmotive, LLC's ("Precision NC" or collectively "TNB/Precision NC") Statement of Material Facts, pursuant to Local Rule 56.1, as follows:

1.      **DENIED AS STATED.**  TNB, through its licensee Precision NC, began to manufacture RSA-type system injectors after July 15, 2013. (AVCO/AVStar Ex. 9 (Trademark License Agreement) and Ex. 2 (Notice of Closing of Sale of Assets)).  By way of further response, Precision NC does not

_____

[1] AVCO Corporation, designs and manufactures aircraft engines through its unincorporated division Lycoming Engines.

manufacturer the component parts for its fuel control systems and orders parts

from various vendors and, then assembles the fuel controls.  (TNB Ex. A

(Grafenauer Dec.) at ¶ 6).  As the RSA servo models only define a particular type

and size of fuel control, Precision NC uses Lycoming Engines' ("Lycoming")

confidential and proprietary fuel flow curve data.  (AVCO/AVStar Ex. 3 (Hall

Depo.) at 30:11-16; Ex. 4 (11/14/12 Hearing Trans.) at 37:8-10, 42:22-25, 43:3-5,

66:12-21, 67:5-13, 19-25, 68:1-7; Ex. 5 (Rose Depo.) at 89:17-23, 90:8-15).

Lycoming assigns a part number which is the unique Lycoming identifier of

the overall servo and the servo manufacturers, AVStar or Precision NC, have a part

number (a/k/a setting number) that corresponds with Lycoming's unique part

number.  (AVCO/AVStar Ex. 6 (Folk Depo.) at 11:24-25, 12:1-3, 197:12-18; Ex. 4

(11/14/12 Hearing Trans.) at 67:5-13, 19-25, 68:1-7).   There is no evidence that

Lycoming either sold to or licensed its confidential and proprietary fuel flow curve

data to TNB and/or Precision NC.  Yet, Precision NC has and continues to use

Lycoming's confidential and proprietary fuel curve data in its manufacture of RSA

fuel injector models.

2.    **DENIED AS STATED**.  Precision NC, as one of Lycoming's

suppliers for RSA-type injector systems, supplies complete RSA-type injector

system models which include Lycoming's confidential and proprietary fuel flow

curve data to Lycoming for installation on Federal Aviation Administration

("FAA") approved Type Certificated aircraft engines.  (AVCO/AVStar Ex. 4 (Folk

11/14/12 Hearing Trans.) at 37:1-5, 38:7-25, 49:12-15).

     3.   **DENIED.**  The Bendix Corporation ("Bendix") developed the RS

injector system and made inventive improvements which resulted in a new type of

servo regulator system by 1961, the RSA-type injector system.  (AVCO/AVStar

Ex. 7 (Rivera Aff.) at ¶¶ 5, 12; Ex. 8 (1/12/15 Hearing Trans.) at 164:3-5).  With

the exception of Mr. Hall who states that "[t]he fuel injection servo was developed

in the 1960s by The Bendix Corporation…." (ECF No. 25, ¶ 5) and Mr. Weaver

who testified that the RSA-type system was developed by Bendix for Lycoming in

the late 50s early 60s (TNB Ex. B at 228:1-7), TNB/Precision NC's citations to the

record are incorrect.  Mr. Grafenauer testified that he did not know who invented

the RS/RSA fuel injector system (TNB Ex. A at 82:13-15) and Mr. Everhart

testified "I don't know what Lycoming installed on engines prior to 1961."  (TNB

Ex. C at 196:5-6).

     4.   **DENIED AS STATED.**  The principles of operation of the RSA-type

fuel injector system is set forth in its entirety in the Bendix December 15, 1961

RSA Fuel Injection System Preliminary Manual.  (AVCO/AVStar Ex. 11 (Bendix

1961 manual) at pp. 6-7).

     5.   **DENIED.**  The only two witnesses with direct, personal knowledge of

Bendix's development of the RSA-type injector system and RSA model

designations are Donald Rivera and Randy Jenson.  Mr. Rivera worked at Bendix
under the tutelage of Elmer Hasse, a prominent engineer and inventor of the RSA-
type servos and was educated by Mr. Hasse and James Kirwin, the director of
piston engine aviation fuel controls in the art and history of the development of the
Bendix entire line of general aviation fuel controls, including the RS/RSA servos.
(AVCO/AVStar Ex. 7 (Rivera Aff.) at ¶¶ 5, 6).  Mr. Jenson, while employed by
Precision NC's predecessor, Precision Airmotive, LLC ("Precision WA"), served
as the liaison between Bendix and Precision WA in the transfer of the RSA product
line to Precision WA. (AVCO/AVStar Ex. 12 (Jenson Depo.) at 47:16-25, 48:9-25,
49:1-8, 54:25, 55:1-6).

Further, Bendix developed the Servo Regulator Injector System Model
Designation decoder which was revised in March 1961 (AVCO/AVStar Ex. 10
(Bendix Decoder) and the RSA Fuel Injection System Preliminary Manual,
published on December 15, 1961. (AVCO/AVStar Ex. 11).  These documents,
following the development of the RSA-type injector system, define this particular
series of fuel injection systems, which was adopted by Precision NC in its
publication in December 2013.  (AVCO/AVStar Ex. 13).  Even non-party witness
Jonathan Pava testified that "RSA" is how Bendix designated its models, it defines
the style and size of the fuel injection servo.  (AVCO/AVStar Ex. 14 (Pava Depo.)
at 28:15-19, 29:17-18, 30:4-10).

TNB/Precision NC has identified no witnesses who have direct, personal knowledge as it relates to Bendix's development of the RSA-type injector system and have produced no credible evidence to support its contention that "Bendix utilized an alpha-numeric model designation system in alphabetic order to identify various iterations of product families it developed."  In fact, Mr. Grafenaurer, President of Precison NC's predecessor Precision Airmotive LLC ("Precision WA") testified that he had never reviewed the Bendix RSA Fuel Injection System Preliminary Service Manual.  (AVCO/AVStar Ex. 15 (Grafenauer Depo.) at 77:19-21).  Mr. Grafenauer also testified that, in considering the registration of the RSA model designators as trademarks, he never looked at the historical background and never requested anybody else to look at the historical background as to the development of the RSA-type injector system.  (*Id.* at 77:24-25, 78:1-14, 23-25).  As to RSA, Mr. Grafenauer testified that he understood that the "A" in RSA stands for "automatic unit," further evidencing that he knew that RSA had meaning in the aviation industry.  (*Id.* at 79:19-20).

TNB/Precision NC also relies on the Declaration of Michael R. Allen, who testified that he had never seen any manuals developed by Bendix that specifically provided a section on the model designations and only saw the Bendix decoder in preparation of this case.  (AVCO/AVStar Ex. 1 (Oct. 2016 Allen Depo.) at 160:2-12).  Mr. Allen also testified that he has no direct knowledge of how Bendix

derived at the model designations as he "wasn't there" and "[i]t would have been long before my time." (*Id.* at 73:6-12).

TNB/Precision NC also relies on a document attached to Mr. Allen's Declaration (TNB Ex. D, sub-exhibit 8 at bate stamp no. PAC_076582) titled "The origin of the RS and RSA model names." The author of this document is unknown as well as the date it was created and the source of information relied upon in the creation of this document.

6. **DENIED.** TNB/Precision NC's assertion that "[v]arious Bendix products included model designations ranging from 'AA' through 'WS', including the 'R' for its 'RS' and 'RSA' designated fuel injection servos" is unsupported by any credible evidence and contrary to the documentary evidence developed by Bendix. As discussed in paragraph 5 above, the unidentified document titled "The origin of the RS and RSA model names" lacks authenticity and foundation. As to TNB/Precision NC's reliance on the Bendix Active List (TNB Ex. D, sub-exhibit 7),[2] such document lends no support to TNB/Precision NC's contention as the Introduction section of this document under the section "How To Use" states, *inter alia*, "Model" refers to "[a]ll fuel metering equipment for turbine engines is arranged in this section alpha-numerically by the model or part number, which is shown in the "CUSTOMER ORDERING NUMBER OR BENDIX MODEL"

---

[2] TNB/Precision NC's Ex. D, sub-exhibit 8 is an incomplete document with several pages missing.

column.  (TNB/Precision NC Ex. D, sub-exhibit 7) (capitalization in original).

