# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVCO CORPORATION, | No. 4:12-CV-01313 |
| Plaintiff-Counterclaim Defendant, | (Chief Judge Brann) |
| v. | |
| TURN AND BANK HOLDINGS, LLC, AND PRECISION AIRMOTIVE, LLC, | |
| Defendants-Counterclaim Plaintiffs, | |
| v. | |
| AVSTAR FUEL SYSTEMS, INC. | |
| Counterclaim Defendant. | |

## MEMORANDUM OPINION

### AUGUST 31, 2022

## I.      BACKGROUND

In 2015, Avco Corp. ("Avco") filed a second amended complaint in which it sought declaratory judgment holding that AVStar Fuel Systems, Inc. ("AVStar") and Avco had not infringed on Turn and Bank Holdings, Inc.'s ("TNB") trademarks, and seeking cancellation of several of TNB's trademarks related to airplane engine fuel injection systems known as "servos."[1] TNB in turn filed a counterclaim asserting

---

[1]    Doc. 138.

that AVStar and Avco were liable for trademark infringement and unfair competition under the Lanham Act and Pennsylvania common law related to AVStar's use of TNB's "RSA" Marks, which are used on servos produced by Precision Airmotive Corporation ("Precision").[2]

Much of the relevant history and facts related to the underlying dispute—such as the history of the companies and details regarding aircraft engines, servos, and naming conventions—was outlined in some detail in this Court's prior summary judgment Memorandum and, because it is not directly relevant to the pending motions *in limine*, will not be repeated here.[3] As relevant here, Precision has long produced servos bearing RSA Marks and, when AVStar and Avco reached an agreement on the purchase of AVStar servos, Avco required that AVStar use the same RSA Marks as are used by Precision.[4]

Based on the facts underlying this matter, in April 2018, this Court granted TNB's motion for summary judgment and denied Avco's[5] motion for summary judgment.[6] The Court concluded that TNB had established as a matter of law that

---

[2] Doc. 144. Although there are several iterations of Precision, for the sake of simplicity, unless legally or factually significant, the Court refers them as a single entity in this Memorandum.

[3] *See* Doc. 356 at 2-10.

[4] *Id.* at 3, 5.

[5] Unless legally or factually significant, AVStar and Avco will be referred to in this Memorandum collectively as Avco, while TNB and Precision will be referred to collectively as TNB.

[6] Docs. 356, 357.

the RSA Marks are valid and legally protectable, and that AVStar's use of the marks was likely to cause consumer confusion.[7]

Specifically, the Court determined that the primary significance of the RSA Marks is to refer to TNB servos and was not simply a generic descriptor, and the descriptive marks had acquired a secondary meaning associated with TNB's servos.[8] As part of that determination, this Court found that Avco's use of the RSA Marks was intentional and had "resulted in several instances of actual confusion."[9] The Court further concluded that Avco's use of the RSA Marks produced a likelihood of confusion, as Avco and TNB directly competed in the servo market for the same customers, Avco deliberately used identical model numbers, and there was evidence of actual confusion.[10] Finally, the Court determined that Avco could not establish fair use.[11] To that end, Avco's use of the RSA Marks was not descriptive of its own products rather than TNB's, and was not used in a descriptive sense or in good faith.[12]

The Court therefore entered judgment on the issue of liability as to all counterclaims.[13] In December 2019, the parties filed dueling motions to exclude expert testimony: TNB sought to exclude the testimony of Avco's expert, Krista

---

[7]   Doc. 356.
[8]   *Id.* at 16-22.
[9]   *Id.* at 21.
[10]  *Id.* at 23-24.
[11]  *Id.* at 25-26.
[12]  *Id.*
[13]  *Id.*

Holt, while Avco sought to exclude the testimony of TNB's expert, Dana Trexler.[14]

The Court mostly denied those motions,[15] leaving only a jury trial on the question of

whether Avco's infringement was willful, and a bench trial on the issue of damages.

This matter is set for trial in October 2022 and, in accordance with this Court's

Scheduling Order, the parties have filed their motions *in limine*.[16] In its motions *in*

*limine*, TNB first argues that Avco should be precluded from challenging the validity

of the RSA Marks or arguing that Avco was required or permitted to use the RSA

Marks, as this Court already rejected those contentions in granting summary

judgment in TNB's favor.[17] Second, TNB argues that Avco should be precluded

from introducing evidence to refute actual confusion, since this Court already found

a likelihood of confusion and instances of actual confusion, and actual confusion is

not relevant to the question of whether Avco willfully infringed on TNB's

trademark.[18] Finally, TNB contends that evidence of confusion should be limited to

---

[14]   Docs. 430, 432.

