# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AVCO CORPORATION, | CIVIL ACTION |
|     Plaintiff and Counterclaim Defendant, | NO.:  4:12-cv-1313-MWB |
| | (Judge Matthew W. Brann) |
| v. | |
| TURN AND BANK HOLDINGS, LLC, and PRECISION AIRMOTIVE, LLC, | |
|     Defendants and Counterclaim Plaintiffs, | |
| v. | |
| AVSTAR FUEL SYSTEMS, INC., | |
|     Counterclaim Defendant. | |

## PLAINTIFF AND COUNTERCLAIM DEFENDANTS' REVISED PROPOSED JURY INSTRUCTIONS

Plaintiff and Counterclaim Defendants Avco Corporation ("Avco" or "Lycoming") and AVStar Fuel Systems, Inc. ("AVStar"), by and through their undersigned attorneys, respectfully submit these revised proposed jury instructions, in light of the Court's rulings on the parties' motions *in limine*.  Pursuant to this Court's prior instruction, Lycoming and AVStar are referred to as the "Defendants" and Turn and Bank Holdings, LLC and Precision Airmotive, LLC are referred to as the "Plaintiffs" for purposes of the jury and bench trials in this matter.  Lycoming and AVStar submit these proposed jury instructions with a total of 8 Special Instructions along with several General Instructions for the Court.  If

the Court intends to limit the number of instructions, Lycoming and AVStar will reduce the number of General Instructions to be presented to the jury.  In addition, Lycoming and AVStar have provided in Appendix 1 a blackline comparison between the proposed General Instructions and the Third Circuit's Modern Civil Jury Instructions.

Lycoming and AVStar reserve the right to revise, withdraw, and/or supplement these proposed jury instructions based upon the Court's rulings on any motions *in limine*, other motions that may be made prior to or at trial, and the evidence submitted at trial.  The parties continue to meet and confer over agreement for these Proposed Jury Instructions.

Respectfully submitted,

*/s/ Kent B. Goss*

Kent B. Goss *Pro Hac Vice*
Attorney ID No.:  CA 131499
Valerie M. Goo *Pro Hac Vice*
Attorney ID No.:  CA 131499
CROWELL & MORING LLP
515 S. Flower Street, 40th Floor
Los Angeles, CA  90071
(213) 622-4750
Email:    kgoss@crowell.com
              vgoo@crowell.com

Chena L. Glenn-Hart, Esquire
Pa. I.D. No. 82750
clglenn-hart@mqblaw.com
811 University Drive
McQUAIDE BLASKO, INC.
State College, PA 16801
(814) 235-2222
Fax: (814) 234-5620

Attorneys for Plaintiff and Counterclaim
Defendant Avco Corporation and
Counterclaim Defendant AVStar Fuel
Systems, Inc.

Attorneys for Plaintiffs and
Counterclaims Defendants

Dated:  October 4, 2022

# **TABLE OF CONTENTS**

PROPOSED GENERAL INSTRUCTIONS ................................................................1

GENERAL INSTRUCTION 1.  Preliminary Instructions – Introduction; Role of Jury...............2

GENERAL INSTRUCTION 2.  Preliminary Instructions – Description of Case; Summary of Applicable Law…………………………………………………………………………3

GENERAL INSTRUCTION 3.  Preliminary Instructions – Conduct of the Jury ........................8

GENERAL INSTRUCTION 4.  Preliminary Instructions – Bench Conferences........................10

GENERAL INSTRUCTION 5.  Preliminary Instructions – Evidence........................................11

GENERAL INSTRUCTION 6.  Preliminary Instructions – Direct and Circumstantial Evidence..
13

GENERAL INSTRUCTION 7.  General Instructions for Use During Trial — Stipulation of Fact …………………………………………………………………………14

GENERAL INSTRUCTION 8.  General Instructions for Use During Trial — Use of Deposition …………………………………………………………………………15

GENERAL INSTRUCTION 9.  General Instructions for Use During Trial — Charts and Summaries in Evidence and those Not Admitted in Evidence .................................................16

GENERAL INSTRUCTION 10.General Instructions for Use During Trial — Evidence Admitted for a Limited Purpose …………………………………………………...17

GENERAL INSTRUCTION 11.General Instructions for Use At End of Trial — Deliberations 18

PROPOSED SPECIAL INSTRUCTIONS...............................................................21

SPECIAL INSTRUCTION 1.    Trademark Infringement – Nature of the Claim........................22

SPECIAL INSTRUCTION 2.    Trademark ...........................................................................24

SPECIAL INSTRUCTION 3.    Trademark – Inherent Distinctiveness -- Fanciful, Arbitrary, and Suggestive Marks…………………………………………………………………25

SPECIAL INSTRUCTION 4.    Descriptive Trademark – Acquired Distinctiveness.................27

SPECIAL INSTRUCTION 5.    Registration of a Trademark on the Federal Supplemental Register…………………………………………………………………………29

SPECIAL INSTRUCTION 6.    Use of the "TM" Symbol......................................................31

SPECIAL INSTRUCTION 7.    Use of House Marks ..............................................................32

SPECIAL INSTRUCTION 8.    Willfulness – Trademark Infringement ...................................33

**PROPOSED GENERAL INSTRUCTIONS**

GENERAL INSTRUCTIONS 1-11

**GENERAL INSTRUCTION 1.        Preliminary Instructions – Introduction; Role of Jury**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts.  You will have to decide what happened.  I play no part in judging the facts.  You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.  My role is to be the judge of the law.  I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.1 (August 2020).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 2.        Preliminary Instructions – Description of Case; Summary of Applicable Law**

In this case, the Court and the parties may refer to the Plaintiffs as TNB and Precision, and refer to the Defendants as Lycoming and AVStar.  Plaintiffs claim that Defendants have willfully infringed certain trademarks related to fuel injection servos for aircraft.  Defendants Lycoming and AVStar deny those claims.  I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.  But in order to help you follow the evidence, I will now give you a brief overview and a summary of what plaintiffs TNB and Precision must prove to make their case:

Plaintiff Precision and its predecessors have manufactured servos since the 1960s.  Servos are a certain type of fuel injection system for aircraft.  Plaintiffs' servos have model numbers beginning with the letters "RSA" followed by a dash, a one- or two-digit number, two more letters, and a one-digit number, such as "RSA-5AD1" and "RSA-10ED2."  Both Plaintiffs and Defendants agree that the numbers and letters after the dash indicate different functional or structural aspects of the servos.  Plaintiffs TNB and Precision have asserted trademark infringement claims against Defendants related to the use of model numbers containing RSA.  A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to inform consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation.