Further, in the Introduction, "CUSTOMER ORDERING NUMBER OR BENDIX

MODEL" is explained that "[t]his column lists the **model designation, where**

**applicable**, or the specific piece of equipment."  (*Id.*) (capitalization in original)

(emphasis added).

    7.    **DENIED.**  TNB/Precision NC, in support of the contention that "[t]he

model designators used by Bendix continued in alphabetical order…." is based on

the incomplete Bendix Active List discussed in paragraph 6 above, the unidentified

document titled "The origin of the RS and RSA model names" discussed in

paragraphs 5 and 6 and on hearsay.  The Bendix decoder defines each letter and

number in the RS/RSA-type injector system as does the Bendix Preliminary

Service Manuals and Precison NC's own manual.  (AVCO/AVStar Ex. 10 (Bendix

Decoder; Ex. 11 (Bendix 1961 manual); Ex. 29 (Bendix 1963 manual); Ex. 13

(Precision NC December 2013 RSA-5AD2 manual)).

    Moreover, Mr. Grafenauer testified that Gary Johnson is someone he thinks

was the original owner of "Precision Airmotive years – or Precision Engines.  I

can't remember" who allegedly told him that "the R is because they did a pressure

carburetor first…." could not remember what the "Q" was and also testified that he

relied on "other things" that he could not identify.  (TNB Ex. A at 79:19-25; 80:1-

18; 82:8-12).

8.     **ADMITTED IN PART AND DENIED IN PART.**  It is admitted

that:  (1) Bendix used the "RS" and subsequently the inventive improvement

"RSA" in relation to its general aviation fuel injector servos; (2) the model

designators include, but are not limited to, RS-10B1, RS-10ED2, RSA-10AD1,

RSA-10DB1, RSA-1DB2, RSA-10ED1, RSA-10ED2, RSA-5AD1, RSA-5AD2,

RSA-7AA1, and RSA-7DA1; and (3) Bendix was the sole source of the RS/RSA-

type fuel injector systems until January 1988.  AVCO and AVStar specifically

deny that the "RSA" is a family brand.  To the contrary, RSA identifies a new type

of servo regulator system Bendix developed in 1961.  (AVCO/AVStar Ex. 7

(Rivera Aff.) at ¶¶ 5, 12; Ex. 8 (1/12/15 Hearing Trans.) at 164:3-5; Ex. 10 (Bendix

Decoder); Ex. 11 (Bendix 1961 manual)).

9.     **ADMITTED IN PART AND DENIED IN PART.**  It is admitted

that the Bendix Corporation was purchased and merged into Allied-Signal Inc.

(ECF No. 144, p. 15 at ¶ 15).  AVCO and AVStar deny TNB/Precision NC's

contention that upon Bendix being acquired by the Allied-Signal Corporation that

such purchase and merger "include[ed] the Bendix brand that continued with the

RS and RSA-line of fuel injector servos and the RSA Marks and goodwill

associated therewith" as there is no documentary or testimonial evidence to

establish that:  (1) the "RSA" was a "Bendix brand;" (2) that "RSA" was a

trademark; and (3) Allied-Signal Corporation obtained the "goodwill" associated

8

with the RSA-type injector systems.  None of TNB/Precision NC's citations to the record support such statements.

10.   **DENIED.**  TNB/Precision NC have produced no evidence, documentary or testimonial, that Allied-Signal Corporation "continued to use the Bendix name along with the RSA Marks to brand the RSA servos it marketed and sold…."  TNB/Precision NC's citation to the record does not support this statement.  Specifically, Mr. Hall's Declaration only states that "The Bendix Corporation, which was subsequently purchased by and merged in Allied Signal, Inc…." (ECF No. 25 at ¶ 5).  Paragraph 6 of Mr. Hall's Declaration addresses Precision WA's purchase of the RSA Bendix product line.  (*Id.* at ¶ 6). Further, Mr. Hall testified that he could not recall any specific marketing materials or documents to indicate that Bendix used the RS or RSA to market its fuel injection type systems.  (AVCO/AVStar Ex. 3 (Hall Depo.) at 56:17-25).   As to the citation to TNB's Exhibit 11 to Mr. Welch's deposition, Exhibit 11 is a training presentation produced by Allied Bendix Aerospace, Bendix Energy Controls Division.  (TNB Ex. F, sub-exhibit 11).

11.   **ADMITTED IN PART AND DENIED IN PART.**  It is admitted that on January 20, 1988 Allied-Signal Inc. entered into an Asset Purchase Agreement with Precision WA to sell the RS/RSA product line and associated assets.  (AVCO/AVStar Ex. 16 (Allied Asset Purchase Agreement).  It is also

admitted that from January 20, 1988 until February 10, 2010 when AVStar entered

the RSA-type injector system (AVCO/AVStar Ex. 18 (AVStar Sales Analysis

Report)) market for complete servo units, Precision WA was the sole manufacturer

of RSA-type injector systems.

It is denied that the Allied-Signal (Bendix) Asset Purchase Agreement

provides that Precision WA purchased the "RSA Marks." To the contrary,

Precision WA "acquired the right to make [RSA] models and use these [model]

designations from the prior producer, Bendix." (TNB Ex. A (Grafenauer Dec.) at ¶

17). Further, Precision WA's former employee, Roger Hall, testified that he had

seen the Asset Purchase Agreement between Allied-Signal, Inc. and Precision WA

and did not recall the agreement referencing any kind of trademark to the RSA

model numbers. (AVCO/AVStar Ex. 3 (Hall Depo.) at 60:4-14).

12. **ADMITTED.** By way of further response, there is no evidence that

that "Precision Airmotive LLC precedecessor in interest to the [RSA Marks]," a

phrase added by TNB/Precision NC and unsupported by the record.

13. **ADMITTED IN PART AND DENIED IN PART.** It is admitted

that Precision WA filed for bankruptcy on December 7, 2012. (AVCO/AVStar

Ex. 17 (Precision WA Petition for Bankruptcy)). It is also admitted that on July

15, 2013, Precision WA and TNB closed the sale of Precision WA's assets

pursuant to the Asset Purchase Agreement. (AVCO/AVStar Ex. 2 (Notice of

Closing of Sale of Assets)).  Any attempt by TNB/Precision NC to infer that the institution of this litigation by AVCO is connected to Precision WA's decision to file for bankruptcy is denied and TNB/Precision NC has provided no citation to the record to support such inference.

14.  **ADMITTED.**

15.  **ADMITTED IN PART AND DENIED IN PART.**  It is admitted that, at least from the early 1960s to January 20, 1988, Bendix was the sole source of newly manufactured RSA-type injector systems and from January 20, 1988 to February 10, 2010, Precision WA was the sole source of newly manufactured RSA-type injector systems.  The remaining statements are denied.

From February 10, 2010 to July 15, 2013, AVStar and Precision WA were both the source of newly manufactured RSA-type injector systems. (AVCO/AVStar  Ex. 18 (AVStar Sales Analysis Report)).  For a period of time in July 2013 and, again in 2015, AVStar was the sole source of newly manufactured RSA-type injector systems.  (AVCO/AVStar Ex. 19 (Erickson Depo.) at 119:4-25; 120:1-11; Ex. 39 (FAA Letter), Ex. 40 (WA Secretary of State Filing), Ex. 25 (Bankruptcy Order Name Change)).  Currently, there are only three manufacturers of fuel injection systems – Continental Motors, Inc., AVStar (2010 to present) and Precision NC (2013 to present).  (AVCO/AVStar  Ex. 8 (1/12/15 Hearing Trans.) at 139:23-25; 140:1-4; Ex. 14 (Pave Depo.) at 41:21-25, 42:1-5).

16.    **DENIED.**  To the contrary, from 1961 until January 1988, Bendix was Lycoming's sole supplier of the RSA-type injector system.  From January 1988 until February 2010, Precision WA was Lycoming's sole supplier.  (AVCO/AVStar Ex. 18 (AVStar Sales Analysis Report).  On May 19, 2010, the FAA approved Lycoming's certification plan to use AVStar's servos.  (AVCO/AVStar Ex. 6 (Folk Depo.) at 262:22-25, 263:1-5).  After July 15, 2013, Precision NC and AVStar were Lycoming's suppliers of the RSA-type injector systems.  (AVCO/AVStar Ex. 2 (Notice of Closing of Sale of Assets); Ex. 4 (Folk Hearing Trans.) at 49:12-15).