[15]   Docs. 461, 462. The Court also granted in part and denied in part TNB's motion to exclude evidence related to whether (1) the RSA Marks are valid, (2) the infringement caused confusion, and (3) any infringement was intentional and deliberate. Doc. 461 at 39-43. Because Avco agreed that it would not challenge the validity of the RSA Marks, the Court granted the motion to the extent it requested that Avco be prohibited from contesting the validity of the RSA Marks. *Id.* at 40. However, the Court denied the remainder of the motion after concluding that Avco was entitled to present evidence that it did not willfully infringe upon TNB's trademark, as evidence of willfulness is important in determining damages, and that Avco was entitled to present evidence related to actual confusion because evidence of confusion, or lack thereof, for purchasers of AVStar servos is relevant to a determination of damages. *Id.* at 40-43.

[16]   Docs. 491, 493.

[17]   Doc. 492 at 6-10.

[18]   *Id.* at 10-11.

the bench trial on damages, and should not be permitted to exceed the scope of Ms. Holt's expert opinion as it relates to confusion on the part of Avco.[19]

Avco responds that, broadly speaking, many of the issues raised in TNB's motion *in limine* were already decided by this Court in a prior motion and should therefore be denied here.[20] Avco further argues that it should be permitted to introduce evidence of its state of mind and good faith in adopting the RSA Marks—including evidence of historic use of those numbers by Avco and whether Avco believed the model numbers were trademarked when it adopted them—because such a state of mind is critical to determining willfulness.[21] Second, while Avco concedes that actual confusion is not relevant to a willfulness determination, it asserts that it must be permitted to introduce evidence of its state of mind, including its "lack of intent to confuse."[22] Finally, Avco contends that evidence of actual confusion—or a lack thereof—is relevant to any analysis of damages, and should therefore be permitted at trial or, at a minimum, any decision regarding the admissibility of that evidence should wait until trial.[23]

Avco in its motions *in limine* first argues that any evidence related to safety issues or lawsuits associated with AVStar servos should be excluded, as such

---

[19]   *Id.* at 12-13.
[20]   Doc. 500 at 7-9, 18.
[21]   *Id.* at 9-15.
[22]   *Id.* at 16; *see id.* at 15-16.
[23]   *Id.* at 17-22.

evidence is irrelevant to the issue of willfulness and is unduly prejudicial.[24] Second, Avco contends that evidence of other trademark lawsuits or bankruptcy proceedings involving Avco or AVStar should likewise be precluded as irrelevant and unduly prejudicial and, third, that the Court should preclude any evidence related to product liability lawsuits for the same reasons.[25] Fourth, Avco asserts that evidence related to actual confusion should be excluded from trial, as such evidence has no connection to the question of whether Avco's conduct was willful, the declarations submitted by TNB do not demonstrate actual confusion, and such declarations constitute hearsay.[26]

Fifth, Avco contends that any pleadings, orders, and the settlement agreement in the North Carolina case between these parties should be excluded as that matter involved different trademarks and no final determination was reached on the merits.[27] Sixth, evidence related to trademark applications or registrations from Avco, AVStar, or third parties should be precluded, Avco argues, because such evidence is irrelevant and would only confuse the jury.[28] Finally, Avco asserts that the Court should exclude evidence of Avco's continued use of the RSA Marks

---

[24] Doc. 494 at 10-13.
[25] *Id.* at 13-17.
[26] *Id.* at 17-21.
[27] *Id.* at 22-25.
[28] *Id.* at 25-28.

during this lawsuit because that evidence is not relevant to the question of willfulness, since Avco had a good faith belief that it could use the RSA Marks.[29]

TNB responds that Avco's first and third motions should be rejected because safety issues and product liability cases arose as a natural consequence of the confusion between AVStar and Precision's servos that resulted from the trademark infringement.[30] TNB further argues that Avco's motion to exclude evidence related to prior lawsuits should be denied because such evidence establishes that Avco knew that the RSA Marks were protected and nevertheless continued to use those marks.[31] TNB concedes that evidence of actual confusion is not relevant to the issue of willfulness, but argues that it is relevant to damages and was already found as a matter of law at summary judgment; TNB further contends that, contrary to Avco's argument, the challenged evidence does show actual confusion and does not constitute hearsay.[32]

As to Avco's motion to exclude evidence related to the North Carolina lawsuit, TNB asserts that evidence of that lawsuit demonstrates that Avco continued to use the numbers contained in the RSA Marks even after this Court ruled that Avco's use of the RSA Marks was improper, which emphasizes that Avco's infringement was willful.[33] TNB further argues that Avco's 2006 trademark