Trademarks can be registered with the United States Patent and Trademark Office.  There are two types of federal trademark registrations.  The first is registration on the Principal Register, which carries the evidentiary presumption that the registrant has the exclusive right to use the trademark and that the trademark is valid.  The second type is registration on the Supplemental Register, which does not carry these evidentiary presumptions.  Registration on the Supplemental Register does not mean that a trademark is not valid or protectable; it means that the registrant has not yet demonstrated to the United States Patent and Trademark Office that the trademark meets the necessary requirements for registration on Principal Register.  For a trademark that is descriptive, registration on the Principal Register may be obtained only after the registrant provides proof of acquired distinctiveness.

A "house mark" is the name of the company manufacturing or producing a particular product.  When placed on a product, house marks allow consumers to identify the source of that particular product when encountered by consumers in the marketplace.

The Court determined on April 9, 2018, that Plaintiffs' RSA model numbers are valid and protectable trademarks under trademark law and that Defendants have used model numbers that create a likelihood of confusion with Plaintiffs' RSA marks.  On July 9, 2018, AVStar changed the model numbers on its servos.  However, Plaintiffs have also asserted that Defendants willfully infringed Plaintiffs' RSA marks.  The fact that I determined that Plaintiffs have valid trademarks and that Defendants used model numbers that create a likelihood of confusion does not have a bearing on willfulness.  Whether Defendants willfully infringed Plaintiffs' marks is for you to determine.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.  The defendant must have had an intent to infringe or a deliberate disregard of a mark holder's rights in a way that was calculated to appropriate or otherwise benefit from the goodwill of the plaintiff.  Willfulness does not mean that a defendant merely took voluntary and intentional actions to market its products in a certain way.  Mere knowledge is insufficient to show willfulness.

Likewise, just because a defendant intentionally used the same word or phrase as the asserted trademark does not mean that it intentionally infringed the trademark.  In order to intentionally infringe, there must be an intent to deceive or confuse as to the source or sponsorship of the products.

In determining whether Defendants' conduct was willful, you are not to consider any harm or monetary damage to Plaintiffs.

Plaintiffs bear the burden of proving willfulness by a preponderance of the evidence.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.2 (August 2020) (modified); *see also* Federal Civil Jury Instructions of the Seventh Circuit 13.1.1 (2019) (modified) and comments thereto; 15 U.S.C. §§ 1051, 1052, 1057, 1091, 1094, 1095, 1115; Eleventh Circuit Pattern Jury Instruction No. 15.13 ("The U.S. Patent and Trademark Office maintains two 'registers' on which trademarks can be registered: (1) the Principal Register; and (2) the Supplemental Register."); 37 C.F.R. §

4

2.75(a) ("An application for registration on the Principal Register under section 1(a) or 44 of the Act may be changed to an application for registration on the Supplemental Register and vice versa by amending the application to comply with the rules relating to the appropriate register, as the case may be."); *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 779 (2d Cir. 1964) ("While registration of a trademark is *prima facie* evidence of its validity, 15 U.S.C. § 1115(a), this merely gives rise to a rebuttable presumption, and the mark's validity may be attacked in a collateral proceeding."); *Texas Pig Stands, Inc. v. Hard Rock Cafe Intern., Inc.*, 951 F.2d 684, 689, n.5 (5th Cir. 1992) ("[I]f it is determined that the mark is generic, it can never become incontestable."); *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 595–596 (6th Cir. 1989) (trademark challenger successfully rebutted the *prima facie* presumption of validity, so the burden of proving secondary meaning reverted to registrant, who was unable to carry it*); McCormick & Co. v. Summers*, 53 C.C.P.A. 851, 354 F.2d 668, 674 (C.C.P.A. 1966) ("It must be remembered that registrations on the Supplemental Register do not receive the advantages of section 7(b) with regard to prima facie evidence of exclusive right to use."); *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 391 n.8 (4th Cir. 2009) ("Unlike registrations on the Principal Register, registrations on the Supplemental Register do not receive some of the advantages extended to marks registered on the Principal Register."); *ERBE Elektromedizin GmbH v. Canady Technology LLC*, 629 F.3d 1278, 1288 (Fed. Cir. 2010) (Registrations on the Supplemental Register do not receive the key advantages of those on the Principal Register.); *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 59 C.C.P.A. 764, 453 F.2d 1296, 1299 (C.C.P.A. 1972) ("We also agree with the observation of the board that, when appellant sought registration of SUPER BLEND on the Supplemental Register, it admitted that the term was merely descriptive of its goods . . . ."); 4 McCarthy on Trademarks and Unfair Competition § 23:43 (5th ed.) (describing house marks); Eleventh Circuit Pattern Jury Instruction No. 15.13 (2022) ("A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff."); *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as stated in Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173-76 (3d Cir. 2005) (holding that willful trademark infringement requires "an intent to infringe or a deliberate disregard of a mark holder's rights . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." (internal citations and quotations omitted)); *id.* at 189 (holding that district court's finding of willfulness was clearly erroneous, and that "Securacomm New Jersey's failure to stop its use of the Securacomm mark after receiving Libengood's cease and desist letter does not

5

demonstrate willful infringement. A defendant's refusal to cease using a mark upon demand is not necessarily indicative of bad faith."(internal citations omitted)); *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 778 (D. Del. 2015) (granting defendant's motion for JMOL of no willful trade dress infringement where "the record does not contain substantial evidence that Broetje acted with an intent to infringe or deliberately disregard AHG's trade dress rights"); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds* ("Willful infringement carries a connotation of deliberate intent to deceive [the infringement must be] 'willfully calculated to exploit the advantage of an established mark.'" (citations omitted)); *ILC Trademark Corp. v. Aviator North, Inc.*, 2020 WL 6886436, *12 (C.D. Cal. Nov. 24, 2020) ("Infringement of a trademark is willful when it is calculated to exploit the advantage of an established mark, or otherwise committed with the intent to capitalize on the goodwill associated with the trademark."); *Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1104 (N.D. Cal. 2019) (finding no willfulness where plaintiff could not identify any evidence that defendant acted willfully, reasoning "mere knowledge is insufficient to show willfulness"); *id.* ("Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 324 (9th Cir. 2015) ("[w]illful infringement carries a connotation of deliberate intent to deceive"); *Ga.-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) ("'[W]illful' does not mean that the defendant's actions were merely volitional, but rather that the defendant acted *with the intent to infringe* the plaintiff's protected mark."); *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1494 (2020) ("[w]ithout question, a defendant's state of mind may have a bearing on what relieve a plaintiff should receive. An innocent trademark violator often stands in very different shoes than an intentional one."); *id.* at 1497 (Alito, J., concurring) ("The relevant authorities . . . show that willfulness is a highly important consideration in awarding profits under § 1117(a), but not an absolute precondition."); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 232 (3d Cir. 2000) (noting relevant inquiry is "intent to confuse or deceive consumers as to the product's source.") (quoting *Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir.1995))); *Am. Exp. Co. v. Vibra Approved Lab'ys Corp.*, No. 87 CIV. 8840 (CSH), 1989 WL 39679, at *7 (S.D.N.Y. Apr. 19, 1989) ("[T]here has been no showing that it did so with the intent to confuse consumers as to the source or sponsorship of those cards"); Dkt. 461, at 40 ("With respect to intentional infringement, the Court previously concluded that Avco intentionally *used* TNB's trademark but made no finding as to whether Avco intentionally *infringed* upon TNB's trademark." (emphasis