17.    **ADMITTED.**

18.    **ADMITTED IN PART AND DENIED IN PART.**  It is admitted that trademark applications require execution of a declaration and such declaration, being in writing, speaks for itself.  It is denied as to the declaration in the RSA-5AD1 Mark History File (TNB Ex. D, sub-exhibit 5) on the grounds that the purported Mark History is not certified by the United States Patent and Trademark Office ("USPTO") and, upon review, it appears that the RSA-5AD1 Mark History File is incomplete.

19-20.  **DENIED.**  In the Declaration of attorney Priya Cloutier (TNB Ex. D, sub-exhibit 6, ¶ 7), Ms. Cloutier declares that "[b]efore executing any of the declarations [referenced in her Declaration] [she] spoke with representatives from

Precision WA and reviewed certain documentation provided by Precision WA...."
Yet, Ms. Cloutier fails to identify these "representatives from Precison WA" and
further fails to identify what "documentation provided by Precision WA" she
reviewed.

Contrary to Ms. Cloutier's declaration, the President of Precision WA, Scott
Grafenauer, testified that he did not know who at Precision WA provided counsel
with information relating to the RSA or who worked with counsel on the
application for registration.  (AVCO/AVStar Ex. 15 (Grafenauer Depo.) at 111:6-
17).  Precision WA's former employee Alan Jesmer (marketing and sales) testified
that he was not involved in any way with the application to register the model
numbers as trademarks and did not assist in providing any factual documentation
for the registration application.  (AVCO/AVStar Ex.20 (Jesmer Depo.) at 22:6-13).
Precision WA's former employee Roger Hall (engineer) testified that he was not
directly involved in the application for registration of the model designations or the
"RSA" and was not requested to provide historical documentation to support the
trademark applications for either the model designations or the "RSA."
(AVCO/AVStar Ex. 3 (Hall Depo.) at 37:21-25, 38:1-9, 53:6-15).  Further, Mr.
Hall testified that he could not recall any specific marketing materials or
documents to indicate that Bendix used the RS or RSA to market its fuel injection
type systems.  (*Id.* at 56:17-25).  It appears that the only individual that lent some

assistance in the trademark registration applications was former Precision WA

employee Peter Nielsen.  (AVCO/AVStar Ex. 8 (1/12/15 Hearing Trans.) at

155:15-25, 156:1-2).

Prior to the applications for registration, Precision WA knew that the

aviation industry had been using the RSA model designations since the early

1960s.  (AVCO/AVStar  Ex. 12 (Jenson Depo.) at 101:22-25, 102:1-5).  Precision

WA knew, as early as 1989 that Bendix designed a line of fuel control systems that

Bendix identified as the RSA system and that it was using the nomenclature

"RSA" to identify the general type of fuel control.  (*Id.* at 47:16-25; 48:9-25; 49:1-

15; 54:25; 55:1-6).  Precision WA knew as early as 2007 that Lycoming was

getting an alternate supplier for servos.  (AVCO/AVStar Ex. 15 (Grafenuaer

Depo.) at 48:19-25; 49:1-25, 50:1-8).  Precision WA knew that the "A" for RSA

had meaning in the aviation industry.  (*Id.* at 79:19-20).

Based on the information provided by Precision WA, Ms. Cloutier allegedly

verified Precision WA's "ownership of the applied-for RSA marks and right to use

the mark in commerce" despite the absence of any evidence of ownership and that

"RSA" does not have specific meaning or significance in the aviation industry

despite the fact that the historical documentation, including Bendix's Preliminary

Service Manuals, state otherwise.  No documents have been produced and

14

TNB/Precision NC has provided no citation to the record that establishes the facts allegedly verified by Ms. Cloutier.

Moreover, three months before Precision WA made the February 14, 2013 statements to the USPTO (e.g. RSA has no significance, has no meaning and is a fanciful term), Precision WA knew that this Court stated that "it is undisputed that Precision's marks are not inherently distinctive." (AVCO/AVStar Ex. 36 (USPTO File); ECF No. 60, p. 5). This Court also stated that "Precision identifies its fuel injection servos by an alpha-numeric designation, each prefaced by the abbreviation 'RSA.' The parties agree that these designations describe various attributes of the servos – for example, the type of fuel injection system, and nominal and actual bore size." (ECF No. 60, p. 2 ) (citation omitted).

21.   **DENIED.** It makes no difference as to whether or not Ms. Cloutier was "asked by Precision WA to make any misrepresentation of fact," the record shows as set forth in paragraphs 19-20 that the true facts were known to Precision WA prior to submitting registration applications to the USPTO and after November 19, 2012, additional facts were made known to Precision WA with no evidence that the true facts were relayed and/or corrected by Precision WA relating to the registrations. It is also significant that attorney Rick Matthews represented Precision WA in September 2012 in this litigation (ECF No. 34) and thereafter

continued his representation of TNB in this litigation and before the USPTO

beginning in September 18, 2013.  (AVCO/AVStar Ex. 36 (USPTO File)).

    22.    **ADMITTED.**

    23.    **ADMITTED.**

    24.    **DENIED IN PART.**  AVCO and AVStar, had they been timely made

aware in discovery of the pending applications for registrations AVCO and/or

AVStar would have protested and, it is undisputed that AVCO has subsequently

filed with the USPTO a petition to cancel the registrations which petition has been

stayed pending this action.

    25.    **DENIED.**  In support of this statement, TNB/Precision NC relies only

on hearsay testimony and fails to cite to the record as to any documents or

testimony by AVCO to support this statement.

    26.    **DENIED.**  In support of this statement, TNB/Precision NC relies only

on hearsay testimony and fails to cite to the record as to any documents or

testimony by AVCO.  Further, Mr. Weaver testified that "I don't believe those

words are words that Lycoming used....I think those are words that I used...."

(AVCO/AVStar Ex. 22A (Nov. 2016 Weaver Depo.) at 366:22-25; 367:1-24).

    27.    **DENIED.**  Mr. Weaver's testimony, as cited by TNB/Precision NC is

incorrect.  Mr. Weaver testified that "[a]nd about a year later about '05, '06,

somewhere in there, Lycoming approached Ron Weaver to see if I would have

interest in producing carburetors and servos….for Lycoming engines to their

design data." (TNB Ex. B at 72:1-7). Contrary to TNB/Precicion NC's

representations, prior to 2005, AVStar had already started to reverse engineer the

RSA-5 model for Lycoming's competitor, Superior Air Parts. (AVCO/AVStar

Ex. 22 (Sept. 2016 Weaver Depo.) at 65:1-12, 66:11-17, 68:3-15, 71-13-15; Ex.

22A (Nov. 2016 Weaver Depo.) at 372:4-25, 373:1-8). TNB/Precision NC also

fails to cite to the record in support of the assertion that AVStar "ultimately

manufacture[d] copies of the…RSA servos, with the financial and technical

support of AVCO." Contrary to TNB/Precision NC assertion, AVCO and AVStar

jointly developed the RSA-type injector systems. (AVCO/AVStar Ex. 41 (Fuel

Systems Development Agreement)).

     28.   **ADMITTED IN PART.** It is admitted that in March 2007, AVStar

Aircraft Accessories ("AAA") and Lycoming entered into a Memorandum

Agreement, as an interim agreement, "while business strategy and technical

discussions on fuel systems for use in piston aircraft engines for general aviation

[took] place. (AVCO/AVStar Ex. 23 (Memorandum Agreement)). The

Memorandum Agreement also provided that "[e]ach of the Parties shall bear its

own costs during the term of the Agreement. However, the Parties acknowledge

and agree that AVStar shall submit invoices to Lycoming on April 1, 2007, and

May 1, 2007, each in the amount of Seventy Thousand Dollars ($70,000.00) which

shall be paid within ten (10) days by Lycoming for development costs to be incurred by AVStar" for fuel systems.  (*Id.*).

29.  **ADMITTED.**

30.  **ADMITTED.**

31.  **ADMITTED IN PART AND DENIED IN PART.**  It is admitted that in July 2008, AVCO and AVStar entered into a Master Supply Agreement.  It is denied that through the Master Supply Agreement, AVCO agreed to indemnify AVStar for its use of the RSA marks, as TNB/Precision NC states.  To the contrary, while the Master Supply Agreement contains provisions for joint indemnity, there is no reference to the "RSA Marks."  Moreover, at the time the Master Supply Agreement was executed in January 2008, there were no registered trademarks for the "RSA" or the "RSA model designations.  In fact, as TNB/Precision NC admits, the RSA was not registered on the Principle Register until January 14, 2014 post-dating the Master Supply Agreement by six (6) years and the RSA model designations,  RSA-10AD1, RSA-10ED1 and RSA-5AD1, were not registered on the Principle Register until January 2017, post-dating the Master Supply Agreement by nine (9) years.  (AVCO/AVStar Ex. 21 (Trademark Registrations); Ex. 24 (Master Supply Agreement)).