---

[29] *Id.* at 28-30.
[30] Doc. 501 at 27-28.
[31] *Id.* at 14-19.
[32] *Id.* at 22-26.
[33] *Id.* at 19-21.

application for its engine model numbers—along with famous trademark applications from other companies—is relevant, as it demonstrates that Avco understood that model designators are protectable as trademarks.[34] Finally, TNB contends that Avco's continued use of the RSA Marks throughout this litigation up to the time when summary judgment was entered against it evidences bad faith.[35]

As explained in more detail below, TNB's motions *in limine* will be granted in part and denied in part, while Avco's motions *in limine* will likewise be granted in part and denied in part.

## II.   DISCUSSION

Courts exercise discretion to rule *in limine* on evidentiary issues "in appropriate cases."[36] While motions *in limine* may serve as a useful pretrial tool that enable more in-depth briefing than would be available at trial, a court may defer ruling on such motions "if the context of trial would provide clarity."[37] "[M]otions *in limine* often present issues for which final decision is best reserved for a specific trial situation."[38] Thus, certain motions, "especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context."[39]

---

[34] *Id.* at 29-31.

[35] *Id.* at 31-33.

[36] *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

[37] *Frintner v. TruePosition*, 892 F.Supp.2d 699, 707 (E.D. Pa. 2012).

[38] *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997).

[39] *Leonard v. Stemetech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013).

Specifically, "*pretrial* Rule 403 exclusions should rarely be granted . . . a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence."[40] Regardless, "*in limine* rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."[41]

### A.    TNB's Motions *in Limine*

#### 1.    Evidence Related to Validity of RSA Marks and Whether Avco was Required or Permitted to Use RSA Marks

TNB first argues that Avco should be precluded from challenging the validity of the RSA Marks or arguing that Avco was required or permitted to use the RSA Marks, as this Court already rejected those contentions in granting summary judgment in TNB's favor.[42] Avco responds that it should be permitted to introduce evidence of its state of mind and good faith in adopting the RSA Marks because such a state of mind is critical to determining willfulness.[43]

As an initial matter, Avco previously conceded that the RSA Marks have been found to be valid, and agreed that it would not "challenge that finding in the damages trial proceeding."[44] In responding to TNB's current motion *in limine*, Avco asserts that it will not offer evidence to challenge the validity of the RSA Marks.[45] Based

---

[40] *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).
[41] *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).
[42] Doc. 492 at 6-10.
[43] Doc. 500 at 9-15.
[44] Doc. 437 at 2.
[45] Doc. 500 at 9.

on these concessions, the Court will exclude any evidence or argument that attempts to challenge the validity of the RSA Marks.

Turning then to the question of whether Avco/AVStar may present evidence related to "why they adopted the RSA model designations in the 2009-2011 time frame, the historic use of the model numbers by Avco and others, whether Avco/AVStar thought the designations were trademarks when adopted, the meaning of the model designations and similar information,"[46] the Court concludes that they may not. Such evidence is contrary to this Court's prior ruling.

In granting summary judgment in favor of TNB, this Court assessed Avco's arguments that "RSA" stood for "regulated servo actuation" or "regulated servo actuated" and determined that "no jury could conclude that either of those phrases are a 'common' or 'descriptive' term for the characteristics that distinguish [Precision's] fuel injection system" from any other servo.[47] The Court further determined that there was no fair use, as Avco did not use the RSA Marks in good faith in a merely descriptive sense.[48]

Having concluded that no jury could find that the RSA Marks were merely descriptive and/or not protected, it would be entirely unreasonable for Avco or AVStar to have believed that it was entitled to use the RSA Marks for its servos. Not only would evidence related to Avco's belief that it could use the RSA Marks—or

---

[46] Doc. 500 at 10.
[47] Doc. 356 at 19.
[48] *Id.* at 25-26.

that they were descriptive—undermine the Court's prior ruling, but it would establish, at most, that Avco buried its head in the sand when presented with evidence that it could not use the RSA Marks. As the United States Court of Appeals for the Third Circuit has noted, "willful ignorance [is] akin to willful infringement."[49] This evidence is therefore properly excludable.