original)); *id.* at 41 ("one may intentionally copy a mark without knowledge that the mark was protected"); *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 514 (6th Cir. 2013) ("The clear import of the twin principles that copying in the absence of copyright or patent protection often serves useful purposes, and that the concern of trademark law is not about copying per se but about copying that engenders consumer confusion, is that the appropriate 'intent' to focus on is not the intent to copy but rather the intent to deceive or confuse."); Dkt. 526, at 12 ("The gravamen of any claim of willfulness is the 'deliberate intent to deceive.'"); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) ("Conduct is willful if the infringer was knowingly and deliberately cashing in upon the good will of the infringed" (brackets and internal quotation marks omitted)).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 3.**      **Preliminary Instructions – Conduct of the Jury**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.  I know that many of you use cell phones, smart phones, and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services such as Twitter, or through any blog, website, internet chat room, or by way of any other social networking websites or services including Facebook,  LinkedIn, and YouTube.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence.  By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report.  In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case.  Do not do any research on the internet, for example.  You are to decide the case upon the evidence presented at trial.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.3 (August 2020) (Modified).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 4.       Preliminary Instructions – Bench Conferences**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you.  These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.

I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.4 (August 2020) (Modified).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 5.       Preliminary Instructions – Evidence**

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits; and

3. Any facts that are stipulated--that is, formally agreed to by the parties.

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers.

3. Any testimony I tell you to disregard; and

4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence.  When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object.  This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made.  Objections to questions are not evidence.  Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.  If the objection is sustained, ignore the question.  If it is overruled, treat the answer like any other.  If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.5 (August 2020) (Modified).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 6.        Preliminary Instructions – Direct and Circumstantial Evidence**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.  Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you.  The law makes no distinction in the weight to be given to either direct or circumstantial evidence.  You are to decide how much weight to give any evidence.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.6 (August 2020).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 7.** **General Instructions for Use During Trial — Stipulation of Fact**

The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial.  You must therefore treat these facts as having been proved for the purposes of this case.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 2.4 (August 2020) (Modified).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 8.** **General Instructions for Use During Trial — Use of Deposition**

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

The deposition of one or more witnesses may be presented to you by a video or by reading the transcript.  If played by video, the deposition testimony may be edited or cut to exclude irrelevant testimony.  You should not attribute any significance to the fact that deposition videos may appear to have been edited.

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 2.5 (August 2020) (Modified).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

15

**GENERAL INSTRUCTION 9.     General Instructions for Use During Trial — Charts and Summaries in Evidence and those Not Admitted in Evidence**

Lycoming and AVStar have presented exhibits in the form of charts and summaries.  I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience.  You should consider these charts and summaries as you would any other evidence.

Other charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case.  These charts and summaries are not themselves proof of any facts.  They are not binding on you in any way.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases Nos. 2.7 and 2.8 (August 2020) (Modified).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 10.     General Instructions for Use During Trial — Evidence Admitted for a Limited Purpose**

You will now hear evidence that was received for a particular limited purpose.  [This evidence can be considered by you as evidence that (describe limited purpose)].  It may not be used for any other purpose.  [For example, you cannot use it as proof that (discuss specific prohibited purpose)].

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 2.10 (August 2020) (Modified).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**GENERAL INSTRUCTION 11.      General Instructions for Use At End of Trial — Deliberations**

When you retire to the jury room to deliberate, you may take with you these instructions, your notes, and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson.  That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict.  Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors.  Listen to each other carefully.  In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence.  But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors.  Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service like Twitter; or any internet chat room, blog, website, or social networking service such as Facebook, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research

about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 3.1 (August 2020) (Modified).

| Accepted | |
|----------|---|
| Denied | |
| Modified | |

**PROPOSED SPECIAL INSTRUCTIONS**

SPECIAL INSTRUCTIONS 1-8

**SPECIAL INSTRUCTION 1. Trademark Infringement – Nature of the Claim**

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to inform consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation.

Plaintiff Precision and its predecessors have manufactured servos since the 1960s. Servos are a certain type of fuel injection system for aircraft. Plaintiffs' servos have model numbers beginning with the letters "RSA" followed by a dash, a one- or two-digit number, two more letters, and a one-digit number, such as "RSA-5AD1" and "RSA-10ED2." Both Plaintiffs and Defendants agree that the numbers and letters after the dash indicate different functional or structural aspects of the servos.

The Court determined on April 9, 2018, that Plaintiffs' RSA model numbers are valid and protectable trademarks under trademark law and that Defendants have used model numbers that create a likelihood of confusion with Plaintiffs' RSA marks. On July 9, 2018, AVStar changed the model numbers on its servos. However, Plaintiffs have also asserted that Defendants willfully infringed Plaintiffs' RSA marks. The fact that I determined that Plaintiffs have valid trademarks and that Defendants used model numbers that create a likelihood of confusion does not have a bearing on willfulness. Whether Defendants willfully infringed Plaintiffs' marks is for you to determine. I will explain later the standard for willful infringement, which depends on Defendants' intent. But first, I will explain to you some basic concepts of trademark law and how they apply to this case.