32.  **ADMITTED.**

33.   **DENIED.** Lycoming's competitor, Superior Air Parts, in 2004 requested that AAA use the RSA model numbers for its development of the RSA-5 servo. (AVCO/AVStar 22A (Nov. 2016 Weaver Depo.) at 372:4-25, 373:1-8). Further, Mr. Weaver testified that there was no discussion between Lycoming and AVStar as to using the model numbers because "[w]hen you look at RSA that is part of the type certificate and the design…by Lycoming, it's in their design.  So it was never discussed.  It was never even a thought to using or not using." (AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 112:16-25, 211:25, 212:1-5, 25, 213:1-3, 227:23-25, 228:1-2; Ex. 5 (Rose Depo.) at 61:17-19, 21-25, 62:1-8, 63:7-19).  The FAA also approved Lycoming's certification plan to use AVStar's servos.  (AVCO/AVStar Ex. 6 (Folk Depo.) at 262:22-25, 263:1-5).

34.   **DENIED.**  The Marvel-Schebler litigation which was amicably resolved has no bearing on this case as it predates the existence of TNB/Precision NC, involves different parties and a different product.  Moreover, the citation to the record does not support TNB/Precision NC's assertion that "AVStar voiced concern about using the same model designators" or that "AVCO insisted that the same marks be used."  Likewise, there is no citation to the record for the assertion that "AVCO similarly insisted that the RSA Marks be used on AVStar's servos exactly as they are on Precision's…."

To the contrary, Lycoming's type designs for engines approved by the FAA incorporate fuel injections servos.  (AVCO/AVStar Ex. 4 (Folk 11/14/2012 Hearing Trans.) at 37:1-5, 38:7-25).  Further, the FAA approved Lycoming's certification plan to use AVStar's servos.  (AVCO/AVStar Ex. 6 (Folk Depo.) at 262:22-25; 263:1-5).

35.   **DENIED.**  TNB/Precision NC offers absolutely no citation to the record that in the Marvel-Schebler case (which has no relevance to this litigation), "AVStar was able to transition away from use of the Marvel-Schebler's carburetor model designators…to alternative designators…without needing pre-approval from the FAA or ceasing sales of its products."  The only document upon which TNB/Precision NC relies is a Service Instruction issued by Lycoming and not AVStar.  (TNB Ex. D, sub-exhibit 9).  Moreover, TNB/Precision NC identifies no citations to the record in support of Mr. Allen's self-serving Declaration and his recitation of the facts of an unrelated litigation.

Further, the fact that Lycoming was required to submit to the FAA a separate certification program to obtain FAA approval to use AVStar's servos belies TNB/Precision NC's assertion that "pre-approval from the FAA was not required.  (AVCO/AVStar Ex. 6 (Folk Depo.) at 262:22-25, 263:1-5; Ex. 4 (Folk 11/14/12 Hearing Trans.) at 49:16-23).

36.   **DENIED.**  Because Precision WA was no longer the only approved manufacturer of the RSA-5 servo, Lycoming proposed to the FAA and the FAA approved the removal of Precision WA from the Type Certificate and Type Certificate Data Sheet, both issued by the FAA.  (AVCO/AVStar Ex. 19 (Erickson Depo.) at 59:14-18; Ex. 6 (Folk Depo.) at 169:9-15, 170:5-18; Ex. 4 (Folk 11/14/12 Hearing Trans.) at 50:4-20; Ex. 31 (Kraft Depo.) at 54:21-25, 55:1-5).  Moreover, the removal of Precision WA pre-dated the existence of Precision NC.

37.   **ADMITTED.**

38.   **DENIED AS STATED.**  It is unclear as to TNB/Precision NC's usage of the phrase "manufacturers certain variants" of servos.  Currently, AVStar manufacturers complete RSA-5AD1, RSA-10AD1 and RSA-10ED1 model servo units with Lycoming's unique part number identifications for particular applications for Type Certificated engines Lycoming manufacturers.  (AVCO/AVStar Ex. 6 (Folk Depo.) at 197:12-18; Ex. 4 (Folk 11/14/12 Hearing Trans.) at 39:1-25, 40:1; 66:21-25, 67:1-5).

39.   **DENIED AS STATED:**  AVStar supplies approximately 95% to 97% of newly manufactured RSA-type injector system models to Lycoming.  (AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 52:4-19).

40.   **ADMITTED IN PART AND DENIED IN PART.**  It is admitted that Lycoming has sold and sells "products and components bearing the prefix

"RSA" as part of the model designations…." It is denied that Lycoming "advertises, markets and promotes fuel injection servos." (TNB Ex. D, sub-exhibit 10).

It is admitted that AVStar has advertised, marketed, promoted, sold and sells "fuel injection servos it manufacturers, all of which contain data plates identifying, among other things, the model designation of the servo." (TNB Ex. D, sub-exhibit 11). AVStar denies that it has "sold or sells fuel injection servos with only the prefix 'RSA' to the model designations." (*Id.*).

41. **ADMITTED IN PART AND DENIED IN PART.** It is admitted that AVStar reverse engineered the RSA-5 servo in 2004 and that AVStar's servos are identical to Precison NC's servos as to fit, form and function. It is also admitted that both AVStar and Precision NC supply newly manufactured servos to Lycoming and its competitor Continental Motors, Inc. As it relates to the aftermarket, it is admitted that AVStar and Precision NC use a distribution network to sell their respective products with their respective products being sold by the same distributor, Aviall. It is denied that AVStar and Precision NC sell their respective product to all of the same customers.

It is further denied that "AVCO set up Precision for the specific purposes of 'destroying' Precision and taking over its market share." TNB/Precision NC have no citations to the record to support such statement. And, there is no citation to the

record to support that AVCO had set up AVStar.  In fact, the evidence shows that AVCO had no involvement in the formation of AVStar.  (AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 86:9-15).  Nor is there any citation to the record to support the statement that AVCO sought to destroy Precision and taking over its market share.

42.   **ADMITTED.**  By way of further response, even Precision NC's own employee, Peter Nielsen, testified that AVStar, just like Precision NC, is an OEM.[3] (AVCO/AVStar Ex. 8 (1/12/15 Hearing Trans.) at 142:10-13).  It is undisputed that AVStar is a true OEM as its servos are manufactured in accordance with AVStar's specifications and all parts are 100% authentic AVStar parts.  (AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 152:19-25, 153:1; Ex. 5 (Rose Depo.) at 42:7-8, 10-11).  And, in 2013, Precision NC became the new OEM as it has no corporate relationship to its predecessor Precision Liquidation LLC f/k/a Precision Airmotive LLC. (AVCO/AVStar Ex. 25 (Order Name Change)).

As to AVStar's registration of its name "AVStar," as indicated on the Registration Certificate, "[t]he mark consists of a seven-point star design partially superimposed by the stylized wording "AVSTAR."  (TNB Ex. U).

---

[3] OEM stands for Original Equipment Manufacturer which is defined as a manufacturer that produces goods for other companies to sell under their own name. *See* Collinsdictionary.com.

23

43.   **DENIED.**  The "RSA" and the RSA model designations were used by Lycoming since at least 1961.  (AVCO/AVStar Ex. 7 (Rivera Aff.) at ¶ 18).  In fact, it was even referred to as the "Lycoming RSA."  (AVCO/AVStar Ex. 26 (Allied 4/28/88 Letter); Ex. 27 (D&G Supply article); Ex. 28 (Little Flyers article)).  Precision WA and Precision NC's former employee Roger Hall testified that the aviation industry has been using the RSA model designations since the early 1960's.  (AVCO/AVStar Ex. 3 (Hall Depo.) at 101:22-25, 102:1-5).  Mr. Hall also testified that the RSA model designations were used by others in relation to the Bendix or Precision WA's servos that they were selling or overhauling.  (*Id.* 92:18-22; Ex. 12 (Jenson Depo.) at 38:11-23, 41:19-25, 42:1-13).  AVStar used the RSA model designations pre-dating the existence of TNB/Precision NC by at least nine (9) years and by three (3) years when it began manufacturing new RSA-type injector systems in 2010.  (AVCO/AVStar Ex. 22A (Nov. 2016 Weaver Depo.) at 372:4-25, 373:1-8; Ex. 18 (AVStar Sales Analysis); Ex. 2 (Notice of Closing of Sale of Assets).