Although Avco asserts that, should this evidence be precluded, it "would be barred from presenting a defense to the willfulness charge,"[50] this is an over exaggeration, as Avco may still mount a defense to any allegations of willfulness. The Third Circuit has explained that "[k]nowing or willful infringement consists of more than the accidental encroachment of another's rights. It involves an intent to infringe or a deliberate disregard of a mark holder's rights."[51] Willful infringement has been described "as involving an aura of indifference to plaintiff's rights or a deliberate and unnecessary duplicating of a plaintiff's mark in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had

---

[49]  *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 189 (3d Cir. 1999), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168 (3d Cir. 2005).
[50]  Doc. 500 at 10.
[51]  *SecuraComm*, 166 F.3d at 187.

nurtured."[52] The gravamen of any claim of willfulness is the "deliberate intent to deceive."[53]

Accordingly, Avco may still mount a viable defense to allegations that it willfully infringed upon TNB's trademarks by producing evidence that demonstrates one of several different things, such as a lack of intent to deceive consumers or that Avco did not copy the RSA Marks with the intent to benefit from the good will developed by Precision. In sum, because evidence related to Avco's alleged reasons for adopting the RSA Marks in its servos runs contrary to the Court's summary judgment decision, TNB's motion *in limine* will be granted, and Avco will be prohibited from introducing such evidence at trial.

### 2.    Evidence Related to Actual Confusion

TNB next argues that Avco should be precluded from introducing evidence to refute actual confusion, since this Court already found a likelihood of confusion and instances of actual confusion, and actual confusion is not relevant to the question of whether Avco willfully infringed on TNB's trademark.[54] Avco concedes that actual confusion is not relevant to a willfulness determination, but asserts that it must be

---

[52]   *Id.* (brackets, ellipsis, and internal quotation marks omitted). *See also PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) ("Conduct is willful if the infringer was knowingly and deliberately cashing in upon the good will of the infringed" (brackets and internal quotation marks omitted)).

[53]   *SecuraComm*, 166 F.3d at 187 (quoting *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 823 (5th Cir.1998)). *See also Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 514 (6th Cir. 2013) (holding that "the concern of trademark law is not about copying per se but about copying that engenders consumer confusion" and therefore "the appropriate 'intent' to focus on is not the intent to *copy* but rather the intent to *deceive* or *confuse*").

[54]   Doc. 492 at 10–11.

permitted to introduce evidence of its state of mind, including its "lack of intent to confuse."[55]

Based on Avco's concession that evidence of actual confusion is irrelevant to the question of willfulness,[56] the Court will grant TNB's motion *in limine* and preclude Avco from introducing evidence at the jury trial related to actual confusion. Similarly, given TNB's concession that "Avco/AVStar is entitled to present evidence that they 'had no intent to confuse or deceive' when they adopted the infringing RSA Marks,"[57] the preclusion of evidence will extend only to evidence of actual confusion, not to evidence related to Avco's underlying intent, or lack thereof, to deceive or confuse.

### 3.    Evidence of Confusion

Finally, TNB contends that evidence of confusion should be limited to the bench trial on damages, and should not be permitted to exceed the scope of Ms. Holt's expert opinion as it relates to confusion on the part of Avco.[58] Avco contends that evidence of actual confusion—or a lack thereof—is relevant to any analysis of damages, and should therefore be permitted at trial or, at a minimum, any decision regarding the admissibility of that evidence should wait until trial.[59]

---

[55]   Doc. 500 at 16; *see id.* at 15-16.
[56]   *See id.* at 16 ("it appears that the parties are in agreement that instances of actual confusion should not be part of the willfulness phase of the case").
[57]   Doc. 505 at 8.
[58]   Doc. 492 at 12-13.
[59]   Doc. 500 at 17-22.

The Court agrees with Avco that such evidence is admissible in the bench trial related to damages. First, as this Court has previously discussed, "evidence of confusion—and an intent to confuse—are relevant to whether damages should be awarded in the first instance," as the Court must consider "'whether sales have been diverted' due to the infringement."[60] Furthermore, an award of damages may be proper after a finding of a likelihood of confusion, but "damages in those cases [are] measured based on actual confusion" and "proof of lost sales."[61] Evidence of actual confusion among AVStar's purchasers—including Avco and any other purchaser— is therefore directly relevant to the issue of damages, as it tends "to make a fact more or less probable than it would be without the evidence" and would be of consequence in determining damages.[62]

Second, although this Court previously held that there was a likelihood of confusion, and at least some evidence of actual confusion,[63] that evidence did not conclusively establish the extent of any confusion and, in at least some cases, it is unknown whether that confusion resulted in lost sales for Precision. The extent of any actual confusion, and whether that confusion resulted in diverted sales, is relevant to any decision on damages, and such evidence does not necessarily

---

[60] Doc. 461 at 42 (quoting *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 175 (3d Cir. 2005)).
[61] *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 209 (3d Cir. 1999).
[62] Fed. R. Evid. 401.
[63] Doc. 356 at 21 n. 94.

contradict the Court's prior ruling. Avco may therefore present such evidence during the bench trial.