*Sources and Authorities:* Federal Civil Jury Instructions of the Seventh Circuit 13.1.1 (2019) (modified) and comments thereto; *see* 15 U.S.C. § 1127; *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001); *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992); *G. Heileman Brewing Co., Inc. v. Miller Brewing Company*, 873 F.2d 985, 997 (7th Cir. 1989).

| Accepted | |
|----------|--|
| Denied | |
| Modified | |

**SPECIAL INSTRUCTION 2. Trademark**

A trademark is a term that is "distinctive," which means that the term is capable of distinguishing Plaintiffs' products from the products of others. There are four categories, in order of strength or distinctiveness: arbitrary (which is inherently distinctive), suggestive (which also is inherently distinctive), descriptive (which is protected only if it acquires in consumers' minds a "secondary meaning"), and generic names (which are entitled to no protection). A generic name is a name for the product on which it appears.

*Source and Authorities:* Federal Civil Jury Instructions of the Seventh Circuit 13.1.2.1 (2019) (modified) and comments thereto; Ninth Circuit Model Civil Jury Instruction 15.10 (2009) (modified); *see also Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000) ("'Secondary meaning' has since come to refer to the acquired, source-identifying meaning of a non-word mark . . . . It is often a misnomer in that context, since non-word marks ordinarily have no 'primary' meaning. Clarity might well be served by using the term 'acquired meaning' in both the word-mark and the non-word mark contexts"). *see also Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769 (1992) ("An identifying mark is distinctive and capable of being protected if it . . . *has acquired distinctiveness* through secondary meaning.") (emphasis added); *Bliss Salon Day Spa v. Bliss World LLC*, 268 F. 3d 494, 497 (7th Cir. 2001).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**SPECIAL INSTRUCTION 3. Trademark – Inherent Distinctiveness --
Fanciful, Arbitrary, and Suggestive Marks**

An inherently distinctive trademark is one that almost automatically tells a
consumer that it refers to a brand or a source for a product.  A trademark is
inherently distinctive if it is a "fanciful"; "arbitrary"; or "suggestive" term.

- A "fanciful" term is a newly created word or parts of common words
  that are used in a fictitious, unfamiliar, or fanciful way.  For example,
  "Exxon" for gasoline is a fanciful mark.

- An "arbitrary" term is a common term used in an unfamiliar way.  For
  example, "Apple" for computers is an arbitrary mark.

- A "suggestive" term implies some characteristic or quality of the
  product.  If the consumer must use imagination, reflection, or
  additional reasoning to understand the meaning of the mark as used
  with the product, then the mark is suggestive.  For example,
  "Coppertone" for suntan lotion is a suggestive mark because it is
  suggestive of suntanned skin.

In this case, I have determined that Plaintiffs' RSA marks are not inherently
distinctive.

*Source and Authorities:* Federal Civil Jury Instructions of the Seventh
Circuit 13.1.2.2.1 (2019) (modified) and comments thereto; *see also Wal-Mart
Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 212 (2000) ("a product's color
is unlike a 'fanciful,' 'arbitrary,' or 'suggestive' mark, since it does not 'almost
*automatically* tell a customer that [it] refers to a brand.'") (emphasis in original;
*quoting Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159. 163 (1995)); *Bliss
Salon Day Spa v. Bliss World LLC*, 268 F.3d 494, 496 (7th Cir. 2001) ("Suggestive
('Tide' laundry detergent), arbitrary ('Apple' computers), and fanciful ('Exxon'
gasoline) marks collectively are distinctive in the sense that secondary meaning is
likely to develop, as a result of which any duplicate use of the name is likely to
breed confusion about the product's source.  Generic marks, on the other hand,
designate the products themselves rather than any particular maker, and descriptive
marks might (but usually won't) acquire distinctiveness."); *Telemed Corp. v. Tel-
Med, Inc.*, 588 F.2d 213, 216-217 (7th Cir. 1978).

| Accepted | |
|----------|--|
| Denied | |
| Modified | |

**SPECIAL INSTRUCTION 4. Descriptive Trademark – Acquired Distinctiveness**

Another type of valid trademark is a "descriptive" term that has "acquired distinctiveness."

A "descriptive" term directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trademark.   For example, "All Bran" for cereal is a descriptive trademark because it describes a characteristic of the cereal.

A descriptive term can be a trademark only if and when it has "acquired distinctiveness."

To obtain "acquired distinctiveness," also called "secondary meaning," a substantial portion of the consuming public must identify the descriptive mark with a particular source, whether or not consumers know who or what that source is. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products.

In this case, I have already determined that Plaintiffs' RSA marks have acquired distinctiveness.

*Source and Authorities:*  Federal Civil Jury Instructions of the Seventh Circuit 13.1.2.2.2 and 13.1.2.2.3 (2019) (modified) and comments thereto; *see also Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 216-217 (7th Cir. 1978) ("A merely descriptive term specifically describes a characteristic or ingredient of an article. It can become a valid trademark by acquiring a secondary meaning, *i.e.,* by becoming 'distinctive, as applied to the applicant's goods.'"); *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 989 (7th Cir. 2004) ("All Bran" example); *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F3d 432, 438 (3d Cir. 2000) (secondary meaning is measured "at the time and place that the [alleged infringer] began use of the mark"); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 211 (2000) (secondary meaning occurs when, "in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself."); *G. Heileman Brewing Co., Inc. v. Miller Brewing Company*, 873 F.2d 985, 999 n.12 (7th Cir. 1989) (listing factors); *Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 220 (7th Cir. 1978) (same); *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 728 (7th Cir. 1998) (same).

| Accepted | |
|----------|---|
| Denied | |
| Modified | |

**SPECIAL INSTRUCTION 5. Registration of a Trademark on the Federal Supplemental Register**

Trademarks can be registered with the United States Patent and Trademark Office.  There are two types of federal trademark registrations.  The first is registration on the Principal Register, which carries the evidentiary presumption that the registrant has the exclusive right to use the trademark and that the trademark is valid.  The second type is registration on the Supplemental Register, which does not carry these evidentiary presumptions.  Registration on the Supplemental Register does not mean that a trademark is not valid or protectable; it means that the registrant has not yet demonstrated to the United States Patent and Trademark Office that the trademark meets the necessary requirements for registration on Principal Register.  For a trademark that is descriptive, registration on the Principal Register may be obtained only after the registrant provides proof of acquired distinctiveness.

The Lanham Act states that only marks not registrable on the Principal Register are entitled to Supplemental Registration.  Thus, an applicant with a full-fledged trademark does not have the option of electing either the Principal or Supplemental Register.

If a use-based applicant seeks a Principal Registration, and it is determined that the mark is ineligible, the application may be amended to an application for registration on the Supplemental Register.  For example, if a mark is determined to be merely descriptive, it is ineligible for registration on the Principal Register unless secondary meaning can be proven.  The application may then be amended to an application for a registration on the Supplemental Register, where merely descriptive marks may be eligible.