It is also denied that AVStar's use of the RSA model designations was an "infringing use" since AVStar was using the model designation RSA-5AD1 in 2004, some six (6) years prior to Precision WA's registration of the model designations on the Supplemental Register.  (AVCO/AVStar Ex. 21 (Registrations); Ex. 22A (Nov. 2016 Weaver Depo.) at 372:4-25, 373:1-8).  And,

AVStar was using the model designation RSA-5AD1 as of February 10, 2010,

some eight (8) prior to Precision WA's registration of the model designations on

the Supplemental Register, at the earliest, in October 2010.  (AVCO/AVStar Ex.

21 (Registrations); Ex. 18 (AVStar Sales Analysis Report).

44.   **DENIED.**  TNB/Precision NC provide no documents or testimonial

evidence nor citations to the record that Bendix had "long branded its manuals"

with RSA.  All of the manuals upon which TNB/Precision NC rely refer to the

RSA-type injectors as either "systems" or "series" and the early Bendix

Preliminary Service Manuals (1961 and 1963) unequivocally state that "[t]his

particular series of fuel injection systems has the basic model designation RSA

assigned thereto."  (AVCO/AVStar Ex. 11 (1961 manual); Ex. 29 (1963 manual).

Mr. Pava (a distributor, service, repair, warranty, and product support center for

Precision NC) testified that "RSA" is how Bendix designated their models and that

the brand is the company name – Bendix brand, Precision brand and AVStar brand.

(AVCO/AVStar  Ex. 14 (Pava Depo.) at 15:8-14,  21:16-25, 22:1-25, 23:1-2,

28:15-19, 29:17-18, 30:4-10, 34:1-4, 35:4-25, 36:1-2, 17-25).

45.   **DENIED AS STATED.**  The third parties who provided the

September 2012 Declarations cited by TNB/Precision NC, with the exception of

two individuals (Pava and McBride) provided no sworn testimony.  As this Court

previously stated "[e]ach of these…declarations is largely identical, indicating that

the declarant had worked with RSA branded servos, that they understood RSA branded servos come from the Bendix Corporation, or later from Precision, and that they were not aware of any other manufacturer of RSA branded servos." (ECF No. 60, p. 7).  Third party Jonathan Pava testified that "RSA" is not a brand it is a model and that the brand is the company name – Bendix brand, Precision brand and AVStar brand.  (AVCO/AVStar Ex. 14 (Pava Depo.) at 34:1-4, 35:4-25, 36:1-2, 17-25).

It is undisputed that from the early 1960s until February 10, 2010, there was only one manufacturer at a time for the RSA-type injector systems – Bendix (1960-1988) and Precision WA (1988-2010).

46.   **DENIED.**   The third party Declarations cited by TNB/Precision NC, with the exception of two individuals (Pava and Jenkins) unsworn statements. Each of the cited Declarations contains the identical statement, "I have long associated RSA and the underlying RSA model designators with fuel injection servos originating from the OEM Precision Airmotive and/or its predecessor the Bendix Corporation…." (TNB Ex. K at ¶ 7; Ex. L at ¶ 8; Ex. M at ¶ 6; Ex. N at ¶ 6; Ex. O at ¶ 6; Ex. P at ¶ 6).  With the exception of third party Jenkins, these declarants state an undisputed fact that prior to AVStar, there was only one manufacturer at a time of the RSA-type injector systems.

As to Mr. Jenkins, based on his own sworn testimony, he admitted that he could not have "long associated RSA and the underlying model designators" with Precision or Bendix because, he testified, he had "no idea" as to what Precision Armotive did, had no familiarity with the RSA-type fuel injector system, did not know who invented the RSA-type fuel injector system and did not know anything about the RSA-type fuel injector system model designations. (AVCO/AVStar Ex. 30 (Jenkins Depo.) at 35:12-21, 37:15-22, 24-25, 38:6-10). Mr. Jenkins also did not know what RSA-type injector system models originated or were manufactured by either Bendix or Precision or the current manufacturers of the RSA-type fuel injector systems. (*Id.* at 42:1-24, 44:6-10).

47. **DENIED.** Witnesses Jonathan Pava, Roger Hall and James Jenkins all testified that the model number "RSA-5AD1" standing alone does not identify the manufacturer of the unit. (AVCO/AVStar Ex. 14 (Pava Depo.) at 42:6-10, 43:2-7; Ex. 3 (Hall Depo.) at 101:12-21; Ex. 30 (Jenkins Depo.) at 38:11-22).

48. **DENIED.** Precision WA's former marketing and sales employee and Precision NC's current marketing and sales employee, Alan Jesmer, testified that prior to 1996, Precision WA did no advertising, from 1996 to 2004, Precision WA would advertise in Trade-A-Plane magazine, and after 2004, Precision WA did no advertising. (AVCO/AVStar Ex. 20 (Jesmer Depo.) at 4:11-21, 13:17-21, 24:14-

19). Mr. Jesmer also testified that since July 2013 to present (date of deposition on Oct. 10, 2016), Precision NC does no advertising. (*Id.* at 23:25, 24:1-6).

49.    AVCO and AVStar cannot admit or deny this statement of fact on the ground that they lack sufficient information or knowledge as to the truth of the statement.

50.    **ADMITTED.** By way of further response, the trade journals cited by TNB/Precision NC, being in writing, speak for itself. It should be noted that with the exception of TNB Ex. F, sub-exhibit 16, all articles predate AVStar's entry into the RSA-type injector market in February 2010 (sub-exhibits 17 (1997); 21 (2007); 28 (1998) and 36 (1990)). Also of note is that one of the articles (sub-exhibit 21) refers to the RSA as "Lycoming fuel injector," and two of the articles (sub-exhibits 17 and 28) make no reference to "Precision." Only one article (sub-exhibit 36) refers to "Precision," written by Rudy Swider of Bendix's technical support, shortly after Bendix's sale of the RS/RSA product line to Precision WA in 1988.

51.    **DENIED AS STATED.** It is undisputed that "RS" has never been registered as a trademark. Yet, as evidenced by the example identified by TNB/Precision NC, the ™ is used for the "RS and RSA Fuel Injection" with the ™ located after the word "Injection." (TNB Ex. F at sub-exhibit 24). As to TNB/Precision NC's second example, the ® is located next to "RSA" only. (*Id.* at sub-exhibit 25). TNB/Precision NC has provided no "examples" or evidence of

the symbol ™ or the symbol ® in relation to any of the RSA model designations at issue and no evidence of the consistent use of the the symbol ™ or the symbol ® in relation to the RSA-type fuel injectors or model designators.

52.   **DENIED.** Lycoming's Vice President and General Manager, Michael Kraft testified that Lycoming's model designators IO-360 and AEIO-360 do not serve as trademarks. (AVCO/AVStar Ex. 31 (Kraft Depo.) at 91:21-25; 92:1-3). Mr. Kraft also testified that it was his decision to abandon the trademarks because to his understanding "descriptive nomenclature…is not trademarkable…[and] [i]t would be not defensible." (*Id.* at 93:2-25; 94:1-25; 95:1-25; 97:6-16).

53.   **DENIED.** Prior to July 2013, there is no evidence of any customer raising any type of confusion between a new Precision WA servo and a new AVStar servo. (AVCO/AVStar Ex. 15 (Grafenauer Depo.) at 122:10-16). Mr. Hall, former employee of Precision WA and Precision NC, testified that just looking at a servo, one can distinguish if the servo was manufactured by AVStar. (AVCO/AVStar Ex. 3 (Hall Depo.) at 109:10-17). Mr. Kelly, a third party witness, testified that the AVStar servo is easily identifiable through the use of a logo, an imprint on the housing and AVStar's method of construction. (AVCO/AVStar Ex. 32 (Kelly Depo.) at 35:14-25, 36:1-25, 51:22-25, 52:4-7; Ex. 14 (Pava Depo.) at 42:16-25, 43:1; Ex. 3 (Hall Depo.) at 61:14-20; Ex. 5 (Rose Depo.) at 148:7-8, 12-14, 149:2-16).