This is not to say, however, that Avco may introduce any evidence it wishes; rather, as this Court previously held, the introduction of "such evidence will be highly circumscribed at trial."[64] This Court has already found a likelihood of confusion, and already determined that TNB demonstrated instances of actual confusion. Avco cannot argue that there was no confusion. It may, however, present evidence regarding confusion within Avco,[65] and it may argue and present evidence in an attempt to demonstrate that the instances of actual confusion that this Court has already found established are isolated and sporadic. Consequently, TNB's third motion *in limine* will be denied, without prejudice to its ability to object to evidence at trial, should that evidence exceed the boundaries set by this Court.

### B.    Avco's Motions *in Limine*

#### 1.    Evidence of Safety Issues and Lawsuits Related to AVStar Servos

Avco in its first motion *in limine* argues that any evidence related to safety issues or lawsuits associated with AVStar servos should be excluded, as such evidence is irrelevant to the issue of willfulness and is unduly prejudicial.[66] TNB responds that Avco was aware of (1) safety issues that arose allegedly as a result of

---

[64]   Doc. 461 at 43.
[65]   TNB concedes as much. Doc. 492 at 13-14.
[66]   Doc. 494 at 10-13.

"trademark confusion," (2) instances where both Avco and TNB were named as defendants in an action, which allegedly put Avco on notice that actual confusion was occurring, and (3) confusion arising over the publication of Airworthiness Directives ("AD") and Service Bulletins ("SB").[67]

The Court agrees that these issues have no relevance to willfulness or damages, and that evidence will therefore be excluded from both the jury trial and the bench trial. First, any connection between lawsuits that name both Avco/AVStar and TNB/Precision as defendants and the question of whether Avco's infringement of the RSA Marks was willful is far too attenuated to support the admission of evidence related to those lawsuits. There is no indication of why both AVStar and Precision were named as defendants in those actions; it may simply be—as is often the case—that the attorneys in those matters named every possible defendant to preserve their clients' rights. Or it may be, as was alleged to be the case in at least one of those suits, that both Precision and AVStar provided parts of the servo that was used in the aircraft that ultimately crashed.[68]

Second, even if Avco/AVStar and TNB/Precision were improperly named as defendants in a lawsuit based on confusion, this would seem to demonstrate only confusion by the attorneys, not confusion among the purchasers of servos. There is

---

[67]   Doc. 501 at 27-29.
[68]   *See Dixon v. Americas Aircraft Engines, Inc.*, No. CJ-2021- 01542, First Amended Petition ¶¶ 82-91, 132-41 (Ok. D. Ct., Tulsa June 1, 2021).

simply no logical way to infer that the purchaser(s) of the servos were confused based upon the parties named in a lawsuit.

As to the publication of ADs and SBs, such evidence appears entirely unrelated to instances of actual confusion between the servos. TNB has not explained how these notices are in any way tied to confusion for purchasers of servos, or how the existence of AVStar ADs and SBs would confuse the purchaser of a servo. Similarly, TNB has presented no evidence connecting safety issues with trademark confusion, nor has it demonstrated how such confusion is relevant to willfulness or damages. Such evidence is therefore irrelevant to either the question of willfulness or damages, and Avco's motion *in limine* will be granted.

### 2. Evidence of Trademark Lawsuits, Bankruptcy Proceedings, and Products Liability Lawsuits

Avco next contends that evidence of other trademark lawsuits, bankruptcy proceedings involving Avco or AVStar, or product liability lawsuits should be precluded as irrelevant and unduly prejudicial.[69] TNB argues that such evidence is admissible as it demonstrates Avco's knowledge of Precision's assertion of ownership over the RSA Marks and shows Avco's pattern of disregard for that ownership.[70]

As to evidence of lawsuits filed by Marvel-Schebler—Precision WA's predecessor—the Court agrees that such evidence is irrelevant and inadmissible.

---

[69] Doc. 494 at 13-17.
[70] Doc. 501 at 14-19.

First, those lawsuit involve a different company and a different product—carburetors rather than servos. This may have put Avco/AVStar on notice that certain model numbers may be trademarkable—or at least that Marvel-Schebler believed them to be trademarkable—but it does not establish that Avco knew that the RSA Marks were protected. Importantly, any arguments as to trademark infringement for carburetor models does not necessarily spill over to different servo models. Avco's explanation for why it felt the RSA Marks were not protected is specific to the RSA Marks, and would not apply to different servo model numbers, let alone carburetor model numbers.[71] Second, any finding that a model number is protected rests on a finding that the number has acquired a secondary meaning, which is necessarily fact dependent for each model number. Consequently, even a finding in one action that a carburetor model number is protected would not necessarily put a company on notice that a different model number for a different product would likewise be trademark protected.