In a litigation where plaintiff has a Supplemental Registration, the mark will not, *prima facie*, receive protection as a valid trademark, as its very presence on the Supplemental Register indicates a preliminary determination that the mark is not distinctive of the applicant's goods.  A descriptive designation on the Supplemental Register may, through sufficient use, achieve a secondary meaning and thus mature to become a valid mark identifying the source of applicant's goods or services.  If that occurs, the owner can apply for registration on the Principal Register.

*Sources and Authorities:* 15 U.S.C. §§ 1051, 1052, 1057, 1091, 1094, 1095, 1115; Eleventh Circuit Pattern Jury Instruction No. 15.13 ("The U.S. Patent and Trademark Office maintains two 'registers' on which trademarks can be registered:

(1) the Principal Register; and (2) the Supplemental Register."); 37 C.F.R. § 2.75(a) ("An application for registration on the Principal Register under section 1(a) or 44 of the Act may be changed to an application for registration on the Supplemental Register and vice versa by amending the application to comply with the rules relating to the appropriate register, as the case may be."); *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 779 (2d Cir. 1964) ("While registration of a trademark is *prima facie* evidence of its validity, 15 U.S.C. § 1115(a), this merely gives rise to a rebuttable presumption, and the mark's validity may be attacked in a collateral proceeding."); *Texas Pig Stands, Inc. v. Hard Rock Cafe Intern., Inc.*, 951 F.2d 684, 689, n.5 (5th Cir. 1992) ("[I]f it is determined that the mark is generic, it can never become incontestable."); *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 595–596 (6th Cir. 1989) (trademark challenger successfully rebutted the *prima facie* presumption of validity, so the burden of proving secondary meaning reverted to registrant, who was unable to carry it*); McCormick & Co. v. Summers*, 53 C.C.P.A. 851, 354 F.2d 668, 674 (C.C.P.A. 1966) ("It must be remembered that registrations on the Supplemental Register do not receive the advantages of section 7(b) with regard to prima facie evidence of exclusive right to use."); *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 391 n.8 (4th Cir. 2009) ("Unlike registrations on the Principal Register, registrations on the Supplemental Register do not receive some of the advantages extended to marks registered on the Principal Register."); *ERBE Elektromedizin GmbH v. Canady Technology LLC*, 629 F.3d 1278, 1288 (Fed. Cir. 2010) (Registrations on the Supplemental Register do not receive the key advantages of those on the Principal Register.); *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 59 C.C.P.A. 764, 453 F.2d 1296, 1299 (C.C.P.A. 1972) ("We also agree with the observation of the board that, when appellant sought registration of SUPER BLEND on the Supplemental Register, it admitted that the term was merely descriptive of its goods . . . ."); *National Nonwovens, Inc. v. Consumer Products Enterprises, Inc*., 397 F. Supp. 2d 245, 247 n.1 (D. Mass. 2005) (Supplemental registration indicates that the designation is not distinctive).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**SPECIAL INSTRUCTION 6. Use of the "TM" Symbol**

A party may use terms such as "trademark" or "TM" on goods regardless of whether a mark is registered.  For an unregistered mark, an individual can affix the TM symbol to tell customers and competitors that a particular symbol or word is intended to be a trademark.  The use of "TM" does not mean that an individual has valid or protectable rights in a particular symbol or term, but rather that the individual *believes* there is a protectable mark.  The mere addition of a trademark symbol does not transform a non-trademark use of a designation into a valid trademark.

*Sources and Authorities:*  USPTO's Trademark Manual of Examining Procedures § 906; 3 McCarthy on Trademarks and Unfair Competition § 19:148 (5th ed.); *see also What is a trademark?* USPTO, https://www.uspto.gov/trademarks/basics/what-trademark (last visited August 12, 2022) ("use 'TM' for goods . . . lets consumers and competitors know you're claiming the trademark as yours"); TM., Black's Law Dictionary (11th ed. 2019) ("Typically used as a superscript after a mark ($^{TM}$), it signals only that someone claims ownership of the mark; it does not mean that the mark is registered.").

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**SPECIAL INSTRUCTION 7. Use of House Marks**

A "house mark" is the name of the company manufacturing or producing a particular product.  When placed on a product, house marks allow consumers to identify the source of that particular product when encountered by consumers in the marketplace.

*Sources and Authorities:* 4 McCarthy on Trademarks and Unfair Competition § 23:43 (5th ed.).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**SPECIAL INSTRUCTION 8. Willfulness – Trademark Infringement**

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.  The defendant must have had an intent to infringe or a deliberate disregard of a mark holder's rights in a way that was calculated to appropriate or otherwise benefit from the goodwill of the plaintiff.  Willfulness does not mean that a defendant merely took voluntary and intentional actions to market its products in a certain way.  Mere knowledge is insufficient to show willfulness.

Plaintiffs' proof of willfulness must also consist of more than evidence that Defendants failed to stop using the trademark after receiving a cease and desist letter from Plaintiffs.  The mere fact that Plaintiffs sent a cease and desist letter shows only that Plaintiffs believed it had the right to prevent Defendants' use of the trademark but is not evidence of Defendants' intent or whether it was acting in good or bad faith.

Likewise, just because a defendant intentionally used the same word or phrase as the asserted trademark does not mean that it intentionally infringed the trademark.  In order to intentionally infringe, there must be an intent to deceive or confuse as to the source or sponsorship of the products.

Plaintiff bears the burden of proving willfulness by a preponderance of the evidence.