There is no evidence of confusion on the part of any airframe manufacture or the ultimate consumer[4] as between an AVStar servo and a Precision NC servo. (AVCO/AVStar Ex. 33 (Cissel Depo.) at 115:13-25, 116:1-4, 171:18-25, 172:1). As the data tag is the source of information and identifies the servo manufacturer, there is no evidence of confusion by FAA certified A&P mechanics, which rely on the data tag on the servo, to identify the manufacturer of the servo. (AVCO/AVStar Ex. 32 (Kelly Depo.) at 51:10-12; Ex. 8 (1/12/15 Hearing Trans.) at 164:17-19; Ex. 14 (Pava Depo.) at 38:7-13).

There is no confusion by distributors of general aviation products as there are distributors that provide AVStar as an alternate product to customers with AVStar and Precision NC's largest distributor being Aviall which offers for sale both AVStar and Precision NC servos.  (AVCO/AVStar Ex. 3 (Hall Depo.) at 81:14-19; Ex. 1 (Oct. 2016 Allen Depo.) at 122:19-23, 123:7-16).

There is no evidence of confusion on the part of an aircraft engine manufacturer as between an AVStar servo and a Precision NC servo. To the contrary, the evidence shows that Continental Motors, Inc. purchases servos from both AVStar and Precision NC. (AVCO/AVStar Ex. 37 (Ward Depo.) at 16:1-3, 45:17-25, 46:1-7, 47:19-25).

---

[4]The ultimate consumer is the owner of the aircraft.  (AVCO/AVStar Ex. 33 (Cissel Depo.) at 115:11-12).

54-56. **DENIED.** Lycoming's part number (e.g. LW-16954) is unique to Lycoming and is not a Precision part number. As testified by Lycoming's FAA DER Marian Folk, the servo will be labeled with the model designation (e.g. RSA-5AD1) but it will also have a part number on it that is the Lycoming part number that represents the unit flows to Lycoming's fuel flow curve. (AVCO/AVStar Ex. 6 (Folk Depo.) at 11:24-25, 12:1-3; Ex. 4 (Folk 11/14/12 Hearing Trans.) at 67:5-13, 19-25, 68:1-7). The Lycoming part number is the unique Lycoming identifier of the overall servo. The Lycoming part number (a/k/a setting number) is related to the performance of the engine, of the servo, based on the performance of the engine required. (AVCO/AVStar Ex. 6 (Folk Depo.) at 197:12-18). The setting numbers come from the supplier but are related to Lycoming's fuel curves. (*Id.* at 198:5-11).

Both Defendant TNB and AVStar manufacture approved replacements for the same Lycoming parts. For example, Lycoming part # 61J22088 is a fuel injection servo with the configuration RSA-5AD1. FAA-approved replacements for this Lycoming part are manufactured by both TNB (Precision part # 2576536) and AVStar (AVStar part # AV2576536-2). (ECF No. 138 at ¶ 26). Lycoming differentiates between an AVStar servo and a Precision NC servo by the part number as AVStar's part number would be different than a Precision NC part number. For example, AVStar uses an "A" and a "V" in front of the part number

or setting number[5] to indicate that their unit is designed to be equivalent to the Precision setting number.  (AVCO/AVStar Ex. 4 (Folk 11/14/12 Hearing Trans.) at 41:16-25, 42:1-11, 45:11-14).

The DMRs upon which TNB/Precision NC relies identifies Lycoming's unique part number (as identified in Lycoming's drawings) and identifies AVStar as the responsible party.  There is no evidence that any employee of Lycoming incorrectly identified AVStar as the responsible party and no evidence that Precision NC was the responsible party.

As to the DMR (identified as TNB-26), it contains unidentified handwriting and there is no testimony as to this particular DMR cited by TNB/Precision NC.  It is unknown if this DMR is a draft, or if it applies to a developmental model or a model for installation on a certificated aircraft, but what is known is that it identifies AVStar.  Also missing from these DMRs is the supplier's part number (a/k/a setting number).

57.   **DENIED.**  Ms. Holt did not concede that AVCO personnel must have made a mistake.  In fact, TNB/Precision NC's citation to the record as to Ms. Holt's testimony applies to only one DMR (TNB sub-exhibit 24) which has been addressed in paragraphs 54-57 above.  (TNB Ex. S at 390-391:14).

---

[5] The setting numbers come from the supplier but are related to Lycoming's fuel curves.  (AVCO/AVStar Ex. 6 (Folk Depo.) at 198:5-11).

58.   **DENIED.**  There is no sworn testimony of any representative of MidAmerican Jet, no sworn testimony of any representative of AVCO, no sworn testimony of any representative of AVStar and no sworn testimony of any representative of B&S Aircraft.  The B&S Aircraft invoice, minus the handwriting, indicates on its face no error or confusion.  (TNB Ex. Q, sub-exhibit TNB-011).  As to the handwriting on the B&S Aircraft invoice, TNB/Precision NC's employee Mr. Jesmer admitted that the handwriting was his and he wrote what he was told.  (AVCO/AVStar 20 (Jesmer Depo.) Ex. at 61:12-22).  Mr. Jesmer further testified that he did not know what the handwritten statement "Lycoming told customer to send to AVStar.  AVStar sent to B&S" was all about and that he was "not going to speculate, so no I don't know."  (*Id.* at 61:15-25, 62:1-5).  The B&S Aircraft invoice (TNB Ex. Q, sub-exhibit TNB-012) states that the unit was forwarded to Precision "per MidAmerican Jet" with absolutely no reference to AVCO.

59.   **DENIED.**  There is no evidence that AVCO "incorrectly instructed Enstrom to ship the Precision servo to AVStar for warranty repair."  Moreover, TNB Ex. Q, sub-exhibit TNB-036 is incomplete.  There is also no sworn testimony from representatives of AVCO or AVStar and there is no sworn testimony from a representative of Enstrom Helicopter.  TNB/Precision NC offers nothing more than self-serving hearsay in support of their statements.

33

60.    **DENIED.** TNB/Precision NC fails to cite to the record in support of the statements in paragraph 60.  Further, the testimony upon which TNB/Precision NC relies is misstated.

TNB's President Michael Allen and the majority owner of Precision NC, explained Precision NC's core (used servos) policy is like a unit exchange. (AVCO/AVStar Ex. 1A (June 2016 Allen Depo.) at 5:17-24; 6:2-18; 8:10-19).  Mr. Allen admitted that the AVStar core units have no value to Precision NC.  (*Id.* at 8:20-25; 9:1-2).  Mr. Allen testified that Precision NC has advised "many customers" that it does not work on AVStar units.  (*Id.* at 13:12-13).  Mr. Allen also testified that customers returning cores (used servos) have already purchased a new Precision servo that has been installed on an aircraft.  (*Id.* at 16:1-3; 22:6-25; 23:1-17).

Thereafter, according to Mr. Allen, anywhere from 2 to 10 months, the customer sends the core (used servo) back for credit at which time Precision NC determines if it is an AVStar unit unusable as a hundred percent refundable core. (*Id.* at 16:3-8).  Mr. Allen testified that that the cores are coming through the distributor network (which Precision NC primarily deals) where the end user would have bought the Precision NC servo.  (*Id.* at 17:5-20).  Mr. Allen admitted that it is not only AVStar units that may not be accepted but that Precision NC will not take an RSA 10 for and RSA 5 without some specific negotiation because

Precision NC sends out "a like unit and we expect a like unit in return." (*Id.* at 17:15-20).  Mr. Allen admitted that Precision NC's position on AVStar cores is in its statement:  "This is an AVStar core and is not acceptable at 100% of the core value.  We will accept it at 50%....Please let me know if you want to process this credit for $500.  Or if you would like us to return the core to you (at your expense) with no credit issued...." (*Id.* at 18:18-25;19:1-24).  Mr. Allen admitted that this was a "mitigative measure" to ease the frustration, no confusion, in the marketplace as to AVStar core returns.  (*Id.* at 15:21-25; 19:19-24).  Mr. Allen also admitted that Precision NC has "on numerous occasions educated people as to why it's not a usable core, because it's not manufactured by Precision Airmotive. (*Id.* at 20:23-25; 21:1-2).

As it relates to Mr. Weaver's testimony, Mr. Weaver did not testify to a "likely date for overhauls to begin" but rather testified that servos have a long life cycle "depending on the mission of the aircraft and flight school." (TNB Ex. B at 166: 16-25; 167:1-25; 168:1-25; 169:1-25, 170:1).

TNB/Precision NC's citation to Mr. Everhart's testimony does not support the statements asserted in paragraph 60.