Moreover, even if those prior actions had some marginal relevance to the issues at trial, the relevance of that evidence would be substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue

---

[71] Specifically, Avco argued that RSA was an abbreviation of "regulated servo actuation" or "regulated servo actuated." Doc. 356 at 8-9, 18-19. Although the Court rejected this contention, it remains true that such a purported acronym would apply only to the RSA Marks. Even the rejection of Avco's arguments in a different case involving carburetors with a different model number would not have impacted Avco's argument in this matter.

delay, [or] wasting time."[72] Specifically, introducing evidence of those prior lawsuits would prejudice the jury, as it would have the effect of painting Avco/AVStar as serial trademark infringers—even if the prior lawsuits were not resolved on their merits or with any finding of liability. Moreover, the introduction of that evidence would needlessly waste time and potentially confuse the jury, as it would force the parties to present evidence regarding those lawsuits and, in effect, create a trial-within-a-trial regarding the relative merits of those cases. Accordingly, evidence of lawsuits filed by Marvel-Schebler will be excluded from trial.

The same is true of any evidence related to the AVStar bankruptcy proceedings. In those proceedings Marvel-Schebler filed a claim related to its asserted trademarks, but those trademarks again involved Marvel-Schebler's carburetor model numbers, not servo model numbers, and involved no final determination on the merits of Marvel-Schebler's asserted trademarks.[73] As with the prior lawsuits, this information is irrelevant and, in any event, excludable pursuant to Rule 403.

Finally, as to the case brought by Precision WA against AVStar, this evidence at first blush would appear to have some relevance to these proceedings, as it was brought against AVStar alleging that AVStar infringed upon the RSA Marks.[74]

---

[72] Fed. R. Evid. 403.
[73] *See* Doc. 495-4 at 10; Doc. 495-50 at 3; Doc. 501-2 at 3-4.
[74] *Precision Airmotive LLC v. Avstar Fuel Systems, Inc.*, No. 2:10-CV-01174, Doc. 1 ¶¶ 5-7, 11-21 (W.D. Wash. July 20, 2010).

However, the suit was voluntarily dismissed less than three months after it was filed and there was no adjudication on the merits in that matter.[75] Although that case could arguably be construed as having put AVStar on notice that Precision believed the RSA Marks were protected, the fact that Precision voluntarily dismissed the suit shortly after it was filed renders it equally likely that Avco may have viewed the withdrawal of that complaint as an admission that the RSA Marks were not protected. In the absence of additional evidence related to this claim, the Court simply cannot conclude that such evidence is relevant, and that evidence will be conditionally excluded[76] from trial.[77]

### 3.    Evidence of Actual Confusion

Next, Avco argues that evidence related to actual confusion should be excluded from trial, as such evidence has no connection to the question of whether Avco's conduct was willful, the declarations submitted by TNB do not demonstrate actual confusion, and such declarations constitute hearsay.[78] Again, the parties agree

---

[75]  *Id.* Doc. 7.

[76]  The Court may reconsider this ruling should TNB present further evidence demonstrating the relevance of the Precision WA case, for example, by presenting evidence that AVStar knew the case was voluntarily dismissed only because AVStar had filed for bankruptcy protection.

[77]  Avco further argues in its reply brief that TNB has now admitted that the earlier Marvel-Schebler actions are fundamentally related to this action, and that, therefore, the settlement agreement in that earlier action precludes this action. Doc. 512 at 10-13. The Court is skeptical of this argument. However, because it was raised for the first time in Avco's reply brief and TNB did not have the opportunity to respond to this argument, the Court declines to address it at this time. Avco may, if it wishes, raise this argument in a separate motion in which TNB has a full opportunity to respond to Avco's arguments.