Sources and Authorities: Eleventh Circuit Pattern Jury Instruction No. 15.13 (2022) ("A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff."); *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as stated in Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173-76 (3d Cir. 2005) (holding that willful trademark infringement requires "an intent to infringe or a deliberate disregard of a mark holder's rights . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." (internal citations and quotations omitted)); *id*. at 189 (holding that district court's finding of willfulness was clearly erroneous, and that "Securacomm New Jersey's failure to stop its use of the Securacomm mark after receiving Libengood's cease and desist letter does not demonstrate willful infringement. A defendant's refusal to cease using a mark upon demand is not necessarily indicative of bad faith."(internal citations omitted)); *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 778 (D. Del. 2015) (granting defendant's motion for JMOL of no

willful trade dress infringement where "the record does not contain substantial evidence that Broetje acted with an intent to infringe or deliberately disregard AHG's trade dress rights"); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds* ("Willful infringement carries a connotation of deliberate intent to deceive [the infringement must be] 'willfully calculated to exploit the advantage of an established mark.'" (citations omitted)); *ILC Trademark Corp. v. Aviator North, Inc.*, 2020 WL 6886436, *12 (C.D. Cal. Nov. 24, 2020) ("Infringement of a trademark is willful when it is calculated to exploit the advantage of an established mark, or otherwise committed with the intent to capitalize on the goodwill associated with the trademark."); *Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1104 (N.D. Cal. 2019) (finding no willfulness where plaintiff could not identify any evidence that defendant acted willfully, reasoning "mere knowledge is insufficient to show willfulness"); *id.* ("Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 324 (9th Cir. 2015) ("[w]illful infringement carries a connotation of deliberate intent to deceive"); *Ga.-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) ("'[W]illful' does not mean that the defendant's actions were merely volitional, but rather that the defendant acted *with the intent to infringe* the plaintiff's protected mark."); *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1494 (2020) ("[w]ithout question, a defendant's state of mind may have a bearing on what relief a plaintiff should receive. An innocent trademark violator often stands in very different shoes than an intentional one."); *id.* at 1497 (Alito, J., concurring) ("The relevant authorities . . . show that willfulness is a highly important consideration in awarding profits under § 1117(a), but not an absolute precondition."); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc*., 237 F.3d 198, 232 (3d Cir. 2000) (noting relevant inquiry is "intent to confuse or deceive consumers as to the product's source." (quoting Versa Prods. Co., Inc. v. Bifold Co. (Mfg.) Ltd., 50 F.3d 189, 205 (3d Cir.1995))); *Am. Exp. Co. v. Vibra Approved Lab'ys Corp*., No. 87 CIV. 8840 (CSH), 1989 WL 39679, at *7 (S.D.N.Y. Apr. 19, 1989) ("[T]here has been no showing that it did so with the intent to confuse consumers as to the source or sponsorship of those cards"); *Green v. Fornario*, 486 F.3d 100, 107 (3d Cir. 2007) (district court did not err in declining to infer bad faith from defendant's refusal to stop using trade name where defendant had a colorable claim that it believed it had a right to engage in the challenged behavior); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959 (9th Cir. 2001) ("Intellectual property rights are often disputed. To hold that willfulness must be inferred whenever an alleged infringer uses an intellectual property in the face of disputed title would turn every copyright claim into willful infringement

and would improperly discourage many legitimate, good faith transactions." (internal citations omitted)); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) (reversing and remanding case on issue of damages attributable for willfulness where district court's determination of willfulness was based on ongoing sales of product after service of plaintiff's complaint, noting that under this analysis, a defendant would "risks losing all of its profits if it does not immediately cease selling its trademarked product upon receiving a complaint indicating it may be violating the law"); Dkt. 461, at 40 ("With respect to intentional infringement, the Court previously concluded that Avco intentionally *used* TNB's trademark but made no finding as to whether Avco intentionally *infringed* upon TNB's trademark." (emphasis original)); *id.* at 41 ("one may intentionally copy a mark without knowledge that the mark was protected"); *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l*, Inc., 730 F.3d 494, 514 (6th Cir. 2013) ("The clear import of the twin principles that copying in the absence of copyright or patent protection often serves useful purposes, and that the concern of trademark law is not about copying per se but about copying that engenders consumer confusion, is that the appropriate 'intent' to focus on is not the intent to copy but rather the intent to deceive or confuse."); Dkt. 526, at 12 ("The gravamen of any claim of willfulness is the 'deliberate intent to deceive.'"); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) ("Conduct is willful if the infringer was knowingly and deliberately cashing in upon the good will of the infringed" (brackets and internal quotation marks omitted)).

| | |
|---|---|
| Accepted | |
| Denied | |
| Modified | |

**Appendix 1**

**Blackline Comparison of Third Circuit Model Instructions vs.
Lycoming and Avstar's Proposed General Instructions**

**GENERAL INSTRUCTION 1 Compared to Third Circuit Model Instruction 1.1**

**Preliminary Instructions – Introduction; Role of Jury**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree with it or not.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.1 (August 2020).

**GENERAL INSTRUCTION 2 Compared to Third Circuit Model Instruction 1.2**

**Preliminary Instructions – Description of Case; Summary of Applicable Law**

~~In this case, [plaintiff] claims that [describe claims]; [defendant] denies those claims [and also contends that [describe counterclaims or affirmative defenses]].~~ In this case, the Court and the parties may refer to the Plaintiffs as TNB and Precision, and refer to the Defendants as Lycoming or AVStar.  Plaintiffs claim that Defendants have willfully infringed certain trademarks related to fuel injection servos for aircraft. Defendants Lycoming and AVStar deny those claims. I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.  But in order to help you follow the evidence, I will now give you a brief <u>overview and a </u>summary of ~~the elements that [plaintiff]~~<u>what plaintiffs TNB and Precision</u> must prove to make ~~[his/her/its]~~<u>their</u> case:

~~[Summarize elements of the applicable cause of action].~~

<u>Plaintiff Precision and its predecessors have manufactured servos since the 1960s.  Servos are a certain type of fuel injection systems for aircraft.  Plaintiffs' servos have model numbers beginning with the letters "RSA" followed by a dash, a one- or two-digit number, two more letters, and a one-digit number, such as "RSA-5AD1" and "RSA-10ED2."  Both Plaintiffs and Defendants agreed that the numbers and letters after the dash indicate different functional or structural aspects of the servos.  Plaintiffs TNB and Precision have asserted trademark infringement claims against Defendants related to the use of model numbers containing RSA.  A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.</u>

<u>The purpose of trademark law is to inform consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation.</u>

<u>Trademarks can be registered with the United States Patent and Trademark Office.  There are two types of federal trademark registration.  The first is registration on the Principal Register, which carries the evidentiary presumption that the registrant has the exclusive right to use the trademark and that the trademark is valid.  The second type is registration on the Supplemental Register, which does not carry these evidentiary presumptions.  Registration on the</u>

Supplemental Register does not mean that a trademark is not valid or protectable; it means that the registrant has not yet demonstrated to the United States Patent and Trademark Office that the trademark meets the necessary requirements for registration on Principal Register.  For a trademark that is descriptive, registration on the Principal Register may be obtained only after the registrant provides proof of acquired distinctiveness.

A "house mark" is the name of the company manufacturing or producing a particular product.  When placed on a product, house marks allow consumers to identify the source of that particular product when encountered by consumers in the marketplace.