61.   **DENIED.** The Federal Aviation Regulations ("FARs") require Production Certificate holders like Lycoming to establish a quality system that ensures materials and products procured from suppliers are conforming.  For the

purpose of conformance, a supplier's materials and parts must meet both the approved type design requirements and the quality system requirements of the Production Certificate. FAR § 21.137. Further, Lycoming's certification plan to use AVStar's servos was approved by the FAA on May 19, 2010. (AVCO/AVStar Ex. 6 (Folk Depo.) at 262:22-25, 263:1-5). Thus, there is no evidence that AVStar manufactured servos that are "inferior" or non-conforming.

In support of their statements in paragraph 61, TNB/Precision NC relies not on the sworn testimony of Mr. Jenkins but on his Declaration. Contrary to his unsworn Declaration, Mr. Jenkins testified, under oath, that he does not even know if AVStar manufactures servos and any issues with servos is based on what he is told. (AVCO/AVStar Ex. 30 (Jenkins Depo.) at 64:6-25, 65:1-23, 76:19-24, 81:7-11).

As to the Declaration of Dominique Youakim, whatever "issues" Mr. Youakim claims he encountered were unidentified with the "only difference that we have been able to identify from the helicopter delivered before 2011 and now is the AVStar products." (TNB Ex. O at ¶ 7). The problem with Mr. Youakim's "identify" is that it is undisputed that the first AVStar servo sold to Lycoming for application on a Type Certificated engine did not occur until August of 2012. (AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 158:17-20). Moreover, TNB/Precision NC has produced no evidence or testimony from any airframe

manufacturer, including Robinson Helicopter Company, Inc., who has purchased Lycoming engines for incorporation in aircraft that the AVStar servo is "inferior."

As to the AVStar "diaphragm issue," AVStar issued a Mandatory Service Bulletin on April 6, 2011, more than a year before the first AVStar complete servo unit was sold to Lycoming for application on a Type Certificated engine did not occur until August of 2012. (TNB Ex. D, sub-exhibit 13; AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 158:17-20). Prior to August 2012, AVStar was in the business of overhauling Bendix and Precision WAs servos. (AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 38:1-22, 64:20-25, 105:16-25; Ex. 5 (Rose Depo.) at 17:12-18, 23-24). The diaphragm was a piece part installed in overhauled units between May 21, 2010 and October 19, 2010. (TNB Ex. D, sub-exhibit 13, p. 1). This issue occurred for a limited period of time and did not involve newly manufactured AVStar servos.

There is also no citation to the record, including Mr. Allen's unsworn Declaration, that the "inferior quality has resulted in more exposure to AVStar's servos among consumers in the field…." TNB/Precision NC Stmt. Facts, p. 25, ¶ 61.

62. **DENIED.** TNB/Precision NC statements are based on inadmissible hearsay. By way of further response, up until December 2012, Precision WA's President testified that he had no knowledge of any customer asking him as to the

relationship between AVStar and Precision.  (AVCO/AVStar Ex. 15 (Grafenauer Depo.) at 122:1-9).  Moreover, it is undisputed that AVStar has been overhauling/repairing servos since the early 2000.  (AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 38:1-22, 64:20-25, 105:16-25; Ex. 5 (Rose Depo.) at 17:13-18, 23-24).

63.    **DENIED.**  TNB/Precision NC fails to cite to the record in support of the statements in paragraph 63 and relies on inadmissible hearsay.

As to the referenced customer email, the email being in writing speaks for itself.  As evidenced by the email, this customer works "at the airworthiness department at Faasa Aviation."  (TNB Ex. R, sub-exhibit TNB-002).  There is no evidence of confusion as the customer was well aware that the Lycoming engines had "Precision Air Motive PAM…injectors installed" and was well aware of AVStar.  (*Id.*).

64.    **DENIED.**  TNB/Precision NC fails to cite to the record in support of the statements in paragraph 64 and relies on inadmissible hearsay.  Importantly, this customer email identified by TNB/Precision NC as Ex. Q, sub-exhibit TNB-006 is incomplete as it fails to include the customer's inquiry and only Precision NC's response.

65.    **DENIED.**  TNB/Precision NC fails to cite to the record in support of the statements in paragraph 65 and relies on inadmissible hearsay.  Moreover, the

customer email relates to a Precision servo unit overhauled by AVStar and not a

newly manufactured AVStar servo.  (TNB Ex. Q, sub-exhibit TNB-009).

66.   **DENIED.** TNB/Precision NC fails to cite to the record in support of

the statements in paragraph 66 and relies on inadmissible hearsay.  What is

important is that in response to this customer email, Precision NC itself admitted

that the model designator "RSA-5AD1," is just a model (e.g. "I need the part

number.  This is just the model"). (AVCO/AVStar Ex. 34 (Precision NC Customer

Email); TNB Ex. Q, sub-exhibit TNB-004).

67-68.  **DENIED.**  TNB/Precision NC fails to cite to the record in support of

the statements in paragraph 67 and relies on inadmissible hearsay.  Moreover, the

customer email upon which TNB/Precision NC relies deals with a core (used servo

unit) exchange.  Based on the email, the customer is no confused but frustrated

because Precision NC, as it admits, needs "to receive units that [Precision NC] can

overhaul in order to provide Precision Products…."  (TNB Ex. Q, sub-exhibit

TNB-010).

69.   **DENIED.**  TNB/Precision NC fails to cite to the record with

specificity in support of the statements in paragraph 69, thus rendering AVCO and

AVStar's ability to fully respond.  However, TNB/Precision NC's statements in

paragraph 69 make clear that there is no confusion but rather frustration on the part

of Precision NC's customers who have not been advised that Precision NC cannot

work on AVStar's units because it has not obtained FAA-PMA approval, which TNB/Precison NC admits was a business decision.  (AVCO/AVStar Ex. 1 (Oct. 2016 Allen Depo.) at 118:24-25, 119:1-1-9; Ex. 8 (1/12/15 Hearing Trans.) at 66:17-25).

70.    **DENIED.**  There is no evidence of any likelihood of confusion in light of the new policy instituted by Precision NC in 2016 wherein Precision NC is now accepting AVStar cores and offering a 50% credit ($500.00) to customers. (AVCO/AVStar Ex. 1A June 2016 Allen Depo.) at 18:22-25; 19:1-7; Ex. 38 Precison NC emails)).

TNB's President Michael Allen and the majority owner of Precision NC, explained Precision NC's core (used servos) policy is like a unit exchange. (AVCO/AVStar Ex. 1A (June 2016 Allen Depo.) at 5:17-24; 6:2-18; 8:10-19).  Mr. Allen admitted that the AVStar core units have no value to Precision NC.  (*Id.* at 8:20-25; 9:1-2).  Mr. Allen testified that Precision NC has advised "many customers" that it does not work on AVStar units.  (*Id.* at 13:12-13).  Mr. Allen also testified that customers returning cores (used servos) have already purchased a new Precision servo that has been installed on an aircraft.  (*Id.* at 16:1-3; 22:6-25; 23:1-17).

Thereafter, according to Mr. Allen, anywhere from 2 to 10 months, the customer sends the core (used servo) back for credit at which time Precision NC

determines if it is an AVStar unit unusable as a hundred percent refundable core. (*Id.* at 16:3-8). Mr. Allen testified that that the cores are coming through the distributor network (which Precision NC primarily deals) where the end user would have bought the Precision NC servo. (*Id.* at 17:5-20). Mr. Allen admitted that it is not only AVStar units that may not be accepted but that Precision NC will not take an RSA 10 for and RSA 5 without some specific negotiation because Precision NC sends out "a like unit and we expect a like unit in return." (*Id.* at 17:15-20). Mr. Allen admitted that Precision NC's position on AVStar cores is in its statement: "This is an AVStar core and is not acceptable at 100% of the core value. We will accept it at 50%....Please let me know if you want to process this credit for $500. Or if you would like us to return the core to you (at your expense) with no credit issued...." (*Id.* at 18:18-25;19:1-24). Mr. Allen admitted that this was a "mitigative measure" to ease the frustration, no confusion, in the marketplace as to AVStar core returns. (*Id.* at 15:21-25; 19:19-24). Mr. Allen also admitted that Precision NC has "on numerous occasions educated people as to why it's not a usable core, because it's not manufactured by Precision Airmotive. (*Id.* at 20:23-25; 21:1-2).