[78]  Doc. 494 at 17-21.

that evidence of actual confusion is not relevant to the issue of willfulness, and such evidence will therefore be excluded from the jury trial.[79]

As to the damages trial, evidence of actual confusion is, as discussed previously, highly relevant to the question of damages and disgorgement of profits. While Avco argues that the declarations are inadmissible as hearsay, and do not prove confusion, TNB states that it will present at trial testimony from the declarants related to actual confusion. Such evidence is relevant and admissible *if* it demonstrates that sales were diverted from Precision due to actual confusion. Because the Court cannot discern at this time whether the actual testimony will make such a connection, Avco's motion will be denied, without prejudice to its right to object to the evidence at trial once a fuller picture of the testimony is available to the Court.[80]

Avco further asserts that evidence of an AVStar servo that erroneously bore a Precision data plate should be excluded.[81] The Court concludes that this evidence is irrelevant to the remaining issues and will therefore exclude said evidence. First, there is no evidence that the mis-tagged servo was purchased due to confusion; indeed, the servo could not have been purchased due to confusion, as the data plate

---

[79] *See* Doc. 501 at 22 ("Precision agrees that evidence of actual confusion is not germane to the jury trial *on willfulness*"); Doc. 512 at 15 ("The parties both agree that evidence of actual confusion should not be admitted during the willfulness phase of the case").

[80] Similarly, the Court declines at this time to exclude this evidence on the ground that it may constitute hearsay.

[81] Doc. 494 at 21.

was necessarily changed after the servo was initially purchased from AVStar. Such evidence is therefore not relevant to damages. Furthermore, that evidence is not relevant to an analysis of willfulness, as information regarding the mis-tagged servo was only provided to AVStar *after* it had ceased using RSA Marks, and therefore does not demonstrate that AVStar acted willfully in appropriating TNB's trademark.[82] This evidence will therefore be excluded from trial.[83]

### 4.    Documents from North Carolina Case

Avco next contends that pleadings, orders, and the settlement agreement in the North Carolina Case should be excluded, as that matter involved different trademarks and no final determination was reached on the merits.[84] TNB responds that, although that case involved different marks, Avco's failure to transition to sufficiently dissimilar model numbers is probative of willful infringement.[85]

At this point in time, the Court is unable to discern the probative value of evidence related to the North Carolina Case—a case in which TNB challenged Avco/AVStar's use of the LFC suffix in its servo model numbers, but maintained the same numbers as were used in the RSA Marks. It is possible that the Avco's use

---

[82]   Such evidence may have been relevant to an analysis of whether Avco infringed upon Precision's trademark in the first instance, but this Court has already ruled that such infringement occurred.

[83]   Given that this evidence will be excluded from trial, TNB's request to compel the disclosure of any evidence related to this mis-tagged servo, Doc. 477, will be denied, both as moot, and on substantive grounds.

[84]   Doc. 494 at 22-25.

[85]   Doc. 501 at 19-21.

of LFC model numbers constitutes infringement of TNB's trademarks—the district court in that case found a likelihood that it did in ruling on a motion for a preliminary injunction—but no evidence has been presented to this Court that would bear out such a conclusion. In the absence of any such evidence, the Court cannot conclude that evidence from the North Carolina Case is relevant to the question of willful infringement of the RSA Marks.

Assuming that such evidence is relevant to the question of whether Avco willfully infringed upon the RSA Marks, any apparent relevance would be substantially outweighed by the significant risk of confusing the issues, misleading the jury, and wasting time.[86] By introducing evidence related to the North Carolina Case, TNB would necessarily need to introduce evidence of new and distinct model numbers, bearing the mark "LFC" rather than "RSA," and would need to explain why it believes those model numbers likewise infringe upon its trademarks. Not only would this risk confusing the issues and the jury by introducing evidence related to distinct model numbers that are not at issue in this case, but it would likely create a trial-within-a-trial regarding the LFC model numbers and whether those model numbers may also infringe upon TNB's trademarks.

The only way a jury could analyze whether Avco/AVStar's switch to LFC model numbers is indicative of willful infringement of the RSA Marks would be to

---

[86]   Fed. R. Evid. 403.

examine those numbers, consider argument and evidence from the parties regarding those model numbers, and determine whether those numbers are indeed sufficiently similar to the RSA Marks to warrant a conclusion that use of the LFC model numbers warrants an inference of willfulness regarding Avco's use of the RSA Marks. The presentation of such evidence would greatly increase the duration of trial with minimal evidentiary benefit related to the question of willfulness. Consequently, Avco's motion *in limine* will be granted, and evidence related to the pleadings, orders, or settlement agreement in the North Carolina Case will be excluded from trial.