The Court determined on April 9, 2018, that Plaintiffs' RSA model numbers are valid and protectable trademarks under trademark law and that Defendants have used model numbers that create a likelihood of confusion with Plaintiffs' RSA marks.  On July 9, 2018, AVStar changed the model numbers on its servos.  However, Plaintiffs have also asserted that Defendants willfully infringed Plaintiffs' RSA marks.  The fact that I determined that Plaintiffs have valid trademarks and that Defendants used model numbers that create a likelihood of confusion does not have a bearing on willfulness.  Whether Defendants willfully infringed Plaintiffs' marks is for you to determine.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.  The defendant must have had an intent to infringe or a deliberate disregard of a mark holder's rights in a way that was calculated to appropriate or otherwise benefit from the goodwill of the plaintiff.  Willfulness does not mean that a defendant merely took voluntary and intentional actions to market its products in a certain way.  Mere knowledge is insufficient to show willfulness.

Likewise, just because a defendant intentionally used the same word or phrase as the asserted trademark does not mean that it intentionally infringed the trademark.  In order to intentionally infringe, there must be an intent to deceive or confuse as to the source or sponsorship of the products.

In determining whether Defendants' conduct was willful, you are not to consider any harm or monetary damage to Plaintiffs.

Plaintiffs bear the burden of proving willfulness by a preponderance of the evidence.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.2 (August 2020) (modified); *see also* Federal Civil Jury Instructions of the Seventh Circuit 13.1.1 (2019) (modified) and comments thereto; 15 U.S.C. §§ 1051, 1052, 1057, 1091, 1094, 1095, 1115; Eleventh Circuit Pattern Jury Instruction No. 15.13 ("The U.S. Patent and Trademark Office maintains two 'registers' on which trademarks can be registered: (1) the Principal Register; and (2) the Supplemental Register."); 37 C.F.R. § 2.75(a) ("An application for registration on the Principal Register under section 1(a) or 44 of the Act may be changed to an application for registration on the Supplemental Register and vice versa by amending the application to comply with the rules relating to the appropriate register, as the case may be."); *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774, 779 (2d Cir. 1964) ("While registration of a trademark is *prima facie* evidence of its validity, 15 U.S.C. § 1115(a), this merely gives rise to a rebuttable presumption, and the mark's validity may be attacked in a collateral proceeding."); *Texas Pig Stands, Inc. v. Hard Rock Cafe Intern., Inc.*, 951 F.2d 684, 689, n.5 (5th Cir. 1992) ("[I]f it is determined that the mark is generic, it can never become incontestable."); *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 595–596 (6th Cir. 1989) (trademark challenger successfully rebutted the *prima facie* presumption of validity, so the burden of proving secondary meaning reverted to registrant, who was unable to carry it*); McCormick & Co. v. Summers*, 53 C.C.P.A. 851, 354 F.2d 668, 674 (C.C.P.A. 1966) ("It must be remembered that registrations on the Supplemental Register do not receive the advantages of section 7(b) with regard to prima facie evidence of exclusive right to use."); *George & Co. LLC v. Imagination Entertainment Ltd.*, 575 F.3d 383, 391 n.8 (4th Cir. 2009) ("Unlike registrations on the Principal Register, registrations on the Supplemental Register do not receive some of the advantages extended to marks registered on the Principal Register."); *ERBE Elektromedizin GmbH v. Canady Technology LLC*, 629 F.3d 1278, 1288 (Fed. Cir. 2010) (Registrations on the Supplemental Register do not receive the key advantages of those on the Principal Register.); *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 59 C.C.P.A. 764, 453 F.2d 1296, 1299 (C.C.P.A. 1972) ("We also agree with the observation of the board that, when appellant sought registration of SUPER BLEND on the Supplemental Register, it admitted that the term was merely descriptive of its goods . . . ."); 4 McCarthy on Trademarks and Unfair Competition § 23:43 (5th ed.) (describing house marks); Eleventh Circuit Pattern Jury Instruction No. 15.13 (2022) ("A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff."); *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as stated in Banjo Buddies, Inc. v.*

*Renosky*, 399 F.3d 168, 173-76 (3d Cir. 2005) (holding that willful trademark infringement requires "an intent to infringe or a deliberate disregard of a mark holder's rights . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." (internal citations and quotations omitted)); *id.* at 189 (holding that district court's finding of willfulness was clearly erroneous, and that "Securacomm New Jersey's failure to stop its use of the Securacomm mark after receiving Libengood's cease and desist letter does not demonstrate willful infringement. A defendant's refusal to cease using a mark upon demand is not necessarily indicative of bad faith."(internal citations omitted)); *Ateliers De La Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 778 (D. Del. 2015) (granting defendant's motion for JMOL of no willful trade dress infringement where "the record does not contain substantial evidence that Broetje acted with an intent to infringe or deliberately disregard AHG's trade dress rights"); *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993), *abrogated on other grounds* ("Willful infringement carries a connotation of deliberate intent to deceive [the infringement must be] 'willfully calculated to exploit the advantage of an established mark.'" (citations omitted)); *ILC Trademark Corp. v. Aviator North, Inc.*, 2020 WL 6886436, *12 (C.D. Cal. Nov. 24, 2020) ("Infringement of a trademark is willful when it is calculated to exploit the advantage of an established mark, or otherwise committed with the intent to capitalize on the goodwill associated with the trademark."); *Am. Auto. Ass'n of N. California, Nevada & Utah v. Gen. Motors LLC*, 367 F. Supp. 3d 1072, 1104 (N.D. Cal. 2019) (finding no willfulness where plaintiff could not identify any evidence that defendant acted willfully, reasoning "mere knowledge is insufficient to show willfulness"); *id.* ("Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard."); *San Miguel Pure Foods Co. v. Ramar Int'l Corp.*, 625 F. App'x 322, 324 (9th Cir. 2015) ("[w]illful infringement carries a connotation of deliberate intent to deceive"); *Ga.-Pac. Consumer Prods. LP v. Von Drehle Corp.*, 781 F.3d 710, 719 (4th Cir. 2015) ("'[W]illful' does not mean that the defendant's actions were merely volitional, but rather that the defendant acted *with the intent to infringe* the plaintiff's protected mark."); *Romag Fasteners, Inc. v. Fossil Grp., Inc.*, 140 S. Ct. 1492, 1494 (2020) ("[w]ithout question, a defendant's state of mind may have a bearing on what relieve a plaintiff should receive. An innocent trademark violator often stands in very different shoes than an intentional one."); *id.* at 1497 (Alito, J., concurring) ("The relevant authorities . . . show that willfulness is a highly important consideration in awarding profits under § 1117(a), but not an absolute precondition."); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 232 (3d Cir. 2000) (noting relevant inquiry is "intent to confuse or deceive consumers as to the product's source.") (quoting *Versa Prods.*

*Co., Inc. v. Bifold Co. (Mfg.) Ltd.*, 50 F.3d 189, 205 (3d Cir.1995))); *Am. Exp. Co. v. Vibra Approved Lab'ys Corp.*, No. 87 CIV. 8840 (CSH), 1989 WL 39679, at *7 (S.D.N.Y. Apr. 19, 1989) ("[T]here has been no showing that it did so with the intent to confuse consumers as to the source or sponsorship of those cards"); Dkt. 461, at 40 ("With respect to intentional infringement, the Court previously concluded that Avco intentionally *used* TNB's trademark but made no finding as to whether Avco intentionally *infringed* upon TNB's trademark." (emphasis original)); *id.* at 41 ("one may intentionally copy a mark without knowledge that the mark was protected"); *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 514 (6th Cir. 2013) ("The clear import of the twin principles that copying in the absence of copyright or patent protection often serves useful purposes, and that the concern of trademark law is not about copying per se but about copying that engenders consumer confusion, is that the appropriate 'intent' to focus on is not the intent to copy but rather the intent to deceive or confuse."); Dkt. 526, at 12 ("The gravamen of any claim of willfulness is the 'deliberate intent to deceive.'"); *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) ("Conduct is willful if the infringer was knowingly and deliberately cashing in upon the good will of the infringed" (brackets and internal quotation marks omitted)).

### GENERAL INSTRUCTION 3 Compared to Third Circuit Model Instruction 1.3

**Preliminary Instructions – Conduct of the Jury**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves.  If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly.  There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.  I know that many of you use cell phones, smart phones [like Blackberries and iPhones], and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others.  You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services [such as Twitter], or through any blog, website, internet chat room, or by way of any other social networking websites or services [including Facebook, MySpace, LinkedIn, and YouTube].

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  [That is why you are asked to wear your juror tags.  It shows that you are someone who is not to be approached in any way].

Second, do not read or listen to anything related to this case that is not admitted into evidence.  By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report.  In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case.  Do not do any research on the internet, for example.  You are to decide the case upon the evidence presented at trial.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please

do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims [or defenses] until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case.

[Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance.  You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.]

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.3 (August 2020) (Modified).

### GENERAL INSTRUCTION 4 Compared to Third Circuit Model Instruction 1.4

**Preliminary Instructions – Bench Conferences**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum. ~~[While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.]~~

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

_Sources and Authorities_: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.4 (August 2020) (Modified).

45

## GENERAL INSTRUCTION 5 Compared to Third Circuit Model Instruction 1.5

**Preliminary Instructions – Evidence**

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses;

2. Documents and other things received as exhibits; <u>and</u>

3. Any facts that are stipulated--that is, formally agreed to by the parties<s>; and</s><u>.</u>

<s>[4. Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.]</s>

The following things are not evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case;

2. Objections by lawyers.

3. Any testimony I tell you to disregard; and

4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court.  Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

`There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an

objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.   Do not speculate about what a witness might have said or what an exhibit might have shown.

_Sources and Authorities_: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.5 (August 2020) (Modified).

**GENERAL INSTRUCTION 6 Compared to Third Circuit Model Instruction 1.6**

**Preliminary Instructions – Direct and Circumstantial Evidence**

~~Option 1:~~

~~Do not be concerned about whether evidence is "direct evidence" or "circumstantial evidence." You should consider and weigh all of the evidence that is presented to you.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.~~

~~Option 2:~~

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

_Sources and Authorities_: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 1.6 (August 2020).

**GENERAL INSTRUCTION 7 Compared to Third Circuit Model Instruction 2.4**

**General Instructions for Use During Trial — Stipulation of Fact**

~~The [parties] have agreed that [set forth stipulated fact or facts] [is/are] true.~~ [The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial.] You must therefore treat ~~[this fact]~~ [these facts] as having been proved for the purposes of this case.

_Sources and Authorities_: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 2.4 (August 2020) (Modified).

## GENERAL INSTRUCTION 8 Compared to Third Circuit Model Instruction 2.5

**General Instructions for Use During Trial — Use of Deposition**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of ~~[name of witness], which was taken on [date], is about to~~ one or more witnesses may be ~~[has been]~~ presented to you ~~[by a video][~~ or by reading the transcript. <u>If played by video, the deposition testimony may be edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that deposition videos may appear to have been edited.</u>

Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

~~[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]~~

<u>*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 2.5 (August 2020) (Modified).</u>

**GENERAL INSTRUCTION 9 Compared to Third Circuit Model Instructions 2.7 and 2.8**

**General Instructions for Use During Trial — Charts and Summaries in Evidence ~~Charts~~ and ~~Summaries~~ those Not Admitted in Evidence**

~~[Name of party]~~ Lycoming and AVStar ~~has~~ have presented exhibits in the form of charts and summaries. I decided to admit these charts and summaries in place of the underlying documents that they represent in order to save time and avoid unnecessary inconvenience. You should consider these charts and summaries as you would any other evidence.

~~Certain~~ Other charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate the contents of books, records, documents, testimony, or other evidence in the case. ~~[Describe the charts and summaries that have not been admitted.]~~ These charts and summaries are not themselves proof of any facts. They are not binding on you in any way.  If they do not correctly reflect the facts shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the evidence.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases Nos. 2.7 and 2.8 (August 2020) (Modified).

**GENERAL INSTRUCTION 10 Compared to Third Circuit Model
Instruction 2.10**

**General Instructions for Use During Trial — Evidence Admitted for a
Limited Purpose**

You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s]. [This evidence can be considered by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 2.10 (August 2020) (Modified).

### GENERAL INSTRUCTION 11 Compared to Third Circuit Model Instruction 3.1

**General Instructions for Use At End of Trial — Deliberations**

When you retire to the jury room to deliberate, you may take with you [these instructions][, your notes][, and] the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone [like Blackberries or iPhones], or computer of any kind; the internet, any internet service, or any text or instant messaging service [like Twitter]; or any internet chat room, blog, website, or social networking service [such as Facebook,

~~MySpace,~~ LinkedIn, or YouTube], to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A form of verdict has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

*Sources and Authorities*: Third Circuit Modern Civil Jury Instructions, General Instructions for Civil Cases No. 3.1 (August 2020) (Modified).