71-72. **DENIED.** TNB/Precision NC has not provided the identity or an affidavit from the alleged owner of the helicopters, has not produced an affidavit from the alleged NTSB investigator identified only as "Brice," and has not

produced any NTSB Accident Reports.  Moreover, Mr. Nielson testified that he

could not recall the dates of the alleged accidents.  (AVCO/AVStar Ex. 42

(Nielson Depo.) at 67:9-14).  Mr. Nielson also testified that he made notes about

the accidents.  (*Id.* 69:19-25, 70:1, 5-9).  TNB/Precision NC have produced no

such "notes."  Mr. Nielson testified that he prepared a "teardown report" which

according to him "is a standard procedure…when I investigate an incident with the

NTSB or FAA."  (*Id.* at 70:5-9).  Mr. Nielson could not recall the exact date when

this alleged report was prepared.  (*Id.* at 70:10-15).  TNB/Precision NC have

produced no accident report prepared by Mr. Nielson.

     Moreover, it is suspect that the NTSB investigator, only identified as "Brice"

would have been confused since the NTSB is regularly at AVStar's facility, "more

than six times a year," and uses AVStar's unique diagnostic equipment.

(AVCO/AVStar Ex. 22 (Sept. 2016 Weaver Depo.) at 143:16-23).

    73.  **DENIED.**

    74.  **DENIED.**  Mr. Pava testified, under oath, that RSA nomenclature is a

common mechanism utilized throughout the industry for identifying products.

(AVCO/AVStar Ex. 14 (Pava Depo.) 57:20-25, 58:1).  He also testified that

the model number "RSA-5AD1" standing alone does not identify the manufacturer

of the unit.  (*Id.* at 42:6-10, 43:2-7).  Mr. Pava also testified that the aviation

industry recognizes that servos have been manufactured by Bendix, Precision WA,

42

AVStar and now Precision NC.  (*Id.* at 41:21-25, 42:1-5).  And, testified that

"RSA" is not a brand it is a model.  (*Id.* at 34:1-4).  Mr. Pava also testified that the

servos have the manufacturer's name on the body itself and the data tag has a

model number, parts list number, basic number along with the manufacturer's

name and that the data tag is the source of information and identifies the servo

manufacturer.  (*Id.* at 38:7-13, 42:16-25, 43:1).

In any event, Mr. Pava's unsworn form Declaration shows that there was

no confusion by customers as between an AVStar servo and a Precision NC servo

as the customers purchased a Precision RSA servo to replace the AVStar servo."

(TNB Ex. N at ¶ 7).  There is no foundation for Mr. Pava's statement that "I also

understand that some in the field thought AVStar purchased the RSA line."  (*Id.* at

¶ 8).  Precision WA's President Scott Grafenauer testified that he had no

knowledge of any customer asking him as to the relationship between AVStar and

Precision up to December 2012.  (AVCO/AVStar Ex. 15 (Grafenauer Depo.) at

122:1-9).

75.   **DENIED.**  Mr. Hicks unsworn form Declaration does not state that

"customers were confused by AVStar's unauthorized use of the RSA Marks."  Mr.

Hicks statements relate to AVStar cores being returned after customers purchased

Precision servos – again showing that customers were not confused as between and

AVStar servo and a Precision NC servo. (TNB Ex. K at ¶ 9).

76.   **DENIED.**   Mr. Allen's unsworn form Declaration also addresses core exchanges, showing that there was no confusion by customers who purchased a Precision unit and sought a core exchange credit in returning the used AVStar unit.  (TNB Ex. M at ¶ 7).  There is no foundation for Mr. Allen's statement "due to [customers] belief that the two [servos] were interchangeable RSA systems or because AVStar was thought to be the new source of RSA systems."  (*Id.*).

77.   **DENIED.**  In his unsworn Declaration, Mr. Schrader admits that he has become familiar with AVStar's products showing no confusion on his part as between an AVStar servo and a Precision NC servo. (TNB Ex. P at ¶ 7). Mr. Schrader's Declaration also shows that there was no confusion by customers who purchased a Precision unit and sought a core exchange credit in returning the used AVStar unit.  (TNB Ex. P at ¶ 9).

78-79.   **DENIED.**  Mr. Jenkins testified, under oath, that he had "no idea" as to what Precision Armotive did, had no familiarity with the RSA-type fuel injector system, did not know who invented the RSA-type fuel injector system and did not know anything about the RSA-type fuel injector system model designations.  (AVCO/AVStar Ex. 30 (Jenkins Depo.) at 35:12-21, 37:15-22, 24-25, 38:6-10).  Mr. Jenkins also did not know what RSA-type injector system models originated or were manufactured by either Bendix or Precision or the

current manufacturers of the RSA-type fuel injector systems.  (*Id.* at 42:1-24, 44:6-10).

80.   **DENIED.**  Mr. Kelly testified that no one had asked him whether AVStar was the new owner of the RSA line.  (TNB Ex. T at 54:24, 55:7).  Moreover, Mr. Kelly testified that a distributor would call and say "hey, I've got this core that says AVStar on the side of it" and Mr. Kelly would advise the customer that he did not have parts that are approved to overhaul AVStar servos.  (*Id.* at 52:17-25; 53:1-11).  Mr. Kelly also testified that he did not deal specifically with customers returning AVStar cores.  (AVCO/AVStar Ex. 32 (Kelly Depo.) at 46:18-24).

81.   **DENIED.**  The statements in paragraph 81 are inadmissible hearsay.  Moreover, TNB/Precision NC has mischaracterized the contents of the communication.  The date of the communication is "08-05-09," at least a year before AVStar began to develop the RSA-type injector servos.  (AVCO/AVStar Ex. 18 (AVStar Sales Analysis Report)).  Further, the servo was referred to "RSA" and it was a Bendix servo overhauled by AVStar.  (TNB Ex. D, sub-exhibit 16).

82.   **ADMITTED IN PART AND DENIED IN PART.**  It is admitted that AVStar manufactures experimental fuel injector systems that are not FAA approved for installation on Type Certificated aircraft engines.  As there is no citation to the record that AVStar's experimental fuel injector systems "are based

45

on the same operational principles as the certified servos," the statement is denied. As to statements relating to Precision NC's experimental servos, AVCO and AVStar cannot admit or deny such statements as they lack sufficient information and knowledge as to the truth of the statements.

83.    AVCO and AVStar cannot admit or deny the statements in paragraph 83 as they lack sufficient information and knowledge as to the truth of the statements.

84.    **DENIED.** TNB/Precision NC's statements in paragraph 84 are pure speculation as to AVStar's experimental fuel injector systems.  TNB/Precision NC has cited to no evidence in the record that TNB/Precision NC ever examined an AVStar experimental fuel injector, tore down an AVStar experimental fuel injector, reverse engineered an AVStar experimental fuel injector or examined AVStar's confidential and proprietary designs for its experimental fuel injectors.

85.    **ADMITTED IN PART AND DENIED IN PART.** It is admitted that AVStar designates its experimental fuel injectors with "AVX" followed by a series of numbers.  The remaining statements are denied as TNB/Precision NC cites to no evidence in the record that TNB/Precision NC ever examined an AVStar experimental fuel injector, tore down an AVStar experimental fuel injector, reverse engineered an AVStar experimental fuel injector or examined AVStar's confidential and proprietary designs for its experimental fuel injectors.

46

86.     **DENIED.** Mr. Rivera testified that "FM" stands for Fuel Metering. (AVCO/AVStar Ex. 35 (Rivera Depo.) at 65:11-12). Mr. Rivera also testified that the FM fuel injection systems are not "RSA" systems, "[t]hey're not copies of an RSA. The internal parts are different. The components are different. The venture is a different design. It's a different animal." (*Id.* at 68:18-25).

Respectfully submitted,

*/s/ Veronica Saltz Turner*
Veronica Saltz Turner, Esquire
Attorney ID No.:  52931
Chamberlain, Hrdlicka, White, Williams
Aughtry
300 Conshohocken State Road, Suite 570
West Conshohocken, PA  19428
(610) 772-2330

*/s/ Kent B. Goss*
Kent B. Goss, Esq. *Pro Hac Vice*
Attorney ID No.:  CA 131499
Crowell & Moring LLP
515 S. Flower Street, 40th Floor
Los Angeles, CA  90071
(213) 622-4750

Attorneys for Plaintiff and Counterclaim
Defendant AVCO Corporation and
Counterclaim Defendant AVStar Fuel
Systems, Inc.

Dated:  September 15, 2017