### 5.    Evidence of Other Trademark Applications or Registrations

Sixth, evidence related to trademark applications or registrations from Avco, AVStar, or third parties should be precluded, Avco argues, because such evidence is irrelevant and would only confuse the jury.[87] TNB in turn asserts that this motion should be denied because it anticipates that Avco will seek to argue that it did not believe that model numbers are trademarkable, and this evidence would undermine any such assertion.[88]

The Court concludes that evidence of other trademarks is facially irrelevant to the issue of willfulness. Simply because other model numbers have been trademarked—including by Avco itself—does not demonstrate that Avco/AVStar

---

[87]    Doc. 494 at 25-28.
[88]    Doc. 501 at 29-31.

knew that the RSA Marks were trademarked and/or trademarkable.[89] An individual analysis is necessary for each alleged trademark, particularly for model numbers which, as detailed in the Court's Memorandum addressing summary judgment, rests largely on a finding that a particular model number has acquired a secondary meaning.[90] Such a determination is necessarily fact dependent for each model number.[91]

Moreover, this evidence would confuse the issues and the jury and waste time, as the parties would need to discuss the other trademark registrations, delve into the history of those trademarks, and explain their views on those marks. Consequently, evidence related to other trademarks is excludable as irrelevant, and under Federal Rule of Evidence 403. Accordingly, Avco's motion *in limine* will be granted, and TNB will be precluded from introducing evidence of other trademarks or trademark applications.

### 6.      Evidence of Use of RSA Marks During Pendency of This Case

Lastly, Avco asserts that the Court should exclude evidence or argument related to Avco's continued use of the RSA Marks during the pendency of this lawsuit, as such evidence is not relevant to the question of willfulness, since Avco

---

[89]   Furthermore, because the Court has excluded evidence related to whether Avco knew that the RSA Marks were trademarked, the introduction of trademarks for other model numbers is not needed to counter such an assertion by Avco, as that assertion will not be permitted at trial.

[90]   Doc. 356 at 13-14.

[91]   Should Avco argue at trial that is did not believe any model numbers are trademarkable, it would open the door for the admission of this evidence.

had a good faith belief that it could use the RSA Marks.[92] TNB argues that such evidence is admissible because there is evidence of "undeniable bad faith" in the copying of the RSA Marks, as Avco knew of actual confusion long before this Court granted summary judgment in favor of TNB.[93]

As the record currently stands, there is sufficient evidence that Avco acted in bad faith in misappropriating the RSA Marks such that the jury should be permitted to consider whether Avco's continued use of the RSA Marks during this litigation is evidence of willfulness. The Third Circuit has previously expressed that "[a] defendant's refusal to cease using a mark upon demand is not necessarily indicative of bad faith," particularly "when the trademark at issue is not registered."[94] It may however, in certain circumstances, evidence willfulness.[95]

Here, TNB did not register any of RSA model numbers until 2010, and the RSA Mark itself was not registered until January 2014,[96] years after Avco/AVStar began using the RSA Marks on its servos,[97] and approximately eighteen months after Avco commenced this matter. Furthermore, on two occasions prior to the entry of summary judgment, TNB sought a preliminary injunction that would have barred Avco from using the RSA Marks, and on both occasions a preliminary injunction

---

[92]   Doc. 494 at 28-30.
[93]   Doc. 501 at 31-33.
[94]   *SecuraComm*, 166 F.3d at 189.
[95]   *Id.*
[96]   Doc. 356 at 10.
[97]   *See id.* at 5-6.

was denied because, *inter alia*, TNB had failed to establish a likelihood of success on the merits of its claims that Avco had infringed upon TNB's trademarks.[98] This tends to support Avco's claim that evidence or argument related to the continued use of the RSA Marks during litigation should be excluded.

However, the decisions denying preliminary injunctions were made on a truncated record, before the Court had access to the full panoply of information and evidence that was available to it at the summary judgment stage—and that was largely available to Avco when it elected to use the RSA Marks. Given the evidence cited by this Court in determining that Avco could not possibly have believed that the RSA Marks were "a 'common' or 'descriptive' term for the characteristics that distinguish [Precision's] fuel injection system" from any other servo[99] and that there was no fair use since Avco did not use the RSA Marks in good faith and in a merely descriptive sense,[100] there is also countervailing evidence suggesting that Avco acted in bad faith by continuing to use the RSA Marks.

Given the conflicting evidence related to Avco's continued use of the RSA Marks during litigation, the Court concludes that it would be improper to exclude evidence or argument related to that use at this time. Avco's motion *in limine* therefore will be conditionally denied, but Avco may request that the Court revisit this ruling at trial should the evidence presented therein strongly undermine the

---

[98]   Doc. 60 at 4-9; Doc. 145 at 9-12.
[99]   Doc. 356 at 19.
[100]   *Id.* at 25-26.

notion that Avco acted in "undeniable bad faith"[101] in continuing to use the RSA Marks during the pendency of this litigation and prior to the entry of summary judgment against it.

## III.   CONCLUSION

In accordance with the above discussion, the motions *in limine* will be granted in part and denied in part.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[101]  Doc. 501 at 